**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**Case No. 25-cv-398 (LMP/DLM)**

Jose Osorio-Calderon,

Petitioner,

v.

Warden, FCI Sandstone,

Respondent.

**JOSE OSORIO-CALDERON'S REPLY BRIEF IN SUPPORT OF HIS HABEAS PETITION**

Under the First Step Act ("FSA"), the Bureau of Prisons ("BOP") "shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). The BOP does not contest that Mr. Osorio-Calderon is eligible under § 3624(g). In fact, the documents filed by the Government demonstrate that Mr. Osorio-Calderon's "shall" transfer to prerelease custody date was July 3, 2024. However, despite this clear statutory directive, the BOP has kept Mr. Osorio-Calderon nearly a year past his "shall" transfer date. The Government wastes much ink in its response discussing the Second Chance Act ("SCA"), both the discretion it affords and its carve out from judicial scrutiny, but the SCA has nothing to do with Mr. Osorio-Calderon's petition. If there is jurisdiction here, Mr. Osorio-Calderon's petition must be granted under the clear terms of the FSA.

And the Court does have jurisdiction here. Recent precedent considering jurisdiction over this issue has relied on a cavalcade of *pro se* petitions that ignored important Eighth Circuit precedent regarding jurisdiction. There is also an Eighth Circuit

jurisdictional carveout when the BOP has not followed the law in deciding whether to approve transferring a prisoner. And even if those bases of jurisdiction fail, the Court has jurisdiction to order the BOP to stop violating the FSA using a writ of mandamus.

Mr. Osorio-Calderon requests the Court grant his petition and order the BOP to transfer him to prerelease custody as the FSA requires.

## I. The First Step Act Required the Bureau of Prisons to Transfer Mr. Osorio-Calderon on July 3, 2024.

The terms of the FSA are clear: eligible prisoners shall be transferred to prerelease custody or supervised release when their FSA time credits equal the remainder of their sentence. 18 U.S.C. § 3632(d)(4)(C); 18 U.S.C. § 3624(g); *see also Valladares v. Ray*, 130 F.4th 74, 79 (4th Cir. 2025) ("Under the FSA, the time credits can be applied toward earlier placement in pre-release custody or supervised release. The award and computation of time credits is mandatory." (citing § 3632(d)(4)(C))). Up to 365 FSA time credits are used to advance the term of supervised release (i.e., shorten the prison term by one year), and any remaining balance is used for early placement in either a residential reentry center (i.e., halfway house) or home confinement. 18 U.S.C. § 3632(d)(4)(C); 18 U.S.C. § 3624(g).

The Government does not contest that Mr. Osorio-Calderon is eligible. (ECF No. 13 ¶ 5). And his FSA Time Credit Assessment shows his FSA Conditional Placement Date (i.e., the date he must be transferred to a halfway house or home confinement) was

July 3, 2024, based on the accrual of 1,095 FSA time credits. (ECF No. 13-2, at 3).[1] The math behind the July 3, 2024, date is simple:

- Projected Release Date: July 3, 2027, due to good conduct time.[2]
- Apply 365 FSA time credits.
- FSA Projected Release Date: July 3, 2026.
    - This is the new date to begin supervised release.
- Apply 730 FSA time credits.
- FSA Conditional Placement Date: July 3, 2024.
    - This is the date the BOP had to transfer Mr. Osorio-Calderon to either a residential reentry center or home confinement.

(ECF No. 13-2, at 3). But the BOP failed to transfer Mr. Osorio-Calderon, even though it was mandated to do so almost a year ago. (ECF No. 13 ¶¶ 15-20). Nothing in the FSA allows the BOP to make such a determination, and it flies in the face of the FSA's mandatory language. 18 U.S.C. § 3632(d)(4)(C); *see also* 18 U.S.C. § 3624(g)(11) ("The

[1] It is called a "Conditional" date because it is based on "the individual's best case scenario given the individual's FSA/FTC status . . . ." (ECF No. 13-2, at 3). In other words, the Assessment generates the date based on an assumption that the prisoner will continue to earn FSA time credits at the same rate he has been, hence it being "Conditional". The Government does not contest the accuracy of the July 3, 2024, date. The "Conditional" nature of the date matters far more for SCA time which, as discussed below, is discretionary, and therefore not guaranteed.

