# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

CIVIL NO. 24-CV-4106 (KMM/SGE)

Cory Ray Garcia,

Petitioner,

v.

B. Eischen,

Respondent.

**REPORT AND RECOMMENDATION**

This matter is before the Court on Petitioner Cory Ray Garcia's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition") (Dkt. No. 1), Respondent B. Eischen's Response ("Response") (Dkt. No. 9), and Mr. Garcia's reply (Dkt. No. 12). This matter has been referred to the undersigned by United States District Judge Katherine M. Menendez for report and recommendation under 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1. For the reasons set forth below, this Court recommends that the Petition be **GRANTED**.

## BACKGROUND

### I. Legal Framework

Under the Second Chance Act of 2007, the Bureau of Prisons ("BOP") must consider whether each inmate in its custody should be placed in a residential reentry center ("RRC") for up to 12 months or home confinement for up to 6 months at end of his sentence. 18 U.S.C. § 3624(c)(1). The BOP must consider the following factors when determining which facility is suitable for each individual prisoner: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and

characteristics of the prisoner; (4) any statement by the court that imposed the sentence (a) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (b) recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission. *Id.* § 3621(b). (See also Winger Decl., Dkt. No. 10, ¶ 16.) A prisoner's "Unit Team" reviews each inmate for possible prerelease RRC or home confinement placement and makes a referral to the BOP based on the factors under § 3624(b) and other factors "unique to the individual inmate and of which the inmate's Unit Team has unique knowledge and insight." (Winger Decl. ¶¶ 18-19.)

After the prisoner's Unit Team makes its individualized recommendation, the institution's warden approves the recommendation and forwards it to the BOP's Residential Reentry Manager ("RRM") field office. (Winger Decl. ¶ 20.) This office finalizes the recommendation after considering "the resources of the facility contemplated." (*Id.*) Once the RRM office receives the individualized recommendation, "there is no expectation the RRC or home confinement placement will be modified." (*Id.* (citing Ex. F at 20).)

In 2018, President Trump signed the First Step Act, which "allows prisons to help criminals transform their lives . . . so that we are not perpetuating the cycle of crime that continues to plague communities across the country . . . ." 164 Cong. Rec. 7642 (2018) (statement of Sen. Cornyn). With this law, Congress created a system through which prisoners could earn time credits to reduce their custodial sentence. Briefly, the law provides that eligible prisoners can earn 10 days of time credits for every 30 days of

successful participation in evidence-based recidivism reduction programming, and prisoners determined by BOP to be at a minimum or low risk for recidivating can earn an additional 5 days of time credits every 30 days. 18 U.S.C. § 3632(d)(4)(A). These First Step Act time credits ("FTCs") "shall be applied toward time in prerelease custody or supervised released." *Id.* § 3632(d)(4)(C). Congress also included a provision mandating "[t]he director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." *Id.*

## II. Mr. Garcia's Review

Mr. Garcia is an inmate at FPC Duluth serving a 120-month term of imprisonment for Conspiracy to Possess with Intent to Distribute and to Distribute Methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). (Winger Decl., Ex. A.) Mr. Garcia's sentence was imposed on August 18, 2020. He has a statutory release date of December 27, 2026. (Winger Decl., Ex. A at 2.) In other words, if he were to serve the entirety of his sentence, Mr. Garcia would be released December 27, 2026.

Mr. Garcia is eligible to earn FTCs under the First Step Act. (Winger Decl. ¶ 5, Ex. B.) From November 24, 2020 until June 20, 2021, Mr. Garcia earned 10 FTCs for every 30 days of programming. (*Id.* ¶ 11.) On June 20, 2021, Mr. Garcia began earning 15 FTCs for every 30 days of programming. (*Id.*) By the time he filed the Petition, Mr. Garcia had earned 365 days of FTCs towards early release and 325 days of FTCs towards pre-release RRC or home-confinement placement. (*Id.* ¶ 12, Ex. B at 1.) With prior custody credit, good conduct time credit, and 365 days of FTCs earned toward his early release, Mr. Garcia has a projected release date of December 27, 2025. (*Id.*, Ex. A at 3-4.) Under the First Step

Act, the BOP applies the remaining 325 days of FTCs Mr. Garcia earned to his time in RRC or home confinement before his release date. (*See id.*, ¶ 12.)

