**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Jose Osorio-Calderon,

Petitioner,

v.

Warden FCI Sandstone,

Respondent.

Case No. 25-cv-398 (LMP/DLM)

**REPORT AND RECOMMENDATION**

---

Before the Court is Petitioner Jose Osorio-Calderon's Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. 6.) In his petition, Mr. Osorio-Calderon raises a single challenge: he claims that the Federal Bureau of Prisons ("BOP") should have transferred him from prison to prerelease custody in a residential reentry center ("RRC") or home confinement by applying his earned First Step Act ("FSA")[1] time credits ("FTCs"), and that the BOP is violating the FSA by failing to immediately do so. He properly names as Respondent the Warden of his BOP facility at the Federal Correctional Institution located in Sandstone, Minnesota. The BOP argues that the FSA does not entitle an imprisoned person to placement at a prerelease location at any specific time, nor does the vehicle of a habeas petition allow a petitioner to challenge the location of their

[1] Congress enacted the First Step Act in 2018 in an effort to reduce the federal prison population while also creating mechanisms for maintaining public safety by reducing recidivism risk. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018); *see also* Congressional Research Service, *The First Step Act of 2018: An Overview*, at 1, https://perma.cc/9EJ4-2ZJ8 (2019).

confinement. The petition comes before the Court for review under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts,[2] and has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons below, the Court recommends that Mr. Ocasio-Calderon's petition be granted, and Mr. Osorio-Calderon be transferred to prelease custody within five days of any order adopting this Report and Recommendation.

## BACKGROUND

A federal court in the District of Puerto Rico sentenced Mr. Osorio-Calderon on January 30, 2018, to a 151-month term of imprisonment for coercion and enticement of a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b). (Doc. 13, Apple Decl., Ex. A at 2.) Once a person is sentenced to a term of federal imprisonment, as Mr. Osorio-Calderon was, the person is committed to the BOP's custody until that person's sentence expires or they are entitled to earlier release for good conduct. 18 U.S.C. § 3621(a). Congress also gave the BOP general authority—subject to other statutory carve-outs—to designate the location of a prisoner's confinement, their security designation, their programmatic needs, their health needs, their faith-based needs, and other matters similarly related to their conditions during imprisonment. *Id.* § 3621(b). The BOP has thus housed Mr. Osorio-Calderon in various locations during his term of incarceration, including, but

[2] Mr. Ocasio-Calderon does not bring his habeas petition pursuant to 28 U.S.C. § 2254. Nevertheless, the Court may apply the Rules Governing Section 2254 Cases to his petition. *See* Rule 1(b).

not limited to, the Federal Correctional Institution in Texarkana, Texas ("TEX"), the Federal Correctional Institution in Seagoville, Texas ("SEA"), the Federal Transfer Center in Oklahoma City, Oklahoma ("OKL"), and his current location at the Federal Correctional Institution in Sandstone, Minnesota. *See* BOP, *Our Locations*, https://perma.cc/H2RL-PGTW (last visited June 17, 2025).

Mr. Osorio-Calderon's petition focuses on one of the statutory carve-outs that he claims alters the BOP's discretion over some matters related to his imprisonment: the FSA. One effect of the FSA's enactment in 2018 was a new statutory requirement that the BOP develop a system to assess imprisoned individuals' programmatic needs and give them opportunities to participate in needs-based programming. *See* 18 U.S.C. §§ 3621(h), 3632(d). The BOP did so, and it deemed Mr. Osorio-Calderon eligible to participate in the FSA's assessment and programming opportunities while incarcerated. (Doc. 13, Apple Decl., ¶¶ 4–5; *id.*, Ex. B.) One incentive for participation in FSA programming is the ability to earn the previously mentioned FSA time credits ("FTCs"). These FTCs can be applied to shorten the time from an inmate's release date to their supervised release period, as well as their date for eligibility to be placed in home confinement or an RRC before release. 18 U.S.C. § 3632(a)(7), (d)(4).

