UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 25-cv-00398-LMP-DLM

JOSE OSORIO-CALDERON,

Petitioner,

v.

WARDEN, *FCI Sandstone*,

Respondent.

**OBJECTION TO REPORT AND RECOMMENDATION**

Petitioner Jose Osorio-Calderon is seeking habeas relief under 28 U.S.C. § 2241, to require the Bureau of Prisons to immediately transfer him to a Residential Reentry Center ("RRC"). The Magistrate Judge issued a Report and Recommendation that the petition be granted, Dkt. 20 ("R&R"), and Respondent objects to the R&R in its entirety. As explained below, the R&R's jurisdictional analysis is incorrect and contrary to Eighth Circuit precedent. And the R&R's statutory interpretation fails to account for the discretion Congress gave the BOP to make inmate placement decisions. The Court should therefore reject the R&R and either dismiss this petition for lack of jurisdiction or deny the petition on the merits.

## BACKGROUND

### I. Osorio-Calderon's Status and FTCs

Osorio-Calderon is incarcerated at FCI-Sandstone, serving a 151-month term of imprisonment for Coercion and Enticement of a Minor to Engage in Sexual Activity. Dkt. 13-1. With good conduct time, he is projected to be released from custody and start supervised release in July 2027. Dkt. 13-1, at 1. Osorio-Calderon is eligible to earn First

Step Act time credits ("FTCs"), and he has done so during his incarceration. Dkt. 13-2. As of April 2025, Osorio-Calderon had earned 365 days of FTCs toward an early release. Dkt. 13-2, at 1. This is the maximum number of FTCs that the First Step Act allows inmates to credit toward starting supervised release ahead of schedule. *See* 18 U.S.C. § 3624(g)(3). In Osorio-Calderon's case, these FTCs advance his projected release date to July 3, 2026. Dkt. 13-2, at 3.

Osorio-Calderon has earned FTCs beyond the 365 days that will be credited toward his early release. Dkt. 13-2, at 1. For some inmates, these additional FTCs can be applied toward placement in prerelease custody—i.e., home confinement or an RRC. *See* 18 U.S.C. § 3632(d)(4). Decisions about the type and length of an inmate's prerelease placement begin at the institutional level, when an inmate's Unit Team uses the factors set out in 18 U.S.C. § 3621(b) to review the inmate for potential placement Dkt. 13, ¶¶ 13-14. Here, Osorio-Calderon's Unit Team reviewed him for prerelease placement in April 2024 and recommended him for placement at an RRC in Puerto Rico. Dkt. 13, ¶ 17.[1] But the Residential Reentry Manager field office rejected the recommendation because Osorio-Calderon could not be placed at the RRC due to local ordinances in Puerto Rico pertaining to Osorio-Calderon's sex offense. Dkt. 13, ¶ 18.

Since then, Osorio-Calderon's Unit Team has twice reached out to the Residential Reentry Manager's office to inquire about RRC placement. Dkt. 13, ¶¶ 19-20. Both times,

[1] The R&R states that the BOP denied Osorio-Calderon's request to have his supervised release location changed to New York. Dkt. 20, at 4 n.3. That's incorrect. Probation and Pretrial Services refused Osorio-Calderon's request—not the BOP. Dkt. 13-6.

the office responded that there are no other facilities available for Osorio-Calderon in Puerto Rico. Dkt. 13-8; Dkt. 13-9.

## II. Procedural History

Osorio-Calderon filed this petition in February 2025. Dkt. 1. He amended the petition a month later, Dkt. 6, and the Court ordered a response, Dkt. 9. A few days after the petition came under advisement, the Court asked for briefing on the effect of the Supreme Court's per curiam opinion in *Trump v. J.G.G.*, 145 S. Ct. 1003 (2025). Dkt. 16. In supplemental briefs, the parties agreed that the decision did not change Eighth Circuit precedent regarding habeas jurisdiction; in Osorio-Calderon's own words, the order was "not directly on point and therefore not case-determinative here." Dkt. 17, at 1.

The Magistrate Judge issued the R&R on June 18, 2025. Contrary to the parties' reading of *J.G.G.*, the R&R concluded that the Supreme Court expanded habeas jurisdiction to allow challenges to "the federal government's decision to transfer a person in their custody to a different location (or not)." Dkt. 20, at 10. From there, the R&R concluded that the First Step Act required the BOP to transfer Osorio-Calderon to an RRC without regard for the § 3621(b) factors that must go into all placement decisions. Based on these conclusions, the R&R recommended granting Osorio-Calderon's petition.

## ARGUMENT

The Court should not adopt the R&R. Eighth Circuit decisions and a federal statute preclude district courts from reviewing challenges to an inmate's place of confinement. Furthermore, the BOP complied with its obligations regarding Osorio-Calderon's FTCs.

Accordingly, Osorio-Calderon's petition should be dismissed for lack of jurisdiction or denied on the merits.

**I. Jurisdiction**

This Court does not have jurisdiction to review Osorio-Calderon's pursuit of RRC placement. The R&R concluded to the contrary by misreading *J.G.G.* and ignoring the statute that bars judicial review of the BOP's placement decisions.

**A. *Trump v. J.G.G.***

Osorio-Calderon's claim for prerelease placement is not cognizable in habeas for the simple reason that success on his claim would not lead to spending any less time in BOP custody. As the R&R recognized, this has long been the law:

> The Eighth Circuit has historically treated such claims as "conditions-of-confinement" claims that federal courts lack jurisdiction to review because habeas permits only challenges to the fact or duration of a prisoner's confinement. Following this binding precedent, courts in this District have thus repeatedly recognized that federal courts lack jurisdiction to review BOP decisions regarding a prisoner's confinement location. . . . [S]uch law has been clear and straightforward to apply . . . ."

Dkt. 20, at 8 (citations and internal quotation marks omitted). But the R&R recommended finding jurisdiction to adjudicate Osorio-Calderon's petition because the Supreme Court "upended" these principles in *J.G.G.* Dkt. 20, at 8. This is where the R&R erred.

*J.G.G.* was not the Supreme Court's first habeas case, or even the first decision to address what types of claims are (and are not) cognizable in habeas. Nor did *J.G.G.* overrule existing habeas precedent, instead holding only that "[c]hallenges to removal under the AEA, a statute which largely precludes judicial review, must be brought in habeas." 145 S. Ct. at 1005. That conclusion made sense given the facts of *J.G.G.*, where

the petitioners were not technically asking to be released from custody but were challenging whether they fell "within the category of removable alien enemies." *Id.* The effect of their petitions was to indirectly pursue release from custody by challenging the underlying classification that led to their detention. *Id.* Thus, the Supreme Court construed the petitioners' claims to "necessarily imply the invalidity of their confinement" and concluded that such claims were "within the 'core' of the writ of habeas corpus." *Id.*

The R&R read far too much into *J.G.G.*, "[t]aking a broad view of the per curiam opinion" to conclude that federal courts now suddenly have sweeping habeas jurisdiction to review all transfer-related decisions made by the government. Dkt. 20, at 10. That cannot be the law. The BOP manages more than 150,000 inmates, *see* https://www.bop.gov/about/statistics/population_statistics.jsp, across 122 institutions and 22 Residential Reentry Management offices, *see* https://www.bop.gov/locations/list.jsp, with countless transfer decisions made every day. Under the R&R's interpretation of *J.G.G.*, habeas review would be available in every case where a prisoner alleges that his transfer or non-transfer violates federal law. But that interpretation finds no support in the Supreme Court's per curiam opinion. *J.G.G.* did not hold that the petitioners in that case could use habeas corpus to challenge or change the detention facility at which they would be held while awaiting potential deportation; the Court held only that a habeas remedy was available to challenge the *cause* and *validity* of their detention. 145 S. Ct. at 1005.

Osorio-Calderon is not challenging the cause or validity of the BOP's custody over him. He just wants to change the location of that custody. Not surprisingly, district courts within the Eighth Circuit—including this one—continue refusing to adjudicate such

requests even after *J.G.G. See, e.g.*, *Whitely v. Garrett*, 2025 U.S. Dist. LEXIS 110663 (E.D. Ark. May 29, 2025) (petition seeking FTCs under the First Step Act); *Giffen v. Warden*, 2025 U.S. Dist. LEXIS 71164 (D. Minn. Apr. 15, 2025) (petition seeking transfer to different BOP facility); *Culbeaux v. Eischen*, 2025 U.S. Dist. LEXIS 97392 (D. Minn. Apr. 14, 2025) (petition seeking transfer to BOP facility that offers RDAP), *adopted by* 2025 U.S. Dist. LEXIS 93567 (D. Minn. May 16, 2025). The Court should not depart from this trend.

The R&R was led astray by one line in *J.G.G.* that listed other situations where habeas relief was available to petitioners who were not seeking immediate release from custody. Dkt. 20, at 9. But that rule was in place for decades before *J.G.G.*, 145 S. Ct. at 1005 (citing 1968 Supreme Court decision), and covers situations that are categorically different from Osorio-Calderon's request to be moved from a prison into an RRC:

- A prisoner seeking to overturn his death sentence. *Nance v. Ward*, 597 U.S. 159 (2022);

- An inmate's challenge to loss of time credits that would not lead to his immediate release if restored. *Preiser v. Rodriguez*, 411 U.S. 475 (1973); and

- An inmate's challenge to a future sentence to be served consecutively to a current sentence. *See Peyton v. Rowe*, 391 U.S. 54 (1968).

In these cases, the habeas petitioners challenged the fact or duration of their custody or sentence without asking to be released. That brought their petitions within "the essence of habeas corpus[, as] an attack by a person in custody upon the legality of that custody." *Preiser*, 411 U.S. at 484. As explained above, *J.G.G.* simply noted this rule and applied it

in the unique context of detention under the Alien Enemies Act. The Supreme Court did not announce any new rule expanding habeas jurisdiction.

The Eighth Circuit has well-developed caselaw interpreting and applying *Preiser* and its progeny. Almost 30 years ago, the court of appeals held that when a "petitioner seeks a writ of habeas corpus and fails to attack the validity of his sentence or the length of his state custody, the district court lacks the power or subject matter jurisdiction to issue a writ." *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996). And the Eighth Circuit reaffirmed the point in 2014. *See Spencer v. Haynes*, 774 F.3d 467 (8th Cir. 2014). Since then, this Court and the court of appeals continue to hold that habeas petitions must be dismissed if they do not challenge the length or validity of a petitioner's sentence. *See, e.g.*, *Pollock v. Marske*, 2022 U.S. App. LEXIS 11190 (8th Cir. Apr. 26, 2022) (per curiam) (challenge to inmate's security classification); *Smith v. Warden*, 2019 U.S. Dist. LEXIS 123398 (D. Minn. Apr. 23, 2019) (challenge to BOP transfer decision), *adopted as modified* 2019 U.S. Dist. LEXIS 122985 (D. Minn. July 24, 2019). These rules doom Osorio-Calderon's petition because the relief he seeks is a change in the location of his custody—a point the R&R itself recognized. Dkt. 20, at 8.

As a backup, the R&R cited to a different habeas case in which a magistrate judge concluded that a prisoner's pursuit of RRC placement under the First Step Act was cognizable in habeas. Dkt. 20, at 11. Respectfully, the jurisdictional analysis in the report and recommendation in *Garcia* was wrong (and the case was dismissed as moot, which makes the report and recommendation a nullity). Like the petitioner and magistrate judge in *Garcia*, Osorio-Calderon's prior briefing in this case relied on three Eighth Circuit

decisions to argue that there is jurisdiction to adjudicate his habeas petition. Dkt. 15, at 11-17 (citing *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004), *Fults v. Sanders*, 442 F.3d 1088 (8th Cir. 2006), and *Miller v. Whitehead*, 527 F.3d 752 (8th Cir. 2008)). But all three cases were decided after *Kruger* and before *Spencer*. None of them addressed the jurisdictional question at issue here, and none of them announced a holding that conflicted with *Kruger* or *Spencer*. Thus, this Court correctly and consistently relies on *Kruger* and *Spencer*—rather than *Elwood*, *Fults*, or *Miller*—when dismissing habeas petitions that seek transfers to RRCs. *See, e.g.*, *Sichting v. Rardin*, 2024 U.S. Dist. LEXIS 206670, at *4 (D. Minn. Nov. 14, 2024) (collecting authority); *Gallop v. Segal*, 2024 U.S. Dist. LEXIS 103861, at *4 (D. Minn. May 14, 2024) (collecting authority), *adopted by* 2024 U.S. Dist. LEXIS 103146 (D. Minn. June 11, 2024).[2]

To overcome this trend, Osorio-Calderon's reply brief asked the Court to "presume" that the Eighth Circuit considered its jurisdiction in *Elwood*, *Fults*, and *Miller* and implicitly decided jurisdiction was secure. Dkt. 15, at 11. That is not how appellate decision-making works. The Eighth Circuit's ***silence*** on an issue in three cases does not overrule ***written conclusions*** on that issue in *Kruger* and *Spencer*. *See, e.g.*, *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119 (1984) (holding earlier decisions "did not directly confront the [jurisdictional] question" and "view[ing] the question as an open one"). Quite the opposite: if the Eighth Circuit panels had addressed jurisdiction in *Elwood*,

[2] Osorio-Calderon routinely brushes off decisions like these because the petitioners were pro se. *See* Dkt. 15, at 1, 6. The implication seems to be that without adversarial briefing by lawyers on both sides, federal judges cannot adequately research and decide basic jurisdictional issues. Respondent fatly disagrees with that suggestion.

*Fults*, and *Miller*, then they would have been bound by *Kruger* to dismiss the habeas petitions for lack of jurisdiction or reconstrue them as petitions for judicial review under the APA. *See Spencer*, 774 F.3d at 470-471 ("[W]e are bound by our post-*Preiser* precedent. We, therefore, apply our precedent in *Kruger*." (citations omitted)).

Because the Eighth Circuit's decisions in *Elwood*, *Fults*, and *Miller* do not contain holdings on the jurisdictional question presented in this case, the Court is bound by the bright-line rule in *Kruger* and *Spencer*: conditions-of-confinement claims cannot be raised through habeas petitions. The report and recommendation in *Garcia* was wrong to conclude otherwise, and the R&R in this case was wrong to rely on *Garcia* as an alternative basis to exercise jurisdiction over Osorio-Calderon's petition.

* * *

This Court lacks jurisdiction to review Osorio-Calderon's request to be moved to an RRC. Because he is not challenging the fact or duration of the BOP's custody, the Court should dismiss Osorio-Calderon's petition for lack of jurisdiction.

**B. Section 3621(b)**

A separate jurisdictional barrier is the language in 18 U.S.C. § 3621(b) that makes BOP placement decisions unreviewable. Respondent discussed this provision in briefing Osorio-Calderon's petition. Dkt. 12, at 8-10. But the R&R brushed the statute aside because Congress did not expressly link transfers under § 3632(d)(4)(C) to the factors (and review-stripping language) set out in § 3621(b). Dkt. 20, at 14-15. That is a drastic departure from how this Court has analyzed habeas petitions seeking transfers to prerelease custody or home confinement under the First Step Act, and it is not warranted.

Take for example the report and recommendation in *Luque v. Federal Bureau of Prisons*, where a habeas petitioner challenged the calculation of her FTCs under the First Step Act and sought an immediate transfer to prerelease custody. 2024 U.S. Dist. LEXIS 69190 (D. Minn. Mar. 5, 2024), *adopted by* 2024 U.S. Dist. LEXIS 68564 (D. Minn. Apr. 16, 2024). The magistrate judge in *Luque* concluded that jurisdiction was lacking:

> Ms. Luque's request to be immediately transferred to an RRC is not a cognizable habeas claim. In line with Eighth Circuit precedent, courts in this District have routinely considered prerelease custody—namely, placement at an RRC or on home confinement, *see* 18 U.S.C. § 3624(g)(2)—as a *place* of confinement. And the BOP has exclusive authority to determine the placement of prisoners. . . . [N]othing in the SCA or the FSA abrogates the BOP's authority to designate the placement of prisoners

2024 U.S. Dist. LEXIS 69190, at *8 (citations omitted). This Court correctly adopted the report and recommendation in *Luque*, and the law has not changed since 2024. Osorio-Calderon's petition presents the same issue, and it should lead to the same result.

Congress gave the BOP authority to determine where to house inmates, setting out factors to consider in making all placement decisions. Under § 3621(b), those placement decisions are not subject to judicial review. For this separate reason, the Court should dismiss Osorio-Calderon's petition for lack of jurisdiction.

## II. Merits

On the merits, Osorio-Calderon is not entitled to the relief he seeks. The Court should not adopt the R&R's constrained view of § 3632(d)(4)(C), for the reasons Respondent discussed in responding to Osorio-Calderon's petition. Dkt. 12, at 8-11.

Section 3632 works with several other provisions that govern the custody, placement, and release of federal inmates. The use of the word "shall" in § 3632(d)(4)(C)

does not disrupt the overall framework that gives the BOP discretion to determine inmate placements, nor can any single statute within the framework be read in isolation. Section 3632(d)(4)(C) itself makes this point clear by linking to the eligibility provisions in § 3624(g), which are in turn part of the BOP's discretion to make placement decisions. Thus, "[a]s with all designations, any proposed transfer to a RRC or Home Confinement necessarily implicates section 3621(b), which authorizes the Bureau of Prisons to designate the place of the prisoner's imprisonment." *Frey v. Martinez*, 2024 U.S. Dist. LEXIS 117037, at *13 (W.D. La. June 3, 2024) (citations, alterations, and internal quotation marks omitted), *adopted by* 2024 U.S. Dist. LEXIS 116000 (W.D. La. July 1, 2024). Because the BOP undisputedly conducted a multi-factor review of Osorio-Calderon pursuant to § 3621(b) and made corresponding decisions regarding his placement that are exempt from judicial review, the Court should deny this habeas petition on the merits.

A district court in Washington, D.C., addressed this issue just a few weeks ago, agreeing with Respondent's arguments. In *Crowe v. Federal Bureau of Prisons*, class action plaintiffs based an APA claim on the same reading of § 3632(d)(4)(C) that Osorio-Calderon advances: "'shall' means 'shall.'" 2025 U.S. Dist. LEXIS 109052, at *60 (D.D.C. June 9, 2025). The *Crowe* court rejected that reading after walking through the statute's relationship to §§ 3621 and 3624, concluding that "[c]ontext here shows that Congress's use of the word 'shall' did not convey that the BOP must transfer a prisoner into prerelease custody by no later than the date of eligibility." *Id.* at *61-68. *Crowe* relied on decisions from across the country supporting this interpretation of § 3632(d)(4)(C)—including a 2023 decision from this District—and explained the shortcomings of decisions adopting a

narrower reading like the one the R&R proposes. The opinion is on-point, persuasive due to the breadth of its analysis, and aligned with the approach that this Court and the Eighth Circuit take toward habeas petitions challenging place of confinement. The Court should follow *Crowe*'s lead and conclude that Osorio-Calderon does not have a statutory right to the RRC placement he seeks.

Even if the R&R was correct to read § 3632 in isolation, Osorio-Calderon would not be entitled to an order requiring that he be moved to an RRC. In its entirety, the provision states that

> [t]ime credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody ***or*** supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody ***or*** supervised release.

18 U.S.C. § 3632(d)(4)(C) (emphasis added). In other words, the statute gives the BOP a choice between transferring inmates to prerelease custody or supervised release. *See Fiorito v. Fikes*, 2022 U.S. Dist. LEXIS 200206, at *16 (D. Minn. Nov. 3, 2022) ("[E]ven when a prisoner may apply FTCs, § 3632(d)(4)(C) directs that those FTCs may be applied by the BOP 'toward time in prerelease custody *or* supervised release.'" (original emphasis)); *see also Ford v. Warden*, 2025 U.S. Dist. LEXIS 107489, at *7 (M.D. Pa. June 6, 2025) ("Whether to apply FSA credits toward early release or toward early placement in prerelease custody is statutorily committed to the BOP's discretion.").

There is no dispute that the BOP is planning to apply Osorio-Calderon's FTCs to transfer him to supervised release. *See* Dkt. 13, ¶¶ 4, 12; Dkt. 13-2. Nor is there any dispute that the BOP is planning to apply the maximum number FTCs that Osorio-Calderon can

apply toward supervised release. *See* 18 U.S.C. § 3624(g)(3). Although Osorio-Calderon might prefer that his FTCs go toward prerelease custody instead of supervised release, the plain language of § 3632(d)(4)(C) does not obligate the BOP to honor that preference. Nor does the statute give Osorio-Calderon the right to RRC placement instead of or in addition to earlier supervised release: "or" means "or." The BOP chose between the two options that Congress provided and therefore satisfied any statutory obligation to apply Osorio-Calderon's FTCs under the First Step Act. This is a further reason to deny his habeas petition on the merits.

**CONCLUSION**

For the reasons discussed above, the R&R's conclusions are incorrect and should be rejected. The Court should instead dismiss Osorio-Calderon's petition for lack of jurisdiction or deny the petition outright.

Dated: June 25, 2025

JOSEPH H. THOMPSON
Acting United States Attorney

*s/ Trevor Brown*

BY: TREVOR C. BROWN
Assistant United States Attorney
Attorney ID Number 396820
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5600
trevor.brown@usdoj.gov