**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**Case No. 25-cv-398 (LMP/DLM)**

Jose Osorio-Calderon,

Petitioner,

v.

Warden, FCI Sandstone,

Respondent.

**JOSE OSORIO-CALDERON'S RESPONSE TO OBJECTIONS**

The Report and Recommendation ("R&R") correctly found two independent bases for jurisdiction and properly interpreted the mandatory, non-discretionary statutory language at issue. The BOP's attempt to relitigate the issues should be denied and the R&R adopted.

## I. The Bureau of Prisons Is Incorrect; The First Step Act Is Mandatory.

The terms of the First Step Act ("FSA") are clear: eligible prisoners *shall* be transferred to prerelease custody or supervised release when their FSA earned time credits ("FTCs") equal the remainder of their sentence. 18 U.S.C. § 3632(d)(4)(C); 18 U.S.C. § 3624(g). A maximum of 365 FTCs are used to advance the term of supervised release (i.e., shorten the prison term by one year), and any remaining balance is used for early placement in either a residential reentry center (i.e., halfway house) or home confinement. 18 U.S.C. § 3632(d)(4)(C); 18 U.S.C. § 3624(g). That is why 18 U.S.C. § 3632(d)(4)(C) says FTCs are applied "toward time in prerelease custody *or* supervised release." (emphasis added). If there are 365 FTCs or fewer, the time is applied to supervised release. If there are more than 365 FTCs, the time is applied to prerelease custody before supervised

release. Despite the BOP's argument otherwise that it can choose to send someone to prerelease custody *or* to supervised release (ECF No. 21, 12-13), thereby depriving them of the full benefits of their FTCs since only up to 365 FTCs can be used for supervised release, even BOP's own policies, which incorrectly treat the FSA as discretionary, do not view prerelease custody and supervised release as an either/or. (ECF No. 13-5, at 15 ("The [FSA] requires that, if an individual meets the criteria outlined in (c)(1), the credits must be applied when the amount of time credits earned is equivalent to remainder of the prisoner's imposed term of imprisonment . . . . Pre-release placement in a Residential Reentry Center (RRC) or Home Confinement (HC) will be based on FTCs other than those credits already applied to early transfer for supervised release.").)

The BOP's other arguments attacking the mandatory nature of the FSA are retreads of arguments already denied in the R&R. (*See* ECF Nos. 15, at 5-8; 20, at 12-17.) The eligibility requirements of 18 U.S.C. § 3624(g) do nothing to assist the Government. (ECF No. 21, 10-11.) All of subsection (g) relates to the Risk and Needs Assessment System created in the FSA; it is part of the FSA. Subjection (g)(10) states that "[t]he time limits under subsections (b) and (c) shall not apply to prerelease custody under this subsection [(g)]." In other words, subsections (b) and (c), parts of the Second Chance Act ("SCA"), impose no limits on subsection (g), the FSA. In fact, subsection (g)(11) specifically instructs the BOP not to make the excuse it is here: "The Director of the Bureau of Prisons shall ensure there is sufficient prerelease custody capacity to accommodate all eligible prisoners." The BOP's attempt to graft the SCA and FSA together despite the statutory

language and structure separating them was rejected in the R&R and should be again. (ECF No. 20, at 14-15.)

## II. Mr. Osorio-Calderon Should Have Been Transferred a Year Ago.

The R&R is far from the only opinion finding FSA transfers to be mandatory. (ECF No. 15, at 4-5; No. 20, at 14-16.) Mr. Osorio-Calderon requests this Court join these other courts and order his long overdue transfer to prerelease custody. Mr. Osorio-Calderon's FSA Time Credit Assessment shows he should have been transferred to prerelease custody almost a year ago, on July 3, 2024, based on the accrual of 1,095 FTCs.[1] The math is simple:

- Projected Release Date: July 3, 2027, due to good conduct time.[2]
- Apply 365 FTCs.
- FSA Projected Release Date: July 3, 2026.
    - This is the new date to begin supervised release.
- Apply 730 FTCs.

[1] This date is called the "FSA Conditional Placement Date" because it is based on "the individual's best case scenario given the individual's FSA/FTC status . . . ." (ECF No. 13-2, at 3). In other words, the Assessment generates the date based on an assumption that the prisoner will continue to earn FTCs at the same rate he has been, hence it being "Conditional." The BOP does not contest the accuracy of the July 3, 2024, date. The "Conditional" nature of the date matters far more for SCA time which is discretionary, and therefore not guaranteed.

[2] Good conduct time is different than FTCs. Good conduct time reduces a prisoner's actual time in BOP custody by awarding credit toward the service of the prisoner's sentence. 18 U.S.C. § 3624(b). FTCs are an extra earned incentive.

- FSA Conditional Placement Date: July 3, 2024.
    - This is the date the BOP had to transfer Mr. Osorio-Calderon to either a residential reentry center or home confinement.

(ECF No. 13-2, at 3). Even though the BOP had to transfer Mr. Osorio-Calderon almost a year ago, it failed to due to "local ordinances in Puerto Rico" preventing his placement in a halfway house there. (ECF No. 13 ¶¶ 15-18). And since April 2024, BOP's attempts to effectuate the transfer have consisted of two emails. (ECF No. 13 ¶¶ 19-20.) This flies in the face of the FSA's mandatory language.[3] (*See* ECF Nos. 15, at 2-5; 20, at 12-17.)

### III. The Second Chance Act Insulates The Bureau of Prison's Decision-making, But The First Step Act Does Not.

As it did initially in response to Mr. Osorio-Calderon's amended petition, the BOP again tries to insulate its violation of the FSA's plain language from judicial scrutiny by pointing to the SCA's provision limiting judicial review. (ECF No. 21, at 9-10). Although Congress has provided that the BOP's decision regarding a person's "place of imprisonment under this subsection is not reviewable by any court," 18 U.S.C. § 3621(b), that provision is not relevant here, (*see* ECF No. 15, at 8-10). The FSA strips the BOP of discretion with respect to the application of FTCs and mandates that the BOP transfer people out of prison upon eligibility. When a person has met the FSA's requirements,

[3] The BOP's Objections start by erroneously stating that Mr. Osorio-Calderon sought an immediate transfer to a "Residential Reentry Center." (ECF No. 21, at 1). Mr. Osorio-Calderon sought a transfer to prerelease custody, (ECF No. 6, at 14-15), and that is what the R&R proposes, (ECF No. 17). This is an important point because BOP argues it retains discretion to make placement decisions. That remains true. It can decide between a halfway house or home confinement, and where those would be.

including that their FTCs equal the time left on their sentence, the person shall be transferred to prerelease custody or supervised release. The BOP retains its usual discretion to designate the place to which a person is transferred—i.e., to which halfway house or to home confinement, and where—but the categorically different decision to transfer a person from prison to prerelease custody or supervised release is not covered by section 3621(b). (ECF No. 20, at 14-16); *see also Briones-Pereyra v. Warden*, No. 1:23-cv-1718-SAB-HC, 2024 WL 4171380, at *2 (E.D. Cal. Sept. 12, 2024) (holding that the court has jurisdiction to compel BOP action "regarding FTCs because application of FTCs to eligible prisoners who have earned them is *required*, not discretionary, under the statute" (emphasis in original)); *Tarver v. Birkholz*, No. 21-CV-1752 (NEB/KMM), 2021 WL 11472208, at *2-3 (D. Minn. Sept. 2, 2021) (recommending denial of petition requesting time on home confinement under the SCA on the merits as the SCA is discretionary instead of for jurisdictional reasons because cases finding that BOP has the "discretionary power to determine where to house inmates committed to its custody" do not "stand for the proposition that courts lack jurisdiction to review a claim in a habeas petition that the BOP has acted contrary to federal law, violated the United States Constitution, or exceeded its statutory authority" (quotation and citations omitted)), *report and recommendation dismissed as moot*, 2021 WL 11472207 (D. Minn. Nov. 1, 2021).

That conclusion is reinforced by the fact that in making a decision "under this subsection [(3621(b))]," the BOP is required to consider a range of factors, *see* 18 U.S.C. § 3621(b)(1)–(5) (listing facility resources, facts about the offense, facts about the offender,

statements by the sentencing court, and policy statements by the Sentencing Commission), that are far afield from the decision that Congress made in the FSA regarding the timing and prerequisites to be transferred to prelease custody. The FSA's eligibility criteria are different from the SCA's, 18 U.S.C. § 3632(d)(4)(D), and the question of timing is answered by the transfer being required upon the number of FTCs equaling the remaining sentence, rather than an individual review by BOP. Accordingly, Congress's bar to judicial review regarding the selection of a "place of imprisonment" in the SCA has no bearing on the enforceability of the distinct congressional command in the FSA regarding transfer to prelease custody.

The BOP presented *pro se* cases that did not relate to FTCs or that were dismissed on jurisdictional grounds in its first brief to make its point that the SCA precludes judicial scrutiny. (*See* ECF No. 15, at 9-10.) It again cites to *Luque v. Federal Bureau of Prison*, No. 23-cv-3893 (NEB/DLM), 2024 WL 1641947 (Mar. 5, 2024) now. What the BOP neglects to mention is that the *Luque* report and recommendation was also written by Magistrate Judge Micko. When presented with these arguments in a counseled motion, Magistrate Judge Micko agreed with Mr. Osorio-Calderon. These are complicated statutory interpretation questions for an inmate in a law library to analyze. While this District benefits from a talented and hardworking pool of jurists, there is a reason why the American *adversarial* legal system is lauded. The fact that the Magistrate Judge in this

case has recommended a different outcome highlights the benefits of reconsidering positions decided on *pro se* petitions when presented in counseled motions.[4]

## IV. This Court Has Jurisdiction To Order Mr. Osorio-Calderon's Transfer.

The benefits of counseled motions are seen again as the R&R agreed with Mr. Osorio-Calderon that there are multiple jurisdictional bases for his amended petition. First, Eighth Circuit precedent supports "jurisdiction to review habeas claims that allege the BOP has violated federal law by failing to transfer an imprisoned person if a statute requires it." (ECF No. 20, at 11.) Second, the Supreme Court's order in *Trump v. J. G. G.*, 604 U.S. --, (2025) (per curiam) stands for the propositions that "petitioning for a writ of habeas corpus is the right vehicle to challenge the federal government's decision to transfer a person in their custody to a different location (or not), and federal courts have jurisdiction to hear such challenges brought by habeas petitions." (ECF No. 20, at 10.) Both of these bases support finding jurisdiction here.[5]

---

[4] To counsel's knowledge, this case and *Garcia v. Eischen*, Case No. 24-cv-4106 (KMM/SGE) (D. Minn. Mar. 25, 2025), are the first two cases on this issue to be represented by counsel in the District, and both have reached a different result from the *pro se* petitions that preceded them.

[5] Although the R&R does not discuss mandamus because it concluded there is otherwise subject matter jurisdiction to decide the amended petition, Mr. Osorio-Calderon maintains that this Court also has jurisdiction under 28 U.S.C. § 1361 should other jurisdictional bases be denied. (ECF No. 15, at 17-20.)

### A. The Eighth Circuit has recognized a carveout and found jurisdiction when the Bureau of Prisons has not followed the law in deciding whether to approve transferring a prisoner.

As the R&R found here, there is a basis for jurisdiction through an Eighth Circuit carveout for situations where the BOP has violated the law by failing to transfer a prisoner. (ECF No. 20, at 11-12.) The District of Kansas case *United States v. Woodley*, No. 24-3053-JWL, 2024 WL 2260904 (D. Kan. May 15, 2024) is illustrative. In *Woodley*, the district court concluded that it had jurisdiction over the same habeas claim that Mr. Osorio-Calderon raises with the same relevant facts. 2024 WL 2260904, at *9 n.5. The R&R agreed that the *Woodley* court's conclusion is supported by Eighth Circuit precedent.

*Woodley* teaches that a court has jurisdiction over a § 2241 petition raising the issue of whether the BOP followed the law in deciding whether to approve transferring a prisoner to prerelease custody. *Id.* Woodley, like Mr. Osorio-Calderon, had earned more than 365 days of FTCs. *Id.* at *3. After the BOP had applied 365 FTCs towards supervised release, Woodley still had an additional 445 FTCs that had to be applied to prerelease custody, and thus the BOP should have transferred him to prerelease custody because his credits equaled the remainder of his sentence. *See id.* at *7 ("Respondent has conceded that petitioner is eligible for placement in prerelease custody. Accordingly, the FSA requires the BOP to place petitioner in prerelease custody."); *accord id.* *1, 3-4, 9. But the BOP instead informed Woodley that he would not be transferred to prerelease custody for months due to bedspace. *See id.* at *3-4. The court determined that the BOP's failure to transfer

Woodley to prerelease custody violated federal law. It therefore granted his petition and ordered the BOP to transfer Woodley to prerelease custody within 30 days. *Id.* at *10.

*Woodley* expressly noted that although a decision to transfer a prisoner to prerelease custody affected "the conditions of confinement, not its duration," the Tenth Circuit had allowed prisoners to bring § 2241 petitions challenging "whether the BOP had followed the law in evaluating whether to approve such a transfer. Here, the Court has determined that the BOP did not follow the law with respect to its transfer decision involving petitioner; thus, the Court has determined that habeas relief is appropriate." *Id.* at *9 n.5.

The Tenth Circuit case on which *Woodley* relied reached the same conclusion: "Although transfer to community confinement affects the conditions of confinement—not its duration—we have recognized that petitions seeking review of whether BOP staff followed the law in evaluating an inmate for community confinement may be brought in a § 2241 habeas petition." *Jones v. English*, 817 F. App'x 580,*583 (10th Cir. 2020) (citing *Wedelstedt v. Wiley*, 477 F.3d 1160, 1168-69 (10th Cir. 2007)). The Eighth Circuit has also recognized that § 2241 petitions in this context are proper. For example, in *Fults v. Sanders*, the Eight Circuit granted relief to Fults, who brought a § 2241 petition arguing that the BOP had not followed the law in determining and limiting his time in prerelease custody. 442 F.3d 1088, 1088–89 (8th Cir. 2006).

As the R&R explained, it is not the only opinion in this District to agree with Mr. Osorio-Calderon on this point. (ECF No. 20, at 11-12.) A recent Report and Recommendation also found jurisdiction on this basis in a similarly situated petition.

*Garcia v. Eischen*, Case No. 24-cv-4106 (KMM/SGE), ECF No. 13 (D. Minn. Mar. 25, 2025). The FSA mandated that Mr. Garcia be released to prerelease custody by December 27, 2025, but the BOP provided him with a placement date of April 8, 2025, due to a lack of halfway house bedspace. (ECF No. 15-1, at 4). The BOP made an identical jurisdictional argument that the *Garcia* court rejected. Magistrate Judge Elkins found that "[t]he Eighth Circuit has recognized that habeas petitions challenging BOP decisions for violating federal law are proper." (ECF No. 15-1, at 6 (citing *Fults*, 442 F.3d at 1088-89 *and Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004)).) Therefore, because "Mr. Garcia's Petition allege[d] that the BOP's refusal to transfer him as mandated by the First Step Act violate[d] federal law," the Court "ha[d] jurisdiction to consider the Petition." (ECF No. 15-1, at 8).[6] The R&R agrees: "For the same reasons as the *Garcia* court found, the Court finds Mr. Osorio-Calderon's habeas claim is cognizable because he alleges that the BOP is violating the FSA by failing to transfer him . . . ." (ECF No. 20, at 12.)

The BOP states that Mr. Osorio-Calderon and the R&R misunderstand "how appellate decision-making works." (ECF No. 21, at 8-9.) The BOP argues that "silence" on jurisdictional issues cannot "overrule" *Kruger v. Erickson*, 77 F.3d 1071 (8th Cir. 1996) and *Spencer v. Haynes*, 774 F.3d 467 (8th Cir. 2014). (ECF No. 21, at 8-9.) In the BOP's view, "if the Eighth Circuit panels had addressed jurisdiction in *Elwood*, *Fults*, and *Miller [v. Whitehead*, 527 F.3d 752 (8th Cir. 2008)], then they would have been bound by *Kruger*

[6] Mr. Garcia has since been released to prerelease custody—though several months after his mandated date—and the case was dismissed as moot.

to dismiss the habeas petitions for lack of jurisdiction." (ECF No. 21, at 8-9.) The fact that they did not discuss subject matter jurisdiction means this Court must dismiss based on *Kruger* and *Spencer*. (ECF No. 21, at 8-9.) But *Kruger* was decided years before *Elwood*, *Fults*, and *Miller*. Under habeas, subject matter jurisdiction "can be presumed when the Court speaks because if the record suggested jurisdiction may be lacking, a court is obligated to raise the issue sua sponte." *Knish v. Stine*, 347 F. Supp. 2d 682, 686 (D. Minn. 2004). In other words, these Eighth Circuit panels would have considered subject matter jurisdiction, including the prior *Kruger* decision, and in fact *did not dismiss* on that basis.[7] These cases are not only persuasive for finding jurisdiction here, they are precedential.

Mr. Osorio-Calderon's amended petition alleges that the BOP violated the FSA by failing to transfer him. This provides a jurisdictional basis to decide his amended petition.

### B. Alternatively, the Court has Jurisdiction Under *J.G.G.*

The R&R separately found jurisdiction under the Supreme Court's recent Order in *J.G.G.* The R&R and parties' briefing outlines the background of *J.G.G.* (ECF Nos. 17; 20, at 8-11.) Most relevant for Mr. Osorio-Calderon's amended petition, the Supreme Court found that the plaintiffs there must bring their claims through habeas, and noted that "immediate physical release [is not] the only remedy under the federal writ of habeas corpus." (ECF No.17-1, at 2 (alteration in original) (quotations and citations omitted).) As

[7] Underscoring this is the fact that Judge Donald Pomery Lay was a member of the panels for *Kruger*, *Fults*, and *Miller*.

the R&R succinctly stated, "two fundamental implications from the *J.G.G.* decision emerge: petitioning for a writ of habeas corpus is the right vehicle to challenge the federal government's decision to transfer a person in their custody to a different location (or not), and federal courts have jurisdiction to hear such challenges brought by habeas petitions." (ECF No. 20, at 10.) As Mr. Osorio-Calderon states above, Eighth Circuit caselaw on subject matter jurisdiction for habeas petitions has been (and must be based on the holding of *J.G.G.*) broader than the BOP's view. The R&R agrees: "The application of *J.G.G.* here is that this Court has jurisdiction to review the claim of Mr. Osorio-Calderon that the BOP should have, by statute, transferred him to prerelease custody sometime in 2024." (ECF No. 20, at 10.)

The cases cited by BOP in its Objections still do not put Mr. Osorio-Calderon's amended petition beyond this Court's jurisdiction. In *Pollock v. Kallis*, No. CV 20-0359 (DSD/BRT), 2021 WL 3476627, (D. Minn. Apr. 6, 2021), *report and recommendation adopted*, No. CV 20-359(DSD/BRT), 2021 WL 2710013 (D. Minn. July 1, 2021), the *pro se* petitioner argued that his PATTERN score was artificially high, rendering him ineligible to apply his FTCs. The development of the PATTERN system and determination of each prisoner's PATTERN score is left to the discretion of the Attorney General by the terms of the FSA. 18 U.S.C. § 3632(a)(1). Challenging a discretionary decision such as that is categorically different from alleging "that the BOP is violating the FSA by failing to transfer" someone. (ECF No. 20, at 12.)

*Smith v. Warden of Duluth Prison Camp*, No. 18-CV-2555 (WMW/LIB), 2019 WL 3325837, at *3 (D. Minn. Apr. 23, 2019), *report and recommendation adopted as modified*, No. 18-CV-2555 (WMW/LIB), 2019 WL 3323063 (D. Minn. July 24, 2019) presents this distinction as well. Smith challenged his transfer to another prison from a prison that was being converted from a male facility to a female facility, arguing that it was a pretextual transfer to get him farther from his home. As Mr. Osorio-Calderon has said, the BOP retains discretion of where to incarcerate someone. But when the BOP violates the mandatory requirements of the FSA and fails to transfer someone when it must, there is jurisdiction to hear such a claim.

Either of the jurisdictional bases found in the R&R support this Court having subject matter jurisdiction here and, therefore, the authority to order the BOP to fulfill the mandatory transfer prescribed by Congress in the FSA.

***

For the reasons outlined in the R&R, Mr. Osorio-Calderon's briefing, and the entire record, Mr. Osorio-Calderon asks the Court to adopt the R&R and grant his amended petition.

Respectfully submitted,

DATED: June 29, 2025

*s/ Trevor N. Parkes*

Trevor N. Parkes
Attorney ID No. 0402172
Counsel & Project Director, First Step Act Resource Center

National Association of Criminal Defense Lawyers
1660 L St NW, 12th Floor
Washington, DC 20036

*Appointed Counsel for Petitioner Jose Osorio-Calderon*