September 12, 2025

The Honorable Laura M. Provinzino
United States District Judge
316 N. Robert Street
St. Paul, MN 55101

RE: *Osorio-Calderon v. Warden*, 25-cv-398-LMP-DLM

Dear Judge Provinzino:

The Government filed a letter in the above-captioned case on August 14, 2025, regarding a recent Eighth Circuit decision, *Smith v. Eischen*, No. 24-3575, that it claims "further supports concluding that the Court lacks jurisdiction to review Petitioner Jose Osorio-Calderon's challenge." (ECF No. 23, at 1). This letter is filed on behalf of Mr. Osorio-Calderon to explain why the *Smith* decision has limited relevance here. There are several reasons why this four-sentence, unpublished supplemental authority should not affect this Court's analysis, and it should instead adopt Magistrate Judge Micko's Report and Recommendation ("R&R").

First, the Eighth Circuit's *Smith* decision never discusses jurisdiction. The word never appears, and the case is not dismissed on that ground. The opinion therefore does not provide guidance on how this Court should approach the jurisdictional question here. That outcome is particularly noteworthy given that the underlying decisions *did* dismiss on jurisdictional grounds. (*See* ECF No. 23). The Eighth Circuit could have agreed but did not.

Second, the Eighth Circuit's brief discussion of mootness in *Smith* is severely undercut by a review of the procedural history of the case and the prior Eighth Circuit authority it relies on. Mr. Smith's underlying habeas petition advanced a meaningfully different challenge than the one Mr. Osorio-Calderon brings. The *pro se* petition outlined an "'equal protection claim' – a violation of Smith's 14th Amendment constitutional rights," because there is "unequal treatment" of inmates who are serving less than 36 months, and those who are serving more than 36 months. (Exhibit 1, at iii). At base, Mr. Smith's argument was that the First Step Act ("FSA") does not bar continuing to earn time credits ("ETC") while on prerelease custody, but because at that point the ETCs have already been applied to advance supervised release and prerelease custody, there is nothing left to apply the ETCs from prerelease custody to, and instead they go to waste. (*E.g.*, *id.* at 4-10). He claimed that 36 months was the magic time whereby sentences shorter than that would have

the prerelease ETCs "'imputed' as 'up-front,'" thereby not going to waste, while those with sentences longer than 36 months were not benefiting. (*Id.* at iii, 4-10).[1] Mr. Smith doubled down on this argument in his responses to Magistrate Judge Leung's Show Cause Order. (*See, e.g.*, Exhibit 2, at 2 ("The above claim is a constitutional violation of equal protection, it has nothing to do with 365-FTC days – 'a liberty interest' does not begin and end at 365-days and remainder is BOP 'discretion.'"); Exhibit 3, at 8 ("Smith argues it is obviously discriminatory to compute FTCs for one class of prisoners versus another based solely on the length of one's sentence.")). Magistrate Judge Leung missed the constitutional argument driving the habeas petition and instead focused on "when Smith would become eligible for transfer on prerelease custody to a residential reentry center or home confinement." *Smith v. Eischen*, No. 24-CV-1551 (PJS/TNL), 2024 WL 4774172, at *1 (D. Minn. Sept. 12, 2024). While understandable given that the *pro se* filings are at times difficult to decipher, this is a significant deviation from the issue presented.[2] Whatever the merits of Mr. Smith's proposed argument, a constitutional challenge to ETCs raises fundamentally different questions than the statutory argument presented by Mr. Osorio-Calderon. This is particularly important in the *Smith* case as the short R&R was the only opinion containing anything beyond extremely brief analysis.

With this background in mind, it is difficult to derive anything of value from the two sentences on mootness in *Smith*. The statutory argument made by Mr. Osorio-Calderon (that the FSA mandates a transfer) was not presented or considered below. And as demonstrated by the substantial briefing presented in this case, it is an issue that merits careful consideration. Moreover, the underlying, published Eighth Circuit authority cited by the *Smith* panel cannot be read in such a far-reaching manner. (*See* ECF No. 23-1, at 1-2 (concluding the case was moot because "the record demonstrates that Smith has been *recommended* for RRC placement" (citing *Miller v. Whitehead*, 527 F.3d 752 (8th Cir. 2008)) (emphasis added).) In *Miller*, four prisoners challenged the BOP's denial of their transfers to Residential Re-Entry Centers under the Second Chance Act. As has been discussed in prior briefing, the Second Chance Act is discretionary and therefore very different from the FSA. (ECF No. 15, at 5-10; No. 22, at 1-3). Even still, the only claims that were mooted in *Miller* were those brought by the two prisoners who *had actually already been transferred* to an RRC. *Miller*, 527 F.3d at 756 ("First, the BOP transferred Lovato and Howard to RRCs in January

---

[1] Undersigned counsel is familiar with this argument as the BOP changed its FSA calculation sometime in 2024 from one where these "upfront" ETCs—the ETCs that would be earned while on prerelease custody—were already baked into the release date, to one where they no longer were. This unexplained change resulted in release dates suddenly being pushed back and spawned challenges such as this one filed in April 2024.

[2] This deviation also serves as a reminder of why decisions based on *pro se* filings are worth careful thought and scrutiny.

and April 2008, respectively. . . . In view of these developments, we conclude that the claims of Lovato and Howard are moot, because the relief they seek has been granted."). The Eighth Circuit considered and analyzed the remaining two prisoners whose situations had not been reassessed by the BOP *because they had not yet been transferred*. *Id.* at 756-58. Those challenges failed (because the Second Chance Act is discretionary), but they were not moot as the prisoners remained in prison and relief could be granted. In fact, if there is anything to take from the *Smith* decision's reliance on *Miller* and sole focus on mootness, it is that jurisdiction is not a bar to considering Mr. Osorio-Calderon's claim that the BOP violated the law by failing to transfer him, as two Magistrate Judges in this District have found. (*See* ECF No. 15, at 12; ECF No. 15-1, at 6-8; No. 20, at 11-12; No. 22, 10-11.)

Third, Magistrate Judge Leung's jurisdictional analysis, the only portion of *Smith*'s procedural history to discuss jurisdiction, missed a crucial detail. While Magistrate Judge Leung's R&R outlined the typical conditions-of-confinement case law cited by the Government in this case (that went meaningfully unchallenged by the *pro se* Smith), *Smith*, 2024 WL 4774172, at *1, it also noted that other cases cited by Smith, namely *Woodley v. Warden, USP Leavenworth*, No. 24-2053-JWL, 2024 WL 2260904 (D. Kan. May 15, 2024), "fail to grapple with the issue of whether the petitioner's claims are cognizable on habeas review at all due to raising only conditions-of-confinement claims, and therefore the reasoning of those cases is of limited persuasiveness," *Smith*, 2024 WL 4774172, at *2. But prior filings in this matter have detailed that the *Woodley* court *did* consider this issue and, despite similar jurisdictional limitations for habeas claims in the Tenth Circuit, concluded that it did have jurisdiction. (ECF No. 15, at 14-16; No. 22, at 8-10). As Magistrate Judge Micko found in his R&R, the same analysis supports finding jurisdiction here.[3]

The FSA required the BOP to transfer Mr. Osorio-Calderon over a year ago. This Court has jurisdiction to grant that relief. He requests that the Court grant his habeas petition so that he does not spend more time in prison when he should be continuing and advancing his rehabilitation in the community.

Sincerely,

*s/ Trevor Parkes*
Trevor Parkes
Counsel & Project Director,
First Step Act Resource Center

[3] Magistrate Judge Leung also agreed that "at least some claims relating to FSA time credits *are* cognizable on habeas review, as they affect the overall length of detention and not merely the conditions in which that detention is served," although he did not elaborate on this thought. *Smith*, 2024 WL 4774172, at *2, n.1 (emphasis in original).