[2] Good conduct time is different than FSA time credits. Good conduct time reduces a prisoner's actual time in BOP custody by awarding credit toward the service of the prisoner's sentence. 18 U.S.C. § 3624(b). FSA time credits are an extra earned incentive.

Director of the Bureau of Prisons shall ensure there is sufficient prerelease custody capacity to accommodate all eligible prisoners.”).

This Court would be far from the only one to hold the BOP to the clear terms of the FSA despite resource constraints; delaying the mandatory transfer has been rejected throughout the country. *See United States v. Woodley*, No. 24-3053-JWL, 2024 WL 2260904, at *3 (D. Kan. May 15, 2024) (“Respondent has conceded that petitioner is eligible for placement in prerelease custody. Accordingly, the FSA requires the BOP to place petitioner in prerelease custody. Respondent’s excuse for delaying petitioner’s transfer to an RRC is that bed space is not available in a particular RRC until September. No such condition concerning bed availability is included among the requirements for eligibility under Section 3624(g), however, and thus immediate placement in prerelease custody is nevertheless required under Section 3632(d)(4)(C).”); *Doe v. Federal Bur. of Prisons*, No. 23-CV-5965 (AT), 2024 WL 455309, at *1-4 (S.D.N.Y. Feb. 5, 2024) (requiring transfer to prerelease custody despite the petitioner’s participation in the witness protection program); *Ramirez v. Phillips*, No. 2:23-CV-2911-KJM-JDP, 2023 WL 8878993, at *4 (E.D. Cal. Dec. 22, 2023) (“In other words, while the BOP has discretion to determine the form of release, transfer to a non-prison setting is mandatory for eligible prisoners.”); *Komando v. Luna*, 22-CV-425-SE, 2023 WL 310580, at *4-8 (D.N.H. Jan. 13, 2023) (requiring transfer to prerelease custody despite outstanding detainer while rejecting argument that the BOP had discretion to determine which prisoners were suitable for placement in prerelease custody), *report and recommendation adopted*, 2023 WL 1782034

(Feb. 6, 2023); *Sierra v. Jacquez*, 2:22-CV-1509-RSL-BAT, 2022 WL 18046701, at *4 (W.D. Wash. Dec. 27, 2022) (requiring transfer to prerelease custody despite immigration detainer, rejecting argument for discretion), *report and recommendation adopted*, 2023 WL 184225 (Jan. 13, 2023); *Jones v. Engelman*, 2:22-CV-5292-MCS (GJS), 2022 WL 6563744, at *9-13 (C.D. Cal. Sept. 7, 2022) (requiring transfer to prerelease custody despite pending charges and argument that the prisoner was a flight risk), *report and recommendation adopted in relevant part*, 2022 WL 6445565 (Oct. 7, 2022); *O'Bryan v. Cox*, No. CIV 21-4052, 2021 WL 3932275, at *4 (D.S.D. Sept. 1, 2021) ("Petitioner is entitled to receive all of his 43.75 days of credit to move back his current February 23, 2022 release date. Whether those time credits are applied for pre-release custody or transfer to supervised release is by statute within the discretion of the Bureau of Prisons."). This Court should follow suit and order the BOP to immediately transfer Mr. Osorio-Calderon.

## II. The Government's Arguments to the Contrary are Based on Irrelevant Provisions.

The Government explains the BOP's consideration of placement under the SCA at length to defend its decision to deny Mr. Osorio-Calderon's mandatory FSA transfer. (ECF No. 12, at 2-4, 8-10). The SCA has nothing to do with the transfer Mr. Osorio-Calderon is seeking in his petition. It is a red herring that should be disregarded.

### A. The Second Chance Act provides the Bureau of Prisons with discretion that the First Step Act does not.

The SCA was passed in 2008, a decade before the FSA, and was "intended to reduce recidivism, increase public safety, and help State and local governments better address the

growing population of ex-offenders returning to their communities" through a number of means, including "the expansion of comprehensive re-entry services." H.R. Rep. No. 110-140, at 1 (2007). It amended 18 U.S.C. § 3624(c) to allow the BOP to transfer prisoners, "to the extent practicable," to a community correctional facility for up to twelve months. Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 657, § 251 (2008). The SCA also allows transfer to home confinement "for the shorter of 10 percent of the inmate's term of imprisonment or 6 months at the end of their sentences." 18 U.S.C. § 3624(c)(2). This is SCA time, and it is separate from FSA time credits. Mr. Osorio-Calderon's FSA Time Credit Assessment makes it clear these are different; the Assessment also outlines an "SCA Conditional Placement Date" that was predicated on the BOP agreeing with Mr. Osorio-Calderon's Unit Team's recommendation that he receive SCA time in addition to his FSA time credits. (ECF Nos. 13 ¶¶ 17-18; 13-2, at 3).

Mr. Osorio-Calderon is not contesting that the BOP has the statutory right to consider the five factors at 18 U.S.C. § 3621(b) and only transfer him under the SCA "to the extent practicable." It would have been better for Mr. Osorio-Calderon if the BOP agreed with his Unit Team and gave him additional time in a halfway house under the SCA on top of his FSA time credits, but the SCA time is not necessary to reach the FSA Conditional Placement Date of July 3, 2024. The BOP evaluated the factors and made its decision to not grant SCA time, but there are no similar limits or factors to consider on the practicality of transferring under the FSA. *Compare* 18 U.S.C. § 3632(d)(4)(C) *and* § 3624(g) *with* § 3624(c). They are separate systems and § 3624(c) is inapplicable to the

FSA. Transfer to prerelease custody under the FSA is mandatory when its conditions are met.[3]

The BOP's reliance on § 3624(c)(4) is misplaced and fails for the same reason. 18 U.S.C. § 3624(c)(4) provides that "[n]othing *in this subsection* shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." (emphasis added). It applies to subsection (c), the SCA. *See* 18 U.S.C. §3624(a) (noting that 18 U.S.C. §3624(b) is "subsection (b)"). So § 3624(c)(4) only applies to SCA transfers, not to FSA time credit transfers. Section 3632(d)(4)(C), the FSA, provides that the BOP "shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." And § 3624(g) has no similar limiting language like that in § 3624(c)(4). Moreover, § 3624(g)(10) specifically provides that the "time limits under *subsections (b) and (c)* shall not apply to prerelease custody under this *subsection*." (emphases added). This further confirms the truism that § 3624(c) is a separate subsection from § 3624(g), and a limitation in subsection (c) that applies by its

[3] The Government states that "this Court has repeatedly held that § 3624(c) does not create a statutory right to placement in prerelease community placement." (ECF No. 12, at 11). The cases cited by the Government further underscore Mr. Osorio-Calderon's argument, as they do not relate to FSA time credits. *See Gant v. King*, No. 23-cv-1766 (NEB/ECW), 2023 WL 6930764, at *4 (D. Minn. July 7, 2023), *report and recommendation adopted* 2023 WL 6910771 (Oct. 19, 2023) (assuming a *pro se* petitioner who did "not specify what statute gives him this right" meant the SCA, and finding that the SCA affords the BOP discretion); *Kern v. Fikes*, No. 21-cv-221 (WMW/LIB), 2022 WL 2959973, *6 (D. Minn. June 16, 2022), *report and recommendation adopted*, 2022 WL 2953933 (July 26, 2022) (denying a *pro se* petition based on the SCA and CARES Act).

terms only to subsection (c) has nothing to do with subsection (g). Thus, § 3624(c)(4) has no relevance here.

### B. The Second Chance Act insulates the Bureau of Prison's decision-making, but the First Step Act does not.

The BOP also tries to insulate its violation of the plain language of the FSA from judicial review by pointing to 18 U.S.C. § 3621(b). (ECF No. 12, 8-10). Although Congress has provided that the BOP's decision regarding a person's "place of imprisonment under this subsection is not reviewable by any court," 18 U.S.C. § 3621(b), that provision is not relevant here. The FSA strips the BOP of discretion with respect to the application of FSA time credits and mandates that the BOP transfer people out of prison upon eligibility. When a person has met the FSA's requirements, including that their FSA time credits equal the time left on their sentence, the person must be transferred to prerelease custody or supervised release. The BOP retains its usual discretion to designate the place to which a person is transferred—i.e., to which halfway house, or to home confinement and where—but the categorically different decision to transfer a person from prison to prerelease custody or supervised release is not covered by section 3621(b). *See Briones-Pereyra v. Warden*, No. 1:23-cv-1718-SAB-HC, 2024 WL 4171380, at *2 (E.D. Cal. Sept. 12, 2024) (holding that the court has jurisdiction to compel BOP action regarding FSA time credits "because application of [FSA time credits] to eligible prisoners who have earned them is *required*, not discretionary, under the statute" (emphasis in original)). That conclusion is reinforced by the fact that in making a decision "under this subsection [(3621(b))]," the BOP is required to consider a range of factors, *see* 18 U.S.C.

§ 3621(b)(1)–(5) (listing facility resources, facts about the offense, facts about the offender, statements by the sentencing court, and policy statements by the Sentencing Commission), that are far afield from the decision that Congress made in the FSA regarding the timing and prerequisites to be transferred to prelease custody. Accordingly, Congress's bar to judicial review regarding the selection of a "place of imprisonment" has no bearing on the enforceability of the distinct congressional command in the FSA regarding transfer to prelease custody.

The Government's argument that "courts in this District have routinely" permitted the BOP to manage placement decisions "without judicial interference" is again easily rebutted by looking at the cases it cites. (ECF No. 12, at 9-10). The cited cases do not relate to FSA time credits, *United States v. Houck*, 2 F.4th 1082 (8th Cir. 2021) (compassionate release motion regarding CARES Act confinement); *Jorgensen v. Birkholz*, No. 20-cv-2349 (NEB/DTS), 2021 WL 2935641, at *2 (D. Minn. July 13, 2021) (*pro se* motion requesting home confinement during the COVID-19 pandemic and an order to make the BOP take certain precautions), or were dismissed on jurisdictional grounds,[4] *Luque v. Fed. Bureau of Prison*, No. 23-CV-3893 (NEB/DLM), 2024 WL 1641947, at *3 (D. Minn. Mar. 5, 2024), *report and recommendation adopted*, No. 23-CV-3893 (NEB/DLM), 2024 WL 1641122 (D. Minn. Apr. 16, 2024) (*pro se* petition denied for lack of jurisdiction); *Fortner v. Eischen*, No. 24-CV-1496 (JRT/LIB), 2024 WL 4973204, at *1 (D. Minn. July 26, 2024), *report and recommendation adopted*, No. CV 24-1496

[4] The Government's jurisdictional arguments are rebutted below.

(JRT/LIB), 2024 WL 4903678 (D. Minn. Nov. 27, 2024) (same); *Sharma v. Eischen*, No. 24-CV-2619 (JWB/DJF), 2024 WL 4190884, at *4 (D. Minn. Aug. 28, 2024), *report and recommendation adopted in part*, No. CV 24-2619 (JWB/DJF), 2024 WL 4190071 (D. Minn. Sept. 13, 2024) (same). In fact, when this Court has had an occasion to consider an FSA time credit claim like Mr. Osorio-Calderon's, it has signaled its agreement with the view of other courts that the FSA is mandatory. *Sichting v. Rardin*, No. 24-CV-3163 (SRN/DTF), 2024 WL 4785007, at *3 (D. Minn. Nov. 14, 2024) (noting that the BOP "[h]aving no bed available is no excuse" and favorably citing *Woodley*, 2024 WL 2260904, but dismissing because the court did not have jurisdiction); *Garcia v. Eischen*, Case No. 24-cv-4106 (KMM/SGE), ECF No. 13 (D. Minn. Mar. 25, 2025) ("It is undisputed on the record before this Court that Mr. Garcia is eligible for a transfer to RRC or home confinement under the First Step Act and section 3632(d)(4)(C) requires the BOP to transfer Mr. Garcia.").[5] *Sichting*, like the other cases cited by the Government, was a *pro se* petition, however, and he was not equipped to argue the complicated jurisdictional issues and demonstrate that this Court does have jurisdiction over this type of claim. *Garcia* did have counsel, and when these jurisdictional arguments were presented, the Court agreed it did have jurisdiction over the petition.

[5] The *Garcia* Report and Recommendation, which is still pending, is attached as Exhibit 1.

## III. This Court has jurisdiction over this case.

In the Eighth Circuit, habeas relief is available under 28 U.S.C. § 2241 only when a petitioner challenges "the validity of his conviction or the length of his detention." *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam). Habeas relief is not available for challenges to a petitioner's "conditions of confinement." *Spencer v. Haynes*, 774 F.3d 467, 469-71 (8th Cir. 2014). The Government argues that this Court lacks jurisdiction because Mr. Osorio-Calderon is challenging the conditions of his confinement (i.e., the location of his confinement), rather than its duration. (EFC No. 12, at 4-8). But its jurisdictional arguments fail for two reasons: (1) the Eighth Circuit has exercised jurisdiction over similar claims; and (2) there is a carveout for situations when the BOP does not follow the law when deciding whether to approve transferring a prisoner to prerelease custody.

### A. The Eighth Circuit has exercised jurisdiction over materially similar habeas petitions.

The Eighth Circuit has exercised jurisdiction over materially similar habeas petitions challenging transfers to prelease custody. For instance, *Elwood v. Jeter* concerned a challenge to a BOP policy restricting transfers from prison to prerelease custody. 386 F.3d 842 (2004). Although *Elwood* did not specifically address whether jurisdiction was available under habeas, subject-matter jurisdiction "can be presumed when the Court speaks because if the record suggested jurisdiction may be lacking, a court is obligated to raise the issue sua sponte." *Knish v. Stine*, 347 F. Supp. 2d 682, 686 (D. Minn. 2004). For that reason, multiple district courts in this Circuit have relied on *Elwood* to grant habeas

relief for prelease custody claims. *See, e.g.*, *id.*; *Bania v. Roal*, No. 11- cv-925, 2011 WL 7945547, at *3 (D. Minn. Oct. 24, 2011); *Young v. Caraway*, No. 05-cv-1476, 2006 WL 562143, at *3 (D. Minn. Mar. 7, 2006) (collecting cases). Moreover, in the years since *Elwood*, the Eighth Circuit has continued to adjudicate habeas claims related to custody. *See Miller v. Whitehead*, 527 F.3d 752, 754–55 (8th Cir. 2008); *Fults v. Sanders*, 442 F.3d 1088, 1090–92 (8th Cir. 2006).

That makes sense because prerelease custody is meaningfully different from prison. In prerelease custody, whether in a residential reentry center (i.e., halfway house) or in home confinement, Mr. Osorio-Calderon would have substantially more freedom. Prelease custody is designed to help people "prepare for . . . re-entry into the community." *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 243 (3d Cir. 2005). People placed in halfway houses, for example, generally are required to work fulltime jobs and are permitted to leave for other activities such as visiting family, counseling, and recreation.[6] *See Brennan v. Cunningham*, 813 F.2d 1, 5 (1st Cir. 1987) ("An inmate in a halfway house is granted a measure of liberty that lies between that of a parolee and that of an inmate incarcerated in prison. [T]he prisoner in [a halfway house] enjoys some significant liberty[.]"). People in prelease custody are also often "eligible for weekend passes, overnight passes, or furloughs." *Woodall*, 432 F.3d at 243. For people placed in home confinement, the contrast

---

[6] BOP, *About Our Facilities*, https://www.bop.gov/about/facilities/residential_reentry_management_centers.jsp (last accessed May 15, 2025).

is even greater, as they are able to live with and help support their families and begin to reintegrate into their future lives more fully. Indeed, "subject to the approval of the Director of the Bureau of Prisons," people placed in home confinement are able to leave home to "perform a job or job-related activities," "perform community service," "receive medical treatment," "attend religious activities," and engage in other family- and community-based activities. 18 U.S.C. § 3624(g)(2)(A)(i). The sort of flexibility and freedom of movement that prerelease custody offers is dramatically different from traditional custody in a federal prison. *Woodall*, 432 F.3d at 243; *see also Silva v. Paul*, No. 18-cv-02177, 2019 WL 542945, at *5 (D. Minn. Jan. 7, 2019) (collecting cases explaining that "the difference between a prison and a halfway house represents 'a quantum change in the level of custody'" (citation omitted)), *report and recommendation adopted*, No. 18-cv- 2177, 2019 WL 536668 (D. Minn. Feb. 11, 2019).

While some courts have held that they lack jurisdiction over habeas petitions seeking transfers to prelease custody, those cases generally do not cite or discuss the Eighth Circuit's decision in *Elwood*, which is controlling authority. *See, e.g.*, *Faleide v. Eischen*, No. 24-cv-3325 (JWB/SGE), 2024 WL 5159313, at *2 (D. Minn. Nov. 13, 2024), *report and recommendation adopted*, 2024 WL 5158483 (Dec. 18, 2024) (*pro se* petition where court does not discuss *Elwood*); *Sichting v. Rardin*, No. 24-cv-3163 (SRN/DTF), 2024 WL 4785007, at *2 (D. Minn. Nov. 14, 2024) (same); *Heurung v. Rardin*, No. 23-cv-3749 (PAM/LIB), 2024 WL 4884482, at *3 (D. Minn. Oct. 17, 2024), *report and recommendation adopted*, 2024 WL 4882735 (Nov. 25, 2024) (same); *Young v. Eischen*,

No. 23-cv-3227 (PJS/JFD), 2024 WL 418702, at *3 (D. Minn. Jan. 3, 2024), *report and recommendation adopted*, 2024 WL 416445 (Feb. 5, 2024) (same).[7] Moreover, they fail to consider the meaningful differences between prelease custody and prison. For those reasons, this Court should decline to follow those cases and should hold it has jurisdiction under 28 U.S.C. § 2241.

### B. The Eighth Circuit has recognized a carveout and found jurisdiction when the Bureau of Prisons has not followed the law in deciding whether to approve transferring a prisoner.

There is an additional basis for jurisdiction through an Eighth Circuit carveout. In *United States v. Woodley*, the district court concluded that it had jurisdiction over the same habeas claim that Mr. Osorio-Calderon raises with the same relevant facts. 2024 WL 2260904, at *9 n.5. This Court should follow that decision, which is supported by Eighth Circuit precedent.

---

[7] Counsel is aware of one decision that found no jurisdiction over a habeas petition seeking transfer to home confinement and that also addressed *Elwood*. *See Johnson v. Birkholz*, No. 21-cv-2017, 2022 WL 3135304, at *2 (D. Minn. Aug. 5, 2022). In *Johnson*, the court reasoned that *Elwood* was not controlling because it did not specifically "address the issue of jurisdiction" and because it "was not clear whether prisoners could pursue conditions-of-confinement claims in a habeas action" when *Elwood* was decided. *Id.* But as explained above, courts have an obligation to assess their subject-matter jurisdiction *sua sponte*, even if no party raises it. Thus, the fact that *Elwood* did not specifically discuss jurisdiction does not mean the court failed to consider it. Moreover, the *Elwood* court would have had to consider jurisdiction because contrary to Johnson's claim, the Eighth Circuit *had* held that habeas jurisdiction was limited to challenges to the fact or duration of confinement way back in 1996—over a decade before *Elwood* was decided. *See Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam); *see also Spencer v. Haynes*, 774 F.3d 467, 469-71 (8th Cir. 2014).

*Woodley* teaches that a court has jurisdiction over a § 2241 petition raising the issue of whether the BOP followed the law in deciding whether to approve transferring a prisoner to prerelease custody. *Id.* Woodley, like Mr. Osorio-Calderon, had earned more than 365 days of FSA time credits. *Id.* at *3. After the BOP had applied 365 FSA time credits towards supervised release, Woodley still had an additional 445 FSA time credits that must be applied to prerelease custody, and thus the BOP should have transferred him to prerelease custody because his credits equaled the remainder of his sentence. *See id.* at *7 ("Respondent has conceded that petitioner is eligible for placement in prerelease custody. Accordingly, the FSA requires the BOP to place petitioner in prerelease custody."); *accord id.* *1, 3-4, 9. But the BOP instead informed Woodley that he would not be transferred to prerelease custody for months due to bedspace. *See id.* at *3-4. The court determined that the BOP's failure to transfer Woodley to prerelease custody violated federal law. It therefore granted his petition and ordered the BOP to transfer Woodley to prerelease custody within 30 days. *Id.* at *10.

*Woodley* expressly noted that although a decision to transfer a prisoner to prerelease custody affected "the conditions of confinement, not its duration," the Tenth Circuit had allowed prisoners to bring § 2241 petitions challenging "whether the BOP had followed the law in evaluating whether to approve such a transfer. Here, the Court has determined that the BOP did not follow the law with respect to its transfer decision involving petitioner; thus, the Court has determined that habeas relief is appropriate." *Id.* at *9 n.5.

The Tenth Circuit case on which *Woodley* relied reached the same conclusion: "Although transfer to community confinement affects the conditions of confinement—not its duration—we have recognized that petitions seeking review of whether BOP staff followed the law in evaluating an inmate for community confinement may be brought in a § 2241 habeas petition." *Jones v. English*, 817 F. App'x 580,*583 (10th Cir. 2020) (citing *Wedelstedt v. Wiley*, 477 F.3d 1160, 1168-69 (10th Cir. 2007)). The Eighth Circuit has also recognized that § 2241 petitions in this context are proper. For example, in *Fults v. Sanders*, the Eight Circuit granted relief to Fults, who brought a § 2241 petition arguing that the BOP had not followed the law in determining and limiting his time in prerelease custody. 442 F.3d 1088, 1088–89 (8th Cir. 2006).

A recent Report and Recommendation in this District found jurisdiction on this basis in a similarly situated petition. *Garcia*, No. 24-cv-4106 (KMM/SGE), ECF No. 13. The FSA mandated that Mr. Garcia be released to prerelease custody by December 27, 2025, but the BOP provided him with a placement date of April 8, 2025, due to a lack of halfway house bedspace. (Exhibit 1, at 4). The Government made an identical jurisdiction argument that the court rejected. Magistrate Judge Elkins found that "[t]he Eighth Circuit has recognized that habeas petitions challenging BOP decisions for violating federal law are proper." (Exhibit 1, at 6 (citing *Fults*, 442 F.3d at 1088-89 *and Elwood*, 386 F.3d 842)). Therefore, because "Mr. Garcia's Petition allege[d] that the BOP's refusal to transfer him

as mandated by the First Step Act violate[d] federal law," the Court "ha[d] jurisdiction to consider the Petition." (Exhibit 1, at 8).[8]

Mr. Osorio-Calderon's § 2241 petition similarly contends that the BOP has not followed the law in evaluating whether to transfer him to prerelease custody. He urges the Court to conclude that it has jurisdiction to reach this question.

## IV. Alternatively, the Court has Jurisdiction Under Mandamus.

Alternatively, if this Court finds that it lacks jurisdiction under § 2241, it should construe the petition as an "action in the nature of mandamus to compel an officer or employee of the United States . . . to perform a duty owed to the [petitioner]." 28 U.S.C. § 1361. Section 1361 grants district courts "original jurisdiction [over] any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *Knish* 347 F. Supp. at 686. This Court has discretion to construe a habeas petition as a petition for a writ of mandamus with the petitioner's approval. *See Cosby v. F.C.I. Sandstone Warden*, No. 18-cv-573, 2019 WL 438477, at *1 (D. Minn. Feb. 4, 2019) ("Although Petitioner's claim is not cognizable as a writ of habeas corpus under 28 U.S.C. § 2241, he may convert his claim into a mandamus action."); *cf. Mitchell v. U.S. Parole Comm'n*, 538 F.3d 948, 952 (8th Cir. 2008) (explaining that "a writ of mandamus is the proper method to compel the [Parole] Commission" to hold a statutorily required early-termination hearing and discussing result if habeas petition were

[8] Mr. Garcia has since been released to prerelease custody—though several months after his mandated date—and the parties have briefed whether or not that renders the case moot.

"construed as seeking mandamus"). In his Petition, Mr. Osorio-Calderon alleged that mandamus "is both proper and authorized" because of the BOP's "illegal application of agency regulation and statute," and asked the Court to "issue[] a Mandamus Order under 28 U.S.C. § 1361 directing the BOP transfer" to transfer him. (ECF No. 6, at 11, 16).

Mandamus relief is warranted here. "A district court may grant a writ of mandamus in extraordinary situations if: (1) the petitioner can establish a clear and indisputable right to the relief sought, (2) the defendant has a nondiscretionary duty to honor that right, and (3) the petitioner has no other adequate remedy." *Castillo v. Ridge*, 445 F.3d 1057, 1060-61 (8th Cir. 2006). Each of these factors is satisfied here. As explained above, the BOP had a nondiscretionary duty under the FSA to transfer Mr. Osorio-Calderon to prerelease custody on July 3, 2024. That right is clear and indisputable from the statute's text. *See, e.g.*, *In re Life Ins. Co. of N. Am.*, 857 F.2d 1190, 1193-95 (8th Cir. 1988) (interpreting statute's text and relevant precedent to find "clear and indisputable" right).

Finally, if this Court holds that habeas relief is not available, then Mr. Osorio-Calderon has no other adequate remedy. The Government suggests otherwise, citing *Spencer v. Haynes*, 774 F.3d 467 (8th Cir. 2014). (ECF No. 12, at 7). In *Spencer*, the Eighth Circuit discussed whether to *sua sponte* transform a *pro se* habeas claim into an action under 42 U.S.C. § 1983, but found it is better to give the petitioner the option before transforming the claim given the potential collateral consequences. *Id.* at 471. There are both legal and practical reasons why the suggestion in *Spencer* does not help Mr. Osorio-Calderon. First, § 1983 claims are typically based on constitutional violations, which

presents an impediment in a case like Mr. Osorio-Calderon's. *See id.* (discussing how the petitioner's potential claim was rooted in the Eighth Amendment); *Smith v. Warden of Duluth*, 18-CV-2555 (WMW/LIB), 2019 WL 3325837, at *3 (D. Minn. Apr. 23, 2019) ("Today, a prisoner in federal custody may challenge the *constitutionality* of the conditions of his confinement under *Bivens* to the same extent that a prisoner in state custody may challenge the *constitutionality* of the conditions of his confinement under § 1983 (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)) (emphasis added)), *adopted as modified*, 2019 WL 3323063 (D. Minn. July 24, 2019). Second, converting or bringing a § 1983 action is realistically out of reach for most in custody due to the cost. *See Sichting*, 2024 WL 4785007, at *3 ("Nonetheless, the Court agrees with the magistrate judge that the burden of paying a $350 filing fee may be considerable for Mr. Sichting. As such, it makes the most sense to dismiss the petition without prejudice and allow Mr. Sichting to choose whether to file a 42 U.S.C. § 1983 action."). Third, the imminent nature of this action—already staying in prison well past the statutory deadline—certainly cautions against protracted civil litigation. It cannot be the case that the BOP can keep someone past the date they must be transferred or released by law, without any available recourse under habeas, unless the petitioner is able to both pay a large sum and quickly litigate a fraught area of the law, just to hopefully achieve the relief the FSA already guarantees them. That is an "extraordinary" scenario. *See Castillo*, 445 F.3d at 1061 ("[W]hether a writ of mandamus should issue is largely a matter within the district court's discretion.").

If this Court finds it lacks jurisdiction under § 2241, then it should grant mandamus relief and order the BOP to transfer Mr. Osorio-Calderon to prerelease custody.

***

For the reasons outlined in his briefing and the record, Mr. Osorio-Calderon asks the Court to grant his petition.

Respectfully submitted,

DATED: May 16, 2025

*s/ Trevor N. Parkes*

Trevor N. Parkes
Attorney ID No. 0402172
Counsel & Project Director, First Step Act Resource Center
National Association of Criminal Defense Lawyers
1660 L St NW, 12th Floor
Washington, DC 20036

*Appointed Counsel for Petitioner Jose Osorio-Calderon*