In August 2024, Mr. Garcia's Unit Team reviewed him for prerelease RRC placement and recommended a placement date of September 25, 2024. (Winger Decl. ¶ 21.) The Unit Team based this recommendation on Mr. Garcia's earned "9-months and 250 additional [FTCs]." (Winger Decl. ¶ 21; *id.* Ex. G.) The Unit Team forwarded this recommendation to the Residential Reentry Manager field office. (Winger Decl. ¶ 22.) However, the Residential Reentry Manager approved Mr. Garcia for an RRC placement date of April 8, 2025, due to "a lack of RRC bedspace availability." (Winger Decl. ¶ 22.)

### III. Procedure

Mr. Garcia filed the Petition on November 4, 2024. (Dkt. No. 1.) On December 18, 2024, United States District Judge Katherine M. Menendez ordered the BOP to respond to the Petition and, at the same time, appointed counsel to represent Mr. Garcia pursuant to 18 U.S.C. § 3006A. (Dkt. No. 6.) The BOP filed its response to the Petition on January 15, 2025 (Dkt. No. 9, "Resp. Mem."), and counsel for Mr. Garcia filed a reply on February 6, 2025 (Dkt. No. 12, "Reply"). The parties' briefing has been comprehensive, and the issues are ripe for review.

## ANALYSIS

Mr. Garcia asserts that the BOP's decision not to place him in RRC until April 8, 2025, deprives him of 62 days of time credits that he earned and that the BOP is required to credit him under the First Step Act. He requests the BOP be ordered to place him in prerelease custody immediately. The BOP argues that this Court should dismiss Mr.

Garcia's petition because (1) this Court lacks jurisdiction over the Petition because it challenges Mr. Garcia's conditions of confinement, (2) Mr. Garcia failed to exhaust his administrative remedies, and (3) Mr. Garcia does not have a right to RRC or home confinement placement.

**I. Subject Matter Jurisdiction**

At the outset, the BOP argues that this Court lacks subject matter jurisdiction over Mr. Garcia's claim. Mr. Garcia seeks relief under 28 U.S.C. § 2241, asserting that his ongoing detention is in violation of mandatory obligations imposed on the BOP by the First Step Act, 18 U.S.C. § 3632. Habeas relief is available under § 2241 where a prisoner is in custody in violation of the Constitution of the United States or federal law. *See* 28 U.S.C. § 2241(c)(3).

The BOP argues that this Court lacks jurisdiction because (1) placement of an inmate in RRC or home confinement concerns the *place* or *conditions* of confinement rather than the duration or legality of confinement, and (2) placement of an inmate into RRC or home confinement is left to BOP discretion and exempted from review under 18 U.S.C. § 3624. The BOP posits that habeas relief is unavailable to Mr. Garcia because "[t]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody[.]" *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Thus, habeas relief is not available for inmates to challenge their "conditions of confinement," *Spencer v. Haynes*, 774 F.3d 467, 469-71 (8th Cir. 2014), because it can apply only to "the validity of [an inmate's] conviction or the length of his detention[.]" *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam). Mr. Garcia cannot, the BOP's argument goes, use a

habeas petition to challenge the BOP's discretionary placement decision because it does not challenge the fact or duration of his custody, only the location (i.e., conditions) of his confinement.

Mr. Garcia argues that the First Step Act "requires the BOP to move people to supervised release or to prerelease custody when the time credits they have earned equal the remaining time on their sentences." (Reply at 1.) The language of § 3632 imposes a mandatory action on the BOP, he argues, and this Court has jurisdiction to determine whether the BOP followed the law in deciding whether to approve Mr. Garcia's transfer. The Eighth Circuit has recognized that habeas petitions challenging BOP decisions for violating federal law are proper. *See Fults v. Sanders*, 442 F.3d 1088, 1088-89 (8th Cir. 2006); *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004). Further, Mr. Garcia argues, the cases that the BOP relies on to argue that jurisdiction is lacking address different statutory provisions and therefore are of little applicability. *See*, *e.g.*, *Williamson v. Eischen*, Case No. 23-cv-2165, 2024 WL 4151497, at *3 (D. Minn. Aug. 12, 2024) (analyzing petitioner's habeas claim challenging non-transfer under 18 U.S.C. § 3624), *report and recommendation adopted*, 2024 WL 4151331 (D. Minn. Sept. 11, 2024). The Petition asserts that the BOP's decision not to transfer Mr. Garcia violated federal law. Although this could affect the conditions of his confinement, Mr. Garcia argues that whether the BOP followed the law is a separate question that falls under this Court's jurisdiction.

The BOP ignores a key concept underpinning Mr. Garcia's argument—that the BOP's failure to place him in RRC or home confinement as required by § 3632 violates federal law. The statute's plain text provides that "[t]ime credits earned . . . by

prisoners . . . *shall* be applied toward time in prerelease custody or supervised release" and that "[t]he Director of the Bureau of Prisons *shall* transfer eligible prisoners . . . into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C) (emphasis added). Mr. Garcia argues that this statutory language requires the BOP to develop a program encouraging inmates to participate in recidivism reduction programming and, upon completion, to transfer eligible prisoners into either RRC or home confinement upon completion of the statutory recidivism reduction program. This poses a question of not the *conditions* of Mr. Garcia's confinement, but whether his confinement violates a federal law mandating his transfer. Courts have reviewed similar policies and statutes in previous actions under § 2241 when inmates alleged that the BOP was acting contrary to a statute. *E.g.*, *Miller v. Whitehead*, 527 F.3d 752 (8th Cir. 2008); *Fults*, 442 F.3d 1088.

The BOP asserts that this Court lacks jurisdiction, pointing to case law that addresses different statutes with different language that grant different amounts of discretion. For example, in *Kruger v. Erickson*, the prisoner made a constitutional challenge to his forced blood draw via a petition for habeas corpus under 28 U.S.C. § 2254. 77 F.3d 1071. The Eighth Circuit decided that a blood draw, like the use of leg restraints or shackles, relates to "the conditions of confinement." 77 F.3d at 1073 (citing *Rodriguez*, 411 U.S 475). It proceeded to determine that Mr. Kruger's claim was really a claim under 42 U.S.C. § 1983 rather than a petition for habeas corpus because it did not involve the legality of his custody or the duration of his custody (such as a loss of good time). *Id.* "If the prisoner is not challenging the validity of his conviction or the length of his detention, such as a loss of good time, then a writ of habeas corpus is not the proper remedy." *Id.*; *see*

*also Spencer*, 774 F.3d at 470-71 (quoting *Kruger*). *Krueger*, however, was decided before Congress enacted the First Step Act of 2018, and as such, the mandatory obligation that Mr. Garcia alleges the BOP must satisfy did not yet exist.

The BOP also relies on *Johnson v. Birkholz*, Case no. 21-cv-2017 (PJS/LIB), 2022 WL 3135304 (D. Minn. Aug. 5, 2022), to argue that Mr. Garcia's petition is not cognizable on habeas review because it amounts only to an attack on the conditions of the prisoner's confinement. But the petitioners in *Johnson* argued only that they were *eligible* for transfer to home confinement under 18 U.S.C. 3621(b)—they did not address the First Step Act requirement that they be transferred to home confinement. *See id.* at *1 n.2 (limiting review to claims set forth in amended petition), *and Johnson v. Birkholz*, Case no. 21-cv-2017 (PJS/LIB), Am. Pet., Dkt. no. 6-3 (D. Minn., filed Sept. 23, 2021). Because the petitioners in *Johnson* did not raise the mandatory language in the First Step Act as a ground for their requested relief nor cite to § 3632(d)(4)(C) in their petition, the court did not address it. Thus, *Johnson* answers a different question and has limited applicability.

Ultimately, Mr. Garcia argues that the First Step Act creates a new entitlement to prerelease custody, the deprivation of which is akin to "a loss of good time." He argues that Congress has determined that prisoners who complete rehabilitative programming are entitled to release to RRC placement or home confinement. This entitlement did not exist when *Kruger* and *Spencer* were decided and was not asserted as a basis for relief in *Johnson*. Mr. Garcia's Petition alleges that the BOP's refusal to transfer him as mandated by the First Step Act violates federal law. Accordingly, this Court determines that it has jurisdiction to consider the Petition.

## II. Administrative Exhaustion

The BOP argues that Mr. Garcia's Petition should be denied because he failed to exhaust his administrative remedies. Generally, a prisoner challenging a BOP action must exhaust administrative remedies. *Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009). However, this requirement is judicially created; it does not appear in the text of 28 U.S.C. § 2241. "[W]here Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). In appropriate circumstances, courts allow exceptions to judicially created exhaustion requirements where the administrative process would be futile because the agency has predetermined the issue or to prevent prejudice or injustice. *See*, *e.g.*, *Frango v. Gonzales*, 437 F.3d 726, 728-29 (8th Cir. 2006) (recognizing that courts will allow exceptions to judicially created exhaustion requirements to prevent injustice); *Elwood v. Jeter*, 386 F.3d at 844 n.1 (exhaustion requirement waived where government conceded that further administrative proceedings "would be futile"); *Gonzales v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (finding that a court may waive the exhaustion requirement for a § 2241 petition to prevent prejudice caused by unreasonable delay or when an agency has predetermined an issue); *Knight v. Jett*, Case no. 09-cv-2293 (JNE/JSM), 2010 WL 4052182, at *4 (D. Minn. Sept. 13, 2010) (waving exhaustion requirement of § 2241 petition), *report and recommendation adopted*, 2010 WL 4053278 (D. Minn. Oct. 14, 2010).

When deciding whether to require exhaustion of administrative remedies, courts "balance the interest of the individual in retaining prompt access to a federal forum against countervailing institutional interests favoring exhaustion." *McCarthy*, 503 U.S. at 146. The

Court identified several exceptions in *McCarthy*, including "where the administrative body is shown to be biased or has otherwise predetermined the issue before it." *Id.* at 148. Here, the BOP states that its decision to delay Garcia's placement is caused by "the lack of available RRC bed space . . . ." (Resp. Mem. at 6.) As such, the issue raised has already been predetermined, and nothing before this Court suggests that the BOP might change its mind if Mr. Garcia had pursued the administrative remedy procedure.

Furthermore, allowing this exception to the administrative exhaustion requirement does not undermine the Government's institutional interests. Requiring administrative exhaustion protects the agency's exercise of its powers by giving it "the opportunity to apply its expertise, exercise the discretion delegated to it by Congress, and correct its own alleged errors . . . ." *United States v. Dico, Inc.*, 136 F.3d 572, 576 (8th Cir. 1998). Nothing before the Court suggests that the BOP would alter its position or change the date of Mr. Garcia's RRC placement had he pursued relief through the administrative process, especially as the basis of the BOP's decision is not that he fails to satisfy established criteria, but rather that there is not enough bed space.

Rather, the issue here is one of statutory interpretation—may the BOP interpret the First Step Act to allow it to delay transferring an eligible prisoner to prerelease custody or home confinement? Statutory interpretation is well within the Court's expertise, and there is no need to further develop the factual record through administrative proceedings.  Thus, the institutional interests that the exhaustion requirement protects do not counsel this Court to require exhaustion in this case.

This case falls within one of the exceptions to the general rule requiring administrative exhaustion, and the BOP has affirmatively represented that the reason for its timing decision is a "lack of resources." (Resp. Mem. at 6; Winger Decl. ¶ 24.) The balancing of interests favors Mr. Garcia's interests in having the issue promptly decided over the institutional interests protected by the exhaustion requirement. Thus, the Court waives the exhaustion requirements and addresses the merits of Mr. Garcia's claim.

## III. The First Step Act requires BOP to transfer Mr. Garcia.

As to the merits of the Petition, the BOP argues that Mr. Garcia does not have a right to home confinement placement because "Section 3624(c) does not create a mandatory duty on the BOP to place Garcia in home confinement." (Resp. Mem at 16.) As stated above, Mr. Garcia argues that § 3632 imposes an obligation on the BOP to transfer eligible prisoners.

"When interpreting a statute, we begin with the text." *Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.*, 9 F.4th 803, 806 (8th Cir. 2021) (citing *Union Pac. R.R. Co. v. United States*, 865 F.3d 1045, 1048 (8th Cir. 2017)). Section 3632(d)(4)(C) provides:

> Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities *shall* be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons *shall transfer eligible prisoners*, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C) (emphasis added). "It is undisputed that the word 'shall' [in a statute] imposes a mandatory command." *Bufkin v. Collins*, 604 U.S. ---, 145 S.Ct. 728, 737 (Mar. 5, 2025). In passing the First Step Act, Congress determined that prisoners who

complete rehabilitative programming "shall" or "must" be transferred to—i.e., are entitled to—RRC placement or home confinement. The statute does not give the BOP discretion to decide whether or when to transfer eligible prisoners; Congress made that determination.[1] Instead, the plain language of section 3632(d)(4)(C) commands the BOP to transfer eligible prisoners into prerelease custody or supervised release.

The BOP argues that Mr. Garcia has no right to a transfer, and that the BOP has discretion in their transfer decision under § 3624(c), which does not create a right to a prerelease community placement. (Resp. Mem. at 16.) This argument, however, has two related and unavoidable flaws: it ignores the plain language of § 3632(d)(4)(C) and relies on cases that address a different statutory provision. *See* Resp. Mem at 16 (citing *Gant v. King*, 2023 WL 6930764, at *4 (D. Minn. July 7, 2023), *adopted*, 2023 WL 6910771 (D. Minn. Oct. 19, 2023) (analyzing BOP's decision and discretion under 18 U.S.C. §§ 3621 and 3624); *Kern v. Fikes*, 2022 WL 2959973, at *6 (D. Minn. June 16, 2022), *adopted*, 2022 WL 2953933 (D. Minn. July 26, 2022) (same)).

Under § 3632(d)(4)(C), the Director of the BOP "shall transfer" prisoners whose time credits equal the time left on their sentence. That section does not contain the same "to the extent practicable" language that § 3624(c) contains. "[D]ifferences in statutory language convey differences in meaning." *Union Pac. R.R.*, 865 F.3d at 1050 (citing

[1] Congress also enacted § 3624(g)(11), which provides, "The Director of the Bureau of Prisons shall ensure there is sufficient prerelease custody capacity to accommodate all eligible prisoners." Taken together, the statutory scheme requires the BOP to ensure that it can accommodate all prisoners who are eligible, *not* all prisoners that it, to the extent practicable, places in either RRC or home confinement. Thus, the statute requires the BOP to maintain sufficient space for prisoners as they become eligible.

*Henson v. Santander*, 582 U.S. 79, 85-86 (2017)). And where Congress uses certain language in one part of a statute and different language in another, the natural implication is that it did so intentionally. *See Russello v. United States*, 464 U.S. 16, 23 (1983); *Union Pac. R.R.*, 865 F.3d at 1050 (citing *Advocate Health Care Network v. Stapleton*, 581 U.S. 468, 477 (2017)).

Congress chose to use the directive language "shall" in § 3632(d)(4)(C) knowing full well that it could have used different language. In fact, Congress qualified a "shall" directive with "to the extent practicable" in a neighboring subsection in the same statute. *See* 18 U.S.C. § 3632(c) ("The System shall . . . provide that prisoners with a similar risk level be grouped together in housing and assignment decisions *to the extent practicable*." (emphasis added)). Section 3624 contains multiple instances of qualifying a mandatory directive with "to the extent practicable," showing that Congress knew how to explicitly leave the BOP discretion where it determined discretion was appropriate. *See*, *e.g.*, *id.* §§ 3624(c)(1) (BOP "shall, to the extent practicable, ensure" that a prisoner spends the final months of imprisonment in an RRC or other facility "that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community."); 3624(c)(2) (BOP "shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted[.]"); 3624(g)(4) (Director of the BOP "shall, to the extent practicable, provide that increasingly less restrictive conditions shall be imposed on prisoners" who demonstrate compliance with prerelease conditions); 3624(g)(5) (where a prisoner violates

a condition of his prerelease custody, "[i]f the violation is nontechnical in nature, the Director of the [BOP] shall revoke the prisoner's prerelease custody").

Had Congress wanted to give the BOP discretion to decide whether to transfer eligible prisoners, it had an easy way to do so—adding only four words to § 3632(d)(4)(C) that would fundamentally change the mandatory nature of the BOP's obligation. That amendment would have accomplished exactly what Congress did in § 3624(c). But Congress did not adopt that ready alternative, and that drafting decision indicates that Congress did not in fact want the BOP's transfer obligation to be limited by what the BOP determines is "practicable." *See Lozano v. Montoya Alvarez*, 572 U.S. 1, 16 (2014) (when legislators did not adopt "obvious alternative" language, "the natural implication is that they did not intend" the alternative).

Multiple courts have held that the BOP has no discretion to delay or refuse the transfer of an eligible prisoner to prerelease custody where that transfer is mandatory. *See, e.g.*, *Woodley v. Warden, USP Leavenworth*, 2024 WL 2260904 (D. Kan. May 15, 2024); *Doe v. Fed. Bur. of Prisons*, 2024 WL 455309, at *1-4 (S.D.N.Y. Feb. 5, 2024) (transfer required despite participation in witness protection program); *Ramirez v. Phillips*, 2023 WL 8878993, at *4 (E.D. Cal. Dec. 22, 2023); *Komando v. Luna*, 2023 WL 310580, at *4-8 (D.N.H. Jan. 13, 2023) (transfer to prerelease custody mandatory despite outstanding detainer, BOP's discretion did not allow BOP to refuse transfer); *Sierra v. Jacquez*, 2022 WL 18046701, at *4 (W.D. Wash. Dec. 27, 2022) (transfer to prerelease custody mandatory despite immigration detainer); *Jones v. Engelman*, 2022 WL 6563744, at *9-13 (C.D. Cal. Sept. 7, 202) (transfer to prerelease custody mandatory despite pending charges

and potential flight risk), *report and recommendation adopted in relevant part*, 2022 WL 6445565 (Oct. 7, 2022). It remains within the BOP's discretion to determine whether to transfer Mr. Garcia to an RRC or to home confinement or to supervised release. *See Ramirez*, 2023 WL 878993, at *4; *Komando*, 2023 WL 310580, at *6. And this Court does not require that Mr. Garcia be placed in a particular facility or location—thus leaving to BOP the discretion to choose the particular *facility*. The Court notes, however, that § 3624(g)(11) requires the BOP to "ensure there is sufficient prerelease custody capacity to accommodate all eligible prisoners." Thus, the plain language of the statute does not give the BOP discretion to refuse or delay transferring eligible prisoners based on concerns of practicability.

It is undisputed on the record before this Court that Mr. Garcia is eligible for a transfer to RRC or home confinement under the First Step Act and section 3632(d)(4)(C) requires the BOP to transfer Mr. Garcia.

## IV. Conclusion

Mr. Garcia has accumulated enough earned FTCs that the BOP must satisfy its mandatory obligation under 18 U.S.C. § 3632(d)(4)(C) to transfer him into prerelease custody or supervised release. Because the BOP has failed to do so, Mr. Garcia's custody violates federal law. To help ensure that Mr. Garcia's claims are addressed in advance of his scheduled transfer on April 8, 2025, this Court will shorten the objection period under Local Rule 72.2 as follows: Respondent may file and serve specific written objections to this Report and Recommendation within **7 days** of the issuance of this Report and

Recommendation, and Petitioner may file and serve a response within **4 days** of any Objection.

## RECOMMENDATION

Based on all the files, records, and proceedings herein, this Court hereby **RECOMMENDS** that:

1. Mr. Garcia's Petition (Dkt. No. 1) be **GRANTED**; and
2. Respondent be ordered to transfer Mr. Garcia to either prerelease custody or supervised release as soon as is practicable, and in any case within 5 days of the date of the District Court's Order.

Dated: March 25, 2025

*s/ Shannon G. Elkins*
SHANNON G. ELKINS
United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

As set forth above and under Local Rule 72.2, Respondent may file and serve specific written objections within **7 days** after being served with a copy of of the Report and Recommendation. A party may respond to those objections within **4 days** after being served a copy of the objections. All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).