It is undisputed that Mr. Osorio-Calderon has indeed earned FTCs for participating in qualifying programming and activities. He has earned 10 FTCs for every 30 days of participation from December 21, 2018, through July 17, 2019, after which he began to earn 15 FTCs for every 30 days of participation. (Doc. 13, Apple Decl. ¶ 10; *id.*, Ex. B.) The BOP represents that, as of April 2, 2025, Mr. Ocasio-Calderon had earned 1,095 FTCs, 365

of which could be applied to his early release according to the FSA, and the rest of which could be credited towards prerelease placement in an RRC or home confinement. (*Id.* ¶ 11; *id.*, Ex. B.) When the BOP applies Mr. Osorio-Calderon's 365 days earned under the FSA against his 181-month sentence set to end on July 3, 2027, his projected FSA-based release date is July 3, 2026. (*Id.* ¶ 12; *id.*, Ex. B.) This is the anticipated release date currently listed on the BOP's website for Mr. Osorio-Calderon. BOP, *Find an Inmate*, https://perma.cc/Q32A-XN8Q (last visited June 17, 2025).

Mr. Osorio-Calderon has earned more FTCs than 365, and under the FSA, such credits hasten his start date for prerelease custody. The FSA contemplates that "[t]ime credits earned . . . by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). This process is effected by the BOP which "shall transfer eligible prisoners . . . into prerelease custody or supervised release." *Id.* Based on the BOP's April 2, 2025 calculations, Mr. Osorio-Calderon's prerelease custody eligibility date would be 730 days before July 3, 2026, or July 3, 2024—a date now long passed.

As of April 2, 2025, the BOP in fact determined that Mr. Osorio-Calderon's conditional prerelease custodial placement date would be July 3, 2024. (Doc. 13, Apple Decl., Ex. B.) It also determined that his prerelease custodial placement should be in Puerto Rico where he would report for his period of supervised release. (*Id.* ¶ 16; *id.*, Ex. F.)[3] Mr.

[3] Mr. Osorio-Calderon asked the BOP to investigate placement in Northern District of New York to be near his sister. (Docs. 6, Ex. 2(c); 13, Apple Decl., ¶ 15.) The BOP denied this

Osorio-Calderon's Unit Team thus requested his placement in an RRC in Puerto Rico for 915 days before Mr. Osorio-Calderon's July 3, 2026 early release date—the total number of FTCs beyond his 365 applied to early release combined with the Unit Team's Second Chance Act recommendation.[4] (*Id.* ¶ 17; *id.*, Ex. G.) If approved, Mr. Osorio-Calderon's prerelease custodial placement date would have begun even earlier on December 31, 2023. However, the RRC in Puerto Rico denied the request, claiming placement was not possible because of local ordinances related to sex offenders' proximity to locations with minors at nearby schools or daycare centers in Puerto Rico, which they found applicable to Mr. Osorio-Calderon's criminal offense. (*Id.* ¶ 18; *id.*, Ex. H.) The BOP represents that no other

---

placement request because it found the residence unsuitable for supervision. (Docs. 6, Ex. 2(c); 13, Apple Decl., ¶ 15; *id.*, Ex. F.)

[4] Under the Second Chance Act of 2007 ("SCA"), the BOP must consider whether each inmate in its custody should be placed in an RRC for up to 12 months or home confinement for up to six months at end of their sentence. 18 U.S.C. § 3624(c)(1). The BOP must consider the factors below when determining which facility is suitable for each individual prisoner:

> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence--
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b)(1)–(5). A prisoner's "Unit Team" reviews each inmate for possible prerelease to an RRC or home confinement and makes a referral to the BOP based on the factors under § 3624(b) and other factors "unique to the individual inmate and of which the inmate's Unit Team has unique knowledge and insight." (Doc. 13, Apple Decl. ¶ 14.)

facilities are a viable prerelease placement for Mr. Osorio-Calderon in Puerto Rico. (*Id.* ¶ 18; *id.*, Ex. I.)

Mr. Osorio-Calderon claims that he was eligible for prerelease custody at least by mid-September 2024 based on the BOP's FSA time credit assessment from November 2, 2024. (Doc. 6 at 8, ¶¶ 1, 16; *id.*, Ex. 3.) When he understood no such transfer to prerelease custody would occur, he appealed the BOP's failure to place him in prerelease custody using the BOP's administrative grievance processes, seeking immediate placement in prerelease custody. (*Id.* at 2–4.) He filed an informal request ("BP-8") and received an informal decision denying his request on August 17, 2024 (*id.* at 2; *id.*, Ex. 2(a)), which he appealed to no avail, receiving a denial in response by the warden of his facility on September 4, 2024 ("BP-9") (*id.* at 2; *id.*, Ex. 2(b)). He then submitted a formal request to the regional office ("BP-10"), which the BOP denied on September 23, 2024 (*id.* at 3; *id.*, Ex. 2(c)), followed by a final central office appeal ("BP-11") denied on November 5, 2024 (*id.* at 4; *id.*, Ex. 2(d)). In each of these requests and appeals, Mr. Osorio-Calderon claimed his prerelease custody was set to start but the BOP was wrongly denying him transfer, and the BOP representatives responded that without a viable prerelease placement location, Mr. Ocasio-Calderon did not qualify for prerelease placement at the time of his requests and appeals. (*Id.*, Exs. 2(a)–(d).) In the BOP's final decision, the representative noted that while "[BOP] staff refer inmates for pre-release placement to the appropriate [RRC], . . . the final decision as to the community program or placement length is within the discretion of the RR[C]." (*Id.*, Ex. 2(d).) The representative also advised that "[n]o inmate is entitled to either [RRC] placement or placement of a particular duration." (*Id.*)

Based on these denials, Mr. Osorio-Calderon now petitions this Court to review the BOP's failure to place him in prerelease custody based on his earned FTCs and order his immediate transfer to prerelease custody based on the FSA, or alternatively, issue a writ of mandamus under 28 U.S.C. § 1361 requiring that the BOP transfer him to prelease custody. (*Id.* at 16 ¶¶ 1, 3.)

The BOP asks the Court to dismiss Mr. Osorio-Calderon's petition because the Court lacks jurisdiction to review the BOP's decisions about a prisoner's place of confinement. (Doc. 12 at 1.) The BOP also argues that, even if the Court had jurisdiction, no federal law entitles Petitioner to be transferred to prerelease custody at any particular time. (*Id.*)

During briefing on the petition, the Supreme Court issued its decision in *Trump v. J. G. G.*, 604 U.S. --, (2025) (per curiam), and the Court ordered supplemental briefing "on whether federal habeas law concerning place of confinement has changed, and if so, how the Court should apply it to the instant habeas petition." (Doc. 16.) Supplemental briefing is complete, and the petition is now ripe for review.

**DISCUSSION**

A federal court may grant habeas relief to a prisoner who, among other things, "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of their sentence, but rather, its execution after their conviction. *See Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002). This includes a challenge to the computation of a prisoner's sentence. *See Preiser v. Rodriguez*, 411 U.S.

475, 498 (1973) (petitions seeking "immediate release or a speedier release from . . . confinement" are "the heart of habeas corpus").

## I. THIS COURT HAS JURISDICTION TO REVIEW MR. OSORIO-CALDERON'S PLACE OF CONFINEMENT CLAIM.

Mr. Osorio-Calderon's claim concerns the date that his prelease custody should lawfully commence. The Eighth Circuit has historically treated such claims as "conditions-of-confinement" claims that federal courts lack jurisdiction to review because habeas permits only challenges to the fact or duration of a prisoner's confinement. *See Spencer v. Haynes*, 774 F.3d 467, 470–71 (8th Cir. 2014). Following this binding precedent, "[c]ourts in this District have thus repeatedly recognized that federal courts lack jurisdiction to review BOP decisions regarding a prisoner's confinement location." *Arellano v. Eischen*, No. 24-cv-2478 (JRT/DTS), 2024 WL 5358432, at *3 (D. Minn. Dec. 23, 2024) (collecting cases), *R. & R. adopted*, 2025 WL 295146 (D. Minn. Jan. 24, 2025). While such law has been clear and straightforward to apply, the Supreme Court recently addressed a habeas case in *Trump v. J.G.G.* that appears to complicate—if not upend—this precedent concerning whether courts have jurisdiction to review habeas petitions that challenge a prisoner's place of confinement.

The *J.G.G.* case arose out of the federal government's transfer "of Venezuelan immigrants detained in the United States to a foreign prison in El Salvador . . . without any due process of law . . . ." 145 S. Ct. at 1007 (Sotomayor, J., Kagan, J., Jackson, J., (dissenting) and Barrett, J., (dissenting in part)). In support of these transfers, President Donald J. Trump issued a Proclamation under the Alien Enemies Act ("AEA") to detain

and remove certain Venezuelan nationals because he claimed that they belonged to a foreign terrorist organization. *Id.* at 1005. A group of five of the Venezuelan nationals, on behalf of a putative class, filed a habeas petition that ultimately became a civil action under the Administrative Procedure Act ("APA"), seeking injunctive and declaratory relief against their removal under the Proclamation. *Id.* The District Court for the District of Columbia issued two temporary restraining orders ("TROs") preventing the noncitizens' removal and provisionally certifying a class of noncitizens subject to the Proclamation. *Id.* The D.C. district court extended the TROs, and the government sought an emergency stay of those orders, which the D.C. Circuit denied. *Id.* The government then asked the Supreme Court to vacate the orders. *Id.*

Relevant here, the Supreme Court granted the government's application to vacate the orders, holding that challenges to removal under the AEA were properly brought by filing a habeas corpus petition rather than a civil action bringing an APA claim because the claims necessarily implicated the validity of the detainees' confinement and removal—claims that "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Id.* The Court then explained that "immediate physical release [is not] the only remedy under the federal writ of habeas corpus," noting that habeas is the proper vehicle to challenge one's death sentence or the enforcement a verdict in federal court with a term of incarceration in a state prison. *Id.* at 1005–06 (quoting *Peyton v. Rowe*, 391 U.S. 54, 67 (1968); citing *Nance v. Ward*, 597 U.S. 159, 167 (2022); *In re Bonner*, 151 U.S. 242, 254 (1894)). The Supreme Court also ruled that the proper venue for such "core" habeas petitions is the district of confinement, which meant that the noncitizens should have

brought their habeas petition in the District of Texas where they were confined rather than in the District of Columbia. *Id.* at 1005–06.

Taking a broad view of the per curiam opinion in *J.G.G.*—and setting aside the AEA, APA, and venue-related issues irrelevant to Mr. Osorio-Calderon's habeas petition—two fundamental implications from the *J.G.G.* decision emerge: petitioning for a writ of habeas corpus is the right vehicle to challenge the federal government's decision to transfer a person in their custody to a different location (or not), and federal courts have jurisdiction to hear such challenges brought by habeas petitions. Such challenges, to be clear, are place of confinement challenges. These conclusions are reinforced by Justice Kavanaugh's dissent which emphasizes that habeas has long provided the proper vehicle for challenges to transfers in both the extradition and wartime detainee contexts. *Id.* at 1007 ("And going back to the English Habeas Corpus Act of 1679, if not earlier, habeas corpus has been the proper vehicle for detainees to bring claims seeking to bar their transfers.") (Kavanaugh, J., dissenting).

The application of *J.G.G.* here is that this Court has jurisdiction to review the claim of Mr. Osorio-Calderon that the BOP should have, by statute, transferred him to prerelease custody sometime in 2024.[5] Petitioner has persuasively argued that the BOP urges too

[5] The BOP points out that the Court recently found it lacked jurisdiction to consider a petitioner's claim in *Walton v. Rardin*, No. 25-cv-1673 (NEB/DLM), (Doc. 6 (R. & R.)) (D. Minn. May 22, 2025). This case's facts are distinguishable. In *Walton*, the Petitioner asked the Court to "order the BOP to file a form needed to change his [Public Safety Factor]" which is a request to change "relevant factual information regarding the inmate's current offense, sentence, criminal history or institutional behavior that requires additional security measures be employed to ensure the safety and protection of the public," (*id.* at 2 (quoting Fed. Bureau of Prisons, U.S. Dep't of Justice, Program Statement P5100.08,

narrow of a reading of Eighth Circuit "conditions-of-confinement" caselaw limiting jurisdictional review of habeas claims challenging transfers (or lack thereof) required by federal statute. (Doc. 17 at 2.) The Court agrees that this greater breadth to what is cognizable under habeas law is exactly what the *J.G.G.* opinion highlights. The Court therefore finds that it does not lack jurisdiction to review Mr. Osorio-Calderon's transfer-related challenge brought in his habeas petition based on the holding in *J.G.G.* based on this Court's highest binding authority.

Even if *J.G.G.* does not provide this Court with jurisdiction to review Mr. Osorio-Calderon's habeas claim—which the Court has already found that it does—there is a second reason that jurisdiction exists to review his claim. At least one court in this District has persuasively found that courts have jurisdiction to review habeas claims that allege the BOP has violated federal law by failing to transfer an imprisoned person if a statute requires it. *See Garcia v. Eischen*, 24-cv-4106 (KMM/SGE) (Doc. 13 (R. & R.)) (D. Minn. Mar. 25, 2025) (citing *Fults v. Sanders*, 442 F.3d 1088, 1088–89 (8th Cir. 2006); *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004)). The *Garcia* court found that none of the prior caselaw allegedly depriving the court of jurisdiction applied because those cases predated the FSA or responded to different questions about it. (*Id.* at 6–8 ("This entitlement did not exist when *Kruger* [*v. Erickson*, 77 F.3d 1071 (8th Cir. 1996) (per curiam)] and *Spencer*[, 774

---

Inmate Security Designation and Custody Classification, ch. 5 at 7 (2006)). Ordering changes to an imprisoned individual's record does not invoke habeas relief in the Court's view, while Mr. Osorio-Calderon's claim that the BOP is violating the FSA's mandatory language that he be transferred to prerelease custody does.

F.3d at 469–71] were decided and was not asserted as a basis for relief in *Johnson* [*v. Birkholz*, No. 21-cv-2017 (PJS/LIB), 2022 WL 3135304 (D. Minn. Aug. 5, 2022)].").)

Like Mr. Garcia's petition, Mr. Osorio-Calderon's petition "alleges that the BOP's refusal to transfer him as mandated by the First Step Act violates federal law." (*Id.* at 8.) And like the BOP's response to Mr. Garcia's petition, the BOP's response to Mr. Osorio-Calderon's petition relies on *Kruger*, *Spencer*, and *Johnson*, among other opinions, to argue that the Court lacks jurisdiction to consider Petitioner's habeas claim. (Doc. 12 at 5–6.) For the same reasons as the *Garcia* court found, the Court finds Mr. Osorio-Calderon's habeas claim is cognizable because he alleges that the BOP is violating the FSA by failing to transfer him—a claim that no case Respondent cites puts beyond this Court's jurisdiction to review. This reasoning provides a secondary basis for finding the Court may now proceed to review Mr. Osorio-Calderon's habeas claim.

## II. THE FSA REQUIRES THE BOP TO TRANSFER MR. OSORIO-CALDERON TO PRERELEASE CUSTODY OR SUPERVISED RELEASE.

Turning to the merits of Mr. Osorio-Calderon's petition, he argues that the relevant language of the FSA is mandatory. He contends that the FSA mandates that the BOP "shall" transfer a qualifying person to prerelease custody, and that the BOP's failure to do so here is a violation of this federal statute. (Doc. 6 at 2 ¶ 6(c) (quoting 18 U.S.C. § 3632(d)(4)(C)).) The BOP contends that the Court should deny Mr. Osorio-Calderon's petition because he has no right under federal law to be transferred to prerelease custody at a specific time, or at all, because Congress left such matters to the discretion of the BOP. (Doc. 12 at 1–2.)

The task of interpreting what a statute means "begins with the statute's plain language,' and when 'the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end.'" *Frost v. Lion Brand Yarn Co.*, 765 F. Supp. 3d 808, 812 (D. Minn. 2025) (quoting *Union Pac. RR Co. v. Surface Transp. Bd.*, 113 F.4th 823, 833 (8th Cir. 2024)). Congress's statutory language in § 3632(d)(4)(C) reads:

> Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities *shall* be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons *shall* transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C) (emphases added). Section 3624(g), in turn, sets forth definitions for who is an eligible prisoner, the types of prerelease custody, and other details to give effect to the FSA's requirements. *See* 18 U.S.C. § 3624(g).

This year the Supreme Court reconfirmed what it has held before—the meaning of "shall" is not up for dispute and "imposes a mandatory command." *Bufkin v. Collins*, 145 S. Ct. 728, 737 (2025) (quoting *Shapiro v. McManus*, 577 U.S. 39, 43 (2015)). In other words, "shall" is interchangeable with "must" in its meaning. *Id.* (quoting *Kingdomware Technologies, Inc. v. United States*, 579 U.S. 162, 171–72 (2016)). Thus, by the plain language of the statute, the BOP *must* transfer Mr. Osorio-Calderon to prerelease custody because he has met the conditions of the FSA for such a transfer: accruing sufficient FTCs by participating in relevant programming or activities. *Accord Garcia*, 24-cv-1406 (KMM/SGE) (Doc. 13 at 12).[6]

[6] Respondent has submitted a supplemental authority notice, citing an out-of-circuit district court's recent decision on various motions in a civil action brought by a putative class of

The BOP disagrees, arguing that it has general discretion under the SCA to make prerelease custody transfer decisions for all individuals sentenced to a term of imprisonment by considering particular factors, and to transfer individuals "to the extent practicable." *See* 18 U.S.C. § 3624(c)(1)–(2). The BOP contends that it is plain from the context Congress built in no factors for the BOP to consider prelease custody transfer decisions in the FSA's § 3632 provision because it assumed the BOP would apply the ones it had already provided it in § 3624.

This stretches the plain language beyond its reasonable interpretation. Nowhere in the FSA does Congress explain that the SCA is the parent statute containing "more generalized language" whose framework shall be used to understand and govern the subordinate FSA's language. (Doc. 12 at 9.) And the plain language of the FSA defies such a conclusion. The plain language states the BOP "shall" transfer a qualifying person—it leaves no discretionary need to weigh factors Congress did not supply in § 3632 because it leaves no discretion. The fact that Congress used "to the extent practicable" in § 3624 with factors to be weighed, but then used "shall" without such qualifiers in § 3632, further supports that Congress chose to use different language with a different meaning when

federally incarcerated individuals claiming the BOP should have transferred them to prerelease custody according to 18 U.S.C. § 3632(d)(4)(C). *See Vanessa Crowe & Glen Galemmo v. Fed. Bureau of Prisons et al.*, No. 24-cv-3582 (APM), 2025 WL 1635392 (D.D.C. June 9, 2025). In its decision, the D.C. Court analyzed whether a regulation promulgated by the BOP using permissive language concerning its ability to apply FTCs toward prerelease custody or supervised release contradicted the "shall" language at issue here in 18 U.S.C. § 3632(d)(4)(C). The court concluded such a challenge to the regulation failed because "shall" permitted the BOP discretion. *Id.* at *23. This Court is not bound by this authority and respectfully disagrees with its conclusions.

enacting the FSA. *See Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 279 (2018) ("We usually 'presume differences in language like this convey differences in meaning.'") (quoting *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017)); *see also Garcia*, 24-cv-1406 (KMM/SGE) (Doc. 13 at 13–14) (listing instances Congress used "to the extent practicable" in § 3624 to emphasize that Congress chose to exclude those words from § 3632(d)(4)(C)).

When transfer is mandatory, courts have held that the BOP lacks discretion to refuse or delay an eligible prisoner's transfer to prerelease custody. *See Woodley v. Warden, USP Leavenworth*, No. 24-cv-3053 (JWL), 2024 WL 2260904, at *3 (D. Kan. May 15, 2024) (citing *Doe v. Federal Bur. of Prisons*, 2024 WL 455309, at *1-4 (S.D.N.Y. Feb. 5, 2024) (transfer to prerelease custody was required despite the prisoner's participation in the witness protection program); *Ramirez v. Phillips*, 2023 WL 8878993, at *4 (E.D. Cal. Dec. 22, 2023) (agreeing with interpretation that transfer to prerelease custody is mandatory, BOP has no discretion not to transfer); *Komando v. Luna*, 2023 WL 310580, at *4–8 (D.N.H. Jan. 13, 2023) (transfer to prerelease custody was required despite outstanding detainer; rejecting argument that the BOP had discretion to determine which prisoners were suitable for placement in prerelease custody), *R. & R. adopted*, 2023 WL 1782034 (Feb. 6, 2023); *Sierra v. Jacquez*, 2022 WL 18046701, at *4 (W.D. Wash. Dec. 27, 2022) (transfer to prerelease custody required despite immigration detainer, rejecting argument for discretion), *R. & R. adopted*, 2023 WL 184225 (Jan. 13, 2023); *Jones v. Engelman*, 2022 WL 6563744, at *9–13 (C.D. Cal. Sept. 7, 2022) (transfer to prerelease custody was

mandatory despite pending charges and argument that the prisoner was a flight risk), *R. & R. adopted in relevant part*, 2022 WL 6445565 (Oct. 7, 2022)).

The BOP also argues that Mr. Osorio-Calderon has no protected liberty interest in serving his sentence at a particular location. (Doc. 12 at 10.) Mr. Osorio-Calderon petitions the Court to order his release to prerelease custody based on the FSA, claiming the BOP's statutory violation must be rectified by means of a writ of habeas corpus. (Doc. 6 at 6, 15–16.) He does not ask the Court to order his placement at any particular location. And the Court does not disagree that the FSA does leave the BOP with some discretion in where it locates Mr. Osorio-Calderon once he accrues FTCs through qualifying participation in programming or activities: the BOP may transfer him "into prerelease custody or supervised release," where prerelease custody can be either transfer to an RRC or home confinement. 18 U.S.C. § 3632(d)(4)(C). The Court makes no finding or recommendation as to which of these the BOP must select, nor what facility or location among those options it should choose.

One further issue merits mention here. The BOP has briefed and provided exhibits supporting its claim that it is impracticable to transfer Mr. Osorio-Calderon to prerelease custody because his Unit Team's investigations have not resulted in a viable placement location. (*See*, *e.g.*, Docs. 12 at 3–4; 13, Apple Decl., ¶¶ 15–20, Exs. F–I.) While acknowledging the practical challenge of placement, the Court, however, is just as bound by the plain language of the law as the BOP is where Congress has not created discretion to transfer "to the extent practicable," but has mandated such a transfer "shall" occur. 18

U.S.C. § 3632(d)(4)(C). The BOP's attestations about impracticality do not change the mandated action of transfer here.

In sum, the Court finds that the record establishes that Mr. Osorio-Calderon is eligible for transfer to an RRC or home confinement under the FSA. No evidentiary hearing is needed to reach these undisputed findings on the record before the Court. *See Wallace v. Lockhart*, 701 F.2d 719, 729–30 (8th Cir. 1983). Accordingly, 18 U.S.C. § 3632(d)(4)(C) requires the BOP to transfer Mr. Osorio-Calderon. The fact that the BOP has not done so means that Mr. Osorio-Calderon is being held in violation of federal law. The Court therefore recommends that such a transfer be ordered within five days of any order adopting this Report and Recommendation. Given this recommendation, the Court also shortens the objection period under Local Rule 72.2 of this District follows: Respondent's objections must be filed within **seven days** of this Report and Recommendation's issue date, and Petitioner's response must be filed within **four days** of Respondent's objections.

## RECOMMENDATION

Based on the above, and on all of the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1. Petitioner Jose Osorio-Calderon's operative Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 6) be **GRANTED**; and

2. Respondent be ordered to transfer Mr. Osorio-Calderon to prerelease custody or supervised release within five days of any order adopting this Report and Recommendation.

Date: June 18, 2025

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served with a copy of the objections. *See* Local Rule 72.2(b)(2). However, by Court order above, the Court has abridged these deadlines, and Respondent's objections must be filed within **seven days** of this Report and Recommendation's issue date, with Petitioner's response filed within **four days** of Respondent's objections. All objections and responses must still comply with the word or line limits set forth in Local Rule 72.2(c).