# EXHIBIT 1

RECEIVED BY MAIL
APR 29 2024
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Case Number to be determined

---

24-cv-1551 (PJS/TNL)

Darrell D. Smith
Petitioner,

v.

B. Eischen, Warden
Respondent.

---

§2241 Habeas Corpus
For Correct Computation, Application of First Step Act FTCs
And Equal Protection

---

Submitted By

Darrell Smith Pro Se
Federal Prison Camp
PO Box 1000
Duluth, MN 55814

SCANNED
APR 29 2024
U.S. DISTRICT COURT MPLS

## Summary of Habeas Corpus Filing

Smith filed previous Habeas Corpus filings seeking proper FSA FTC computation, award, and application. The attorney for the BOP stated that Smith failed to adequately argue his previous claims at the district court level. **The court agreed.** Smith agrees that his **previous** filings were deficient - they were deficient because (1) the standard Minnesota Habeas claim form said not to "argue case law" when, in fact, Smith's claims were statutory claims based on interpretation and case law implementation of BOP policies, (2) Smith did not understand the BOP's FSA credit award system, and (3) the BOP continued to **change their FSA computation, award, and application system** from its initial issuance in November 2022 until February 2024, following BOP Policy for inmates serving less than 36-months, but not following those written policies for inmates serving sentences greater than 36-months. However, Smith **now understands the FSA computation, award and application system** as it is clearly explained in BOP policy and statute. Herein Smith requests that the Courts order the BOP to follow their own written FSA computation and application Policies for all inmates, including those inmates with sentences beyond 36-months. Smith argues that 18 USC §3624(A)(b)(1)(i) defining computation of GTCs, and 18 USC §3624(g) defining comptation for FTCs, both use the same statutory term **"imposed term" which differs from "term of imprisonment"** - the latter term being that which defined GTC computation prior to the passage of the First Step Act. "Imposed term" has specific computation requirements which are **being applied for inmates serving 36-month sentences or less, BUT ARE NOT BEING APPLIED TO INMATES SERVING SENTENCES BEYOND 36-MONTHS**, like Smith. Additionally, BOP Policies, i.e., (1) First Step Act Final Rule,

(2) BOP Policy 5410.01, and (3) the First Step Act A&O Handbook, all **computationally agree** with "imposed term." Those inmates serving 36-month sentences or less **are receiving FTC credits for prerelease custody, "IMPUTED" as "up-front"**, which is shown mathematically herein, with the term "earnings" taking on its true dual meaning, that is, FTC "earnings" being both (1) realized and (2) and imputed, as discussed herein . Those serving sentences greater than 36-months, however, are receiving **no FTC credits, being imputed, or awarded under any basis.** This "dual" computation and application picture results in:

1. Those serving less than 36-month sentences spend about 45% of their time "behind bars", whereas those serving greater than 36-month sentences spend up to 70% of their time behind bars (see Exhibit 2, row 9);
2. Those serving less than 36-month sentences receive **the full** arithmetic mean of 15-FSA days awarded per 30-day FSA period. Whereas, those serving sentences in excess of 36-months have their 15-day average reduced to 9.23 days per 30-day period (See Exhibit 2, row 10).

This "unequal treatment" of inmates at the 36-month "line of demarcation" results in an "equal protection claim" - a violation of Smith's 14th Amendment constitutional rights. Smith asks that the Court order the BOP to apply FSA Policy equally to all inmates relative to awarding FSA credits while on prerelease custody being earned as "realized" and "imputed."

# TABLE OF CONTENTS

Page(s)

Cover page .................................................. (i)
Summary of Habeas Filing .................................... (ii)-(iii)
Table of Contents ........................................... (iv)
Table of Authorities ........................................ (v)

**Motion for §2241 Habeas Corpus to Correct Computation and Application of FTC Credits Per Statute, BOP Policy, and in Accordance With Equal Protection** ...... (1)

History of Filing ........................................... (1)-(3)
Three Statutory Arguments Presented ......................... (3)
**Arguments** ............................................... (4)

Claim 1: Computing and Applying "Imposed Term" ....... (4)
Claim 2: BOP Policies ................................ (10)

BOP Policy Statement 5410.01 ......................... (11)
First Step Act A&O Handbook .......................... (15)
Case Studies ......................................... (19)
Solberg v. Eischen ................................... (19)
Torgerson v. Eischen ................................. (19)

Claim 3: Equal Protection ............................ (21)

Conclusion .................................................. (23)

**Exhibits**

Exhibit 1 - First Step Act A&O Handbook
Exhibit 2 - Equal Protection Mathematical Proof Based on Sentence Length
Exhibit 3 - Communication with C.O. Finkler Regarding 365-FTCs versus "Maximum FTCs over Entire Sentence" per Policy 5410.01

**Graphs**

GTC Earnings, Realized and Imputed per "Imposed Term" ... (4)
FTC - Maximum FTCs for Smith Computed over Entire Entire Sentence ....................................... (11)
FTC - Proof of "Earn-As-You-Go" FTC Credits for Smith and FTCs "Earned" on Prerelease Custody ........... (12)
FTC - A&O Handbook Illustration, Realized, Imputed FTC .. (16)
FTC - A&O Handbook Proof of FTCs Earned Prerelease Custody ............................................. (16-17)
FTC - A&O Handbook Proof of "Earn-As-You-Go" with FTCs Earned on Prerelease Custody .................. (18)

# TABLE OF AUTHORITIES

**Statutes** Page(s)

BOP Policy Statement 5410.01..............................3,7,11,12,13,24
First Step Act A&O Handbook...............................3,7,11,13,15,16,18
First Step Act Final Rule.................................3 6 11 13
C. Peters BOP Director Comments...........................14 15
C.O. Finkler Comments.....................................14

18 USC §3621..............................................21
18 USC §3624(A)(b)(1)(i)..................................4,5,13,24
18 USC §3624(g)...........................................6 7

**Case Law**

Gallo v. Ortiz
LEXIS 28589 2021 WL 471600 #4 Case #20-16416
Dist. of N.J. (2021)......................................1

Gordon v. Barnes Pumps Inc.
999 F.2d 133. 137 6th Cir. (1993).........................14

Greenzholz, et al., v. Nebraska Penal and Correctional
442 US 160 L Ed 2d 668, 99 S.Ct. 211,
No. 78-201 (1979).........................................23

Russelo v. U.S.
464 U.S. 16, S.Ct. 23 (1983)..............................9

Smith v. Eischen
Eighth Circuit Court of Appeals #23-2620 (2023).......2

Solberg v. Eischen
Dist. of Minnesota, Case # 23-cv-03568 (2023).........15,19

Torgerson v. Eischen
Dist. of Minnesota, Case # 23-cv-2779 (2023)..........15,19

Pargo et al., v. Elliott et al.
LEXIS 16566 894 F. Supp 1243, Case No. 4-92-cv-20781
Dist. of S. Iowa (1995)...................................22

White v. Scibana
390 F.3d 997, LEXIS 2481 No. 04-2410, 7th Cir (2004)..4

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Darrell Smith.
Petitioner.

v. Case Number______________
(To Be Determined)

B. Eischen, Warden
Respondent.

**Motion for §2241 Habeas Corpus
For Correct Computation, Application of First Step
Act FTCs and Equal Protection**

Now comes, Darrell Smith, pro se, requesting that this Honorable Court order the BOP to follow (1) statutory guidelines of "imposed term" in calculating and applying FSA credits, (2) follow BOP Policies which correctly state and illustrate how BOP credits are to be computed and applied over the "imposed term,", and (3) stop the discriminatory practice of computing and awarding FSA credits to inmates serving 36-months or less, and failing to give equal protection of computation and application of FSA credits to those with sentences beyond 36-months.

**History of the Filing**

Smith has filed two previous administrative remedies, taking those remedies through to the highest level of the BOP, with the BOP refusing to address Smith's statutory questions asked of the BOP.

Smith's arguments are purely statutory. Without proper statutory interpretation, then the computation and award of FSA credits will continue not to be done in accordance with BOP Policy and be discriminatory. In Gallo v. Ortiz, LEXIS 28589 2021 WL 471600 #4 Ni Case No. 20-16416, Dist. of N.J., the Judge ruled the following:

"...exhaustion is **not required** with respect to claims which turn on statutory construction..."

Even though Smith requested the BOP answer the statutory questions presented herein, the Court may rule that Smith had his chance to ask them better the first time, and failed. The problem with this "ruling" is that (1) the BOP changed their computation and award of BOP credits twice between October 2022 and February 2023, the change which affected Smith's claims, resulting in Smith having to file a separate Habeas request to address this change[1], (2) the BOP said "one thing", when Director Peters visited Duluth May 2023, stating that "FTC credits would be issued 'up-front' in the same manner as GTCs, but, then did another for inmates serving sentences beyond 36-months, as argued herein, and (3) and on November 18, 2023 the BOP issued a First Step A&O Handbook which illustrated their written FSA policies, but failed to implement these policies for inmates serving sentences beyond 36-months. Because of these "multiple changes" over time, Smith's previous Habeas FSA arguments **also changed with the flow** and with improved understanding. Under a previous Habeas filing, it is true that Smith **did not adequately argue** the statutory questions presented herein. One of the Habeas claims was appealed under case number 23-2620. In attorney Hoskins response to that appeal, Hoskins told the Appellate Court:

"...Smith sets for a number of arguments on appeal, **some of which were not properly presented to the district court...**"

Hoskins' statement was correct - however, Hoskins goes on to argue that because of the "lack of proper presentation", the Court should not consider Smith's arguments. But, Hoskins **also misrepresented** Smith's arguments to the Appellate Court stating:

...Smith sought to have [BOP]...calculate and <u>**immediately apply**</u> [FTCs] [but]**...it was premature to apply those time credits...**"

Attorney Hoskins **misstates Smith's argument(s)** - Smith did **not request "immeidate application"** of FSA credits, in the end, he requested **statutory interpretation,** because without proper statutory interpretation, then how can **anyone know if "immediate application"** of FSA credits are warranted or not? "Eye-balling" an outdate without **first defining the statutory "equation"**, defining the conditions under which FSA credits are "immediately applied", is putting the saddle before the horse.

## Three Statutory Arguments Presented Herein

Smith requests that the Court interpret the following:

1. **Imposed Term:** In the First Step Act, the computation and application of both GTCs and FTCs are governed by "Imposed Term". It is Smith's contention that the computation and application of FTCs should be the same given that "imposed term" has the **same meaning** for both GTCs and FTCs;
2. **BOP Policy Statements:** The following three BOP Policy statements (a) The First Step Act Final Rule, (b) BOP Policy Statement 5410.01, and (c) the First Step Act A&O Handbook, all lead to a "plain" computation and application reading, that FTCs should be computed and applied in the same manner as GTCs. Without the same computation and application, then a 14th amendment constitutional claim arises - "equal protection;"
3. **Equal Protection:** Because the BOP is not applying their Policy statements equal to all inmates, but discriminating against inmates serving over or under 36-months, the BOP is violating inmates' constituional rights. BOP Director C. Peters visited Duluth in May 2023 and **unequivocally** stated that FTCs would be computed and applied in the same manner as GTCs. This staetment of oral policy helps define written policy as described herein.

## ARUGMENTS

### Claim 1: Computing and Applying "Imposed Term"

When Congress passed the First Step Act, they amended 18 USC §3624(A)(b)(1)(i), changing the phrase "term of imprisonment" to "imposed term" when computing and applying GTCs. The Courts previously allowed the BOP to apply a "Chevron defense" to interpret how GTCs were to be computed and applied reference "term of imprisonment." The BOP stated, and the Courts agreed, that "term of imprisonment" meant that GTCs were **only awarded while the inmate served time behind bars** ("earn-as-you-go"), but **not earned while on prerelease custody.** A court case which illustrates this "computation method" was White v. Scibana, 390 F.3d 997, LEXIS 24813, No. 04-2410, 7th Circuit (2004):

> "The district court agreed with the inmate that the phrase "term of imprisonment" as used in §3624...referred to the sentence **imposed**, rather than the **term the inmate had acutally served** [better known as "earn-as-you-go"]. The statute granted an inmate 54 days of good time per year...Under the Bureau's formula the the inmate was **only entitled to 470 days of good-time credit** [this inmate serving a 10-year term]. The Court of Appeals reversed, finding that Congress' language was **subject to...a full Chevron deference** [lowering the District Court's award of 540 GTCs, or 54 Days X 10 years = 540 GTCs, to the BOP's number of 470 GTCs].

Thus, the 7th Circuit ruled that "term of imprisonment" meant (1) GTCs were only earned while in prison, and (2) "imposed term" was a legal definition **separate** from "term of imprisonment." Please see the following "graph" which demonstrates this computational difference:

| Column No. (1) Year Of Sentence | (2) Time Served In Prison Realized | (2) Imputed | (3) GTCs Earned As Realized | (4) GTCs Earned As Imputed | (5) Total GTCs Credit Each Year |
|---|---|---|---|---|---|
| Year 1 | 365 Days | 365 Days | (54 Days) | (0 Days) | (54 Days) |
| Year 2 | 365 Days | 365 Days | (54 Days) | (0 Days) | (54 Days) |
| Year 3 | 365 Days | 365 Days | (54 Days) | (0 Days) | (54 Days) |
| Year 4 | 365 Days | 365 Days | (54 Days) | (0 Days) | (54 Days) |
| Year 5 | 365 Days | 365 Days | (54 Days) | (0 Days) | (54 Days) |
| Year 6 | 365 Days | 365 Days | (54 Days) | (0 Days) | (54 Days) |
| Year 7 | 365 Days | 365 Days | (54 Days) | (0 Days) | (54 Days) |
| Year 8 | 365 Days | 365 Days | (54 Days) | (0 Days) | (54 Days) |
| Year 9 | **260 Days** | **190 Days** | (38 Days) | (16 Days) | (54 Days) |
| Year 10 | 0 Days | 0 Days | (0 Days) | (54 Days) | (54 Days) |
| **Totals** | **3,180 Days** | **3,100 Days** | **(470 Days)** | **(70 Days)** | **(540 Days)** |

Mathematically then, prior to the First Step Act change of 18 §3624 (A)(b)(1)(i), White, this inmate serving a 10-year sentence, had to spend 3,180 days in prison, receiving 470 GTC credits, on a total "imposed term" sentence of 3,650 days. During the last 470 GTC days, the Courts allowed the BOP to "Chevron interpret" that the inmate **did not earn any GTC days during supervised release.** However, once "term of imprisonment" changed to "imposed term", the BOP **was forced to allow the inmate to earn GTCs during that final 470 days of supervised release.** The GTCs earned during this final 470 days equalled 70 GTC days (54 days for 365 days in year 10, and 16 GTCs for the 105 "remaining days" in year 9. These "additional" 70 GTC days were **applied to the prison term BEFORE THE INMATE WENT ON SUPERVISED RELEASE** and lengthened the "supervised release" from 470 days to 540 days (looking at Column 2, you will see under "term of imprisonment" the inmate spends 3,180 incarcerated, but, under "imposed term" the inmate spends 3,100 days in prison).

**Firstly,** a "maxim" shows itself: **"ALL GTCs EARNED ON SUPERVISED RELEASE MUST BE APPLIED TO THE SENTENCE PRIOR TO THE INMATE ACTUALLY GOING ON SUPERVISED RELEASE."** This method of applying GTCs is called "up-front" application of GTCs because, in order to include all Good Time Credits earned on prerelease custody, then GTCs so "earned" are calculated against the "entire sentence." This calculating of GTCs over the entire sentence, or "imposed term," means that **70 of the GTCs "earned" during prerelease custody are IMPUTED AS BEING EARNED.** This means, mathmatically, that the term "earnings" carries **two separate legal representations:** (1) GTC earnings that are "realized" - that is, "earned" while in prison, and (2) "imputed" - that is, **ASSUMED TO BE EARNED** while on supervised release and computed and applied "up-front."

Obviously, the "imputed" earnings are "earnings realized at some point in the future" but **currently recognized** to affect the entire, imposed term.

**Secondly,** then, one concludes that **any SENTENCE REDUCTION CREDIT "IMPUTED" AS BEING EARNED WHILE ON PRERELEASE CUSTODY** must be applied as being "imputed" as earned **prior to actually going on prerlease custody.** Without such an "imputation of earnings", then **ANY GTC OR FTC CREDIT "EARNED" WHILE ON PRELREASE CUSTODY IS WORTHLESS.** Nowhere (1) in the First Step Act or (2) in BOP Policy statements does it say that GTC or FTC credits "are worthless" when imputed as earned while on prerelease custody. In fact, the "imposed term" calculation and application of GTCs **"imputed as earned"** while on prerelease custody, **being 70 GTCs**, are applied to the "imposed term" to reduce the inmate's sentence from 3,180 days "behind bars" to 3,100 days behind bars. This "imputation of earnings" is called "up-front" calculation of GTC credits.

When Congress adopted the First Step Act, they used the **same "imposed term" legal langauge for FTCs as they did for GTCs** - that is, under 18 USC §3624(g), the First Step Act reads:

> "[vesting of FTCs **shall** be applied when a prisoner]...has earned time credits in an amount that is equal to **the remainder of...the imposed term**."

Additionally, the BOP interpreted the First Step Act to read that FTCs were to be "earned" while on prerelease custody. This "FTC earnings" were iterated in **three different BOP documents:**

1. **Final Rule**, issued January 22, 2022, which stated:

   "...the Bureau agrees that inmates in prerelease custody - whether in residential reentry center (RRC) or home confinement -- **are eligible to earn FSA time credits** under 18 USC §3624(d)(4)(A)..."

2. BOP Policy Statement 5410.01 issued November 18, 2022 reads:

"...As explained in Section 10(b) the Bureau **will calculate an inmate's PRD by** assuming **that an inmate WILL REMAIN IN EANING STATUS THROUGHOUT HIS OR HER SENTENCE, INCLUDING WHILE IN PRERELEASE CUSTODY**."

...and again:

"...the Bureau will initially estimate an FSA **conditional Projected Release Date (PRD) by calculating the MAXIMUM NUMBER OF POTENTIAL FTC THAT AN INMATE MAY EARN DURING HIS OR HER SENTENCE...**

3. **First Step Act A&O Handbook** issued November 18, 2023 (page 9)[1]

**Question:** **Do I earn FTCs while in Halfway and/or Home Confinement?**
Answer: Yes, As long as you continue to successfully pgoram.
**Question:** **How does FTCs work with Pre-Release Placement?**
Answer: Your halfway house and/or home confinement recommendation will include the total number of days recommended under the Second Chance Act, **plus the remaining number of FTCs not applied** to supervised release [that is, FTCs beyond the 365-days of FTCs earned for "supervised release"] at the time of referral."

From the above we can conclude the following:

i. FTCs are earned while on prerelease custody;

2. A "PRD" (conditional projected release date) will be given to each inmate which **projects the MAXIMUM number of FTCs earned over the ENTIRE SENTENCE** [not just the "first three years of the sentence, maxing out FTCs at 365-Days as the Bureau is doing now for inmates serving longer than 36-months];

3. The "conditional projected release date", viewed in context to the illustration given in the First Step Act A&O Handbook (page 10 of the Handbook, Exhibit 1) is **calculated** with (a) the MAXIMUM number of FTCs earned over the "entire sentence" (per 18 USC §3624(g) the "remainder of the **imposed term**") AND per, the Handbook quoted above, is determined by (b) FTCs earned toward Supervised Reelase and (c) "**the remaining number of FTCs**" **[both realized and imputed** as earned] **equal to...remainder of... the imposed term."**

4. As shown in the previous GTC calculation illustration, and case law cited, **the only way to account for GTCs earned on prerelease custody is to AWARD THEM PRIOR TO THE INMATE GOING PRERELEASE CUSTTODY.** Likewise, FTCs – the **only way to account for FTCs "earned" while on prerelease custody,** is to impute them as hav**ing been earned prior to going to prerelease custody** – without such an "imputation", then the FTCs "earned" on prerelease custody **are absolutely worthless as THEY AFFECT NOTHING** – (a) not the prerelease custody because the inmate is already on prerelease custody, and (b) not the inmate's outdate because the lack of awarding FTCs "imputed as earned" during prerelease custody are worthless.

As stated, the term "earnings" has two **applied** meanings both in "the real world" and in law. People go to prison for "projecting future imputed earnings" (for finances) that are unrealistic and not achievable or fraudulent. "Imputed earnings" are not "ethereal" – but **real** – they affect all present calculations and legal analysis of any and all kinds when dealing with quantitative values. "Imputed earnings", according to Webster's New World Dictionary means "**assumed earnings."** Thus, when Director Peters writes in 5410.01 that the "Bureau will calculate an inmate's PRD **by assuming** that an inmate will remain in [FTC] earnings status...including while on prerelease custody", she is, in affect, assenting to the fact that **some of the FTC** earnings are "imputed" or "assumed to have been earned" **prior to the actual earnings being realized in "real time."**

This "imputed" or "assumed" earnings **is currently being done for inmates serving 36-month sentences or less,** but, not for inmates like

Smith who are serving a sentence greater than 36-months. As argued and demonstrated later, this is an "equal protection" discrimination issue.

In the case Russello v. U.S. 464 U.S. 16, S.Ct. 23 (1983), the Court ruled:

> "Congress includes particular language in one section of a statute but omits it in another section of the saem Act, it is **generally presumed that Congress acts intentionally and purposefully** in disparate inclusion or exclusion..."

Thus, when Congress used "imposed term" for GTCs, and in the same §3624 statute used "imposed term" for FTCs, "imposed term" for both **must mean the same thing.** Congress **did not use "term of imprisonment"** for FTCs ("earn-as-you-go") - they used "imposed term." The use of "imposed term" prompted:

1. The BOP to count all GTCs earned on supervised release to be counted "up-front" - assumed or "imputed GTC earnings." Without such an "imputation of GTC earnings", then all GTCs earned while on supervised release **become worthless,** and the BOP would be back to controverting the intent of Congress, ignoring the "term of imprisonment" to "imposed term" change;
2. Likewise, Congress used "imposed term" when describing how FTCs were to be counted - some realized, and some imputed, as is being done with GTCs. FTCs earned on prerelease custody are either (a) worthless or (b) **imputed** to affect one's outdate, as is currently being done for inmates serving 36-month sentences or less. Congress used "remainder of the imposed term" - the "remainder" being an adjusted "sentence" being reduced by the number of GTCs both (a) realized and (b) imputed.

3. This is not a question of "liberty interest", it is a question (a) proper **application of the math**("imposed term" means the same thing for both GTCs and FTCs), (b) both GTCs and FTCs are earned on prerelease custody, and (c) to properly credit GTC and FTC earnings on prerelease custody, the "credits" must imputed prior to getting to prerelease custody, otherwise the credits are worthless;
4. The term "earnings" in the realworld, and **in any world**, carries two applied meanings - (a) realized (in "real-time") and (b) imputed. A projection without "imputed" earnings is worthless - just as a "conditional projected release date" is worthless if the FTC credits earned while on prerelease custody are not first imputed as earned;
5. The Supreme Court ruled in Russello that if Congress is using the same word in two separate sections of the same code, then it was done on purpose and it means the same thing;
6. The BOP was not given legal authority to state "FTCs are earned on prerelease custody" and then essentially claim the credits are worthless when earned - **something that is earned is applied**.
7. Congress did not give the BOP the "chevron license" to discriminate against inmates relative to "length of sentence."

**Claim 2: BOP Policy Statements**

In order to "fully comprehend" how "imposed term" is calculated and applied, then "imposed term" must be viewed in context with BOP Policy statements. Smith has already covered these Policy Statements under the "imposed term" claim, those three policy statements being:

1. The BOP's First Step Act Final Rule published January 22, 2022;
2. BOP Policy Statement 5410.01 authored by Director C. Peters, issued November 18, 2022;
3. And the BOP's First Step Act A&O Handbook, published November 18, 2023.

These three policies, taken together, form a consistent picture of FTC computation and application. Smith wishes to concentrate on BOP Policy 5410.01 and the A&O Handbook relative to providing illustrations as to what their "plain language" and "plain illustrations" leads any common person to conclude FTCs are realized and imputed.

BOP Policy Statement 5410.01

As quoted earlier, BOP Policy Statement 5410.01, states on page 16:

> "...the Bureau will initially estimate an FSA **conditional Projected Release Date (PRD) by calculating the MAXIMUM NUMBER OF POTENTIAL FTC THAT AN INMATE MAY EARN DURING HIS OR HER SENTENCE...**"

"Maximum Number" should mean "maximum number" - not some "number" the BOP wants "maximum number" to mean. Additionally, as Policy 5410.01 goes on to say, this "maximum number of FTCs" includes the FTCs earned while on prerelease custody. To calculate Smith's maximum number of potential earned FTCs, please consider the following illustration:

| **Explanation** | **Date** | **FSA Credits** | **FSA Monthly Rate** | **Days in Year** |
|---|---|---|---|---|
| Start of Sen. | Apr 30, 2017 | 0 Credits | 0 Days Month | 246 Days |
| | Dec 31, 2018 | 0 Credits | 0 Days Month | 365 Days |
| **Passage of FSA** | Dec 31, 2019 | 180 Credits | 15 Days Month | 365 Days |
| | Dec 31, 2020 | 180 Credits | 15 Days Month | 365 Days |
| (175 Month | Dec 31, 2021 | 180 Credits | 15 Days Month | 365 Days |
| Sentence = | Dec 31, 2022 | 180 Credits | 15 Days Month | 365 Days |
| 5,323 days - | Dec 31, 2023 | 180 Credits | 15 Days Month | 365 Days |
| 787 GTCs = | Dec 31, 2024 | 180 Credits | 15 Days Month | 365 Days |
| **4,536 Day Term)** | Dec 31, 2025 | 180 Credits | 15 Days Month | 365 Days |
| | Dec 31, 2026 | 180 Credits | 15 Days Month | 365 Days |
| | Dec 31, 2027 | 180 Credits | 15 Days Month | 365 Days |
| | Dec 31, 2028 | 180 Credits | 15 Days Month | 365 Days |
| | Oct 2, 2029 | 135 Credits | 15 Days Month | 275 Days |
| **Totals** | | **1,935 Credits** | | **4,536 Days** |

Ocotber 2, 2029 represents Smith's GTC-adjusted outdate. During Smith's "entire sentence" he will earn a **MAXIMUM** number of FTC credits of 1,935 - including the FTC credits earned while on prerelease custody - **just as BOP Policy 5410.01 states should be done**, as quoted earlier. If the same "computation and application" formula as is afitted to GTCs is also computed and applied to FTCs, reference the use of the same "imposed term", then (1) a portion of the FTCs are "realized" while incarcerated, and a portion are "imputed" as earned while on prerelease custody. Smith's "earn-as-you-go" outdate is March 21, 2026. By March 21, 2026, Smith will have earned 1,290 FTCs - as shown below:

| **Explanation** | **Date** | **FSA Credits** | **FSA Monthly Rate** | **Days in Year** |
|---|---|---|---|---|
| | Apr 30, 2017 | 0 Credits | 0 Days Month | 246 Days |
| | Dec 31, 2018 | 0 Credits | 0 Days Month | 365 Days |
| | Dec 31, 2019 | 180 Credits | 15 Days Month | 365 Days |
| | Dec 31, 2020 | 180 Credits | 15 Days Month | 365 Days |
| | Dec 31, 2021 | 180 Credits | 15 Days Month | 365 Days |
| | Dec 31, 2022 | 180 Credits | 15 Days Month | 365 Days |
| | Dec 31, 2023 | 180 Credits | 15 Days Month | 365 Days |
| | Dec 31, 2024 | 180 Credits | 15 Days Month | 365 Days |
| | Dec 31, 2025 | 180 Credits | 15 Days Month | 365 Days |
| | Mar 21, 2026 | 30 Credits | 15 Days Month | 80 Days |
| **Subtotals** | | **1,290 Credits** | | **3,246 Days** |
| **Days of Prerelease Custody** | | | | **1,290 Days** |
| **Total GTC-Adjusted Days in Prison** | | | | **4,536 Days** |
| **FSA Credits Earned While on Prerelease Custody** | | | | |
| | Mar 22, 2026 | | | |
| | Dec 31, 2026 | 150 Credits | 15 Days Month | 285 Days |
| | Dec 31, 2027 | 180 Credits | 15 Days Month | 365 Days |
| | Dec 31, 2028 | 180 Credits | 15 Days Month | 365 Days |
| | Oct 2, 2029 | 135 Credits | 15 Days Month | 275 Days |
| **Subtotals** | | **645 Credits** | | **1,290 Days** |

The above illustration shows that under "earn-as-you-go", Smith has an "out-date" of March 21, 2026, having "earned 1,290" FSA days from January 1, 2019 through March 21, 2026, Smith's projected **"earn-as-you-go" outdate.** During the 1,290 days of FSA "prerelease custody," Smith will earn an additional 645 FSA credits. Now, if (a) the BOP applied those FSA credits earned while on prerelease custody **in the**

**manner as the BOP is CURRENTLY doing** for those serving 36-months or less, or (b) in the **same manner** as Congress **MANDATED** be used for GTCs - that is, GTCs earned while on prerelease custody or **applied to the sentence BEFORE** one gets to prerelease custody, (or) as is clearly illustrated reference the First Step A&O Handbook (as is discussed later), then those 645 FSA credits earned while on pre-relrease custody would be applied to Smith's "earn-as-you-go" outdate of March 21, 2026, **reducing the March 21, 2026 date** by 645 days. The new adjusted FSA outdate would then be June 14, 2024 (645 days removed from March 21, 2026). This June 14, 2024 **fully accounts for:**

1. BOP Policy 5410.01 - that the MAXIMUM number of FSA days are issued for the **entire sentence**, or as 18 USC §3624(g) puts it, **computed and applied against "the remainder of the imposed term**," accounting for FSAs earned on prerelease custody;
2. "Imposed Term" - that GTC credits are both (a) realized and imputed as earned, giving the definition of "earnings" the same definition that civil and criminal cases (of all kinds) allow for the definition of "earnings". The "earnings" definition for GTCs is applied to FTCs because both FTCs and GTCs are computed against the "imposed term"--which includes "prerelease Credits";
3. First Step Act Final Rule - the FSA Final Rule, along with BOP Policy Statement 5410.01, and the First Step Act A&O Hand-book, all verify that FSA **credits are earned while on pre-release custody** - and the only way to "recognize" credits earned on prerelease custody is to "impute" them as being earned prior to getting to prerelease custody - **as is currently being done for those serving 36-month sentences or less;**
4. First Step Act A&O Handbook - As discussed next, "imputing" FTCs

for inmates serving 36-months or less is the "current BOP standard" and practice - and the A&O Handbook illustrates this. Those serving sentences greater than 36-months are receiving unequal treatment, not having their FSA credits earned while on prerelease custody "imputed;"

5. The BOP C. Peters Comments - C. Peters visited Duluth in May 2023, with inmates and staff, and during meetings said, "FTCs would be applied in the same manner as GTCs - "up-front"". Smith then met with C.O. Finkler **after** this public statement, and C.O. Finkler **confirmed THAT THIS IS EXACTLY WHAT DIRECTOR PETERS STATED.** Smith again met with C.O. Finkler on January 16,2024 (FSA Program Director at Duluth)and C.O. Finkler stated, "Well, this is what **we thought was going to happen,** but, statutory law interpretation is that the BOP can only issue up to 365-FTC days" (see Exhibit 3 Smith's confirmation of this discussion w/Finkler in an email sent to Finkler on January 17,2024).[2] Finkler's comments that "modified" her own Director's comments, without statutory backup goes against case law reference "oral versus written policies." In Gordon v. Barnes Pumps. Inc., 999 F.2d 133, 137, 6th Cir. (1993), the Court ruled that **when** oral policies codify written policies (or vice versa), then both policies must be "read in tandem when supportive." In this case, the Director's "oral directive" that FTCs would be "awarded 'up-front' in the same manner as GTCs" further complements BOP written Policies; BOP Policy 5410.01 (authored by Director Peters), the First Step Act Final Rule, and the words and illustration given in the First Step Act A&O Handbook. **Viewed "together,"** Director Peters' statement, and the BOP Policy statements, result

2. **C.O. Finkler** stated that those serving sentences **over 36-months were only entitled to 365-FTC** credits, not **"MAXIMUM"** number over sentence.

in a singular picture - FTC credits earned on prerelease custody should be awarded, or "imputed" as earned prior to prerelease custody - without the imputation of which, the FSA credits become worthless.

First Step Act A&O Handbook

The First Step Act A&O Handbook was published by the Bureau of Prisons on November 18, 2023 and made part of their BOP policy statement. Director Peters publicly acknowledged and approved the printing and distribution of the First Step Act A&O Handbook per questions asked of her regarding it while visiting other prison facilities. In addition to the distribution of the Handbook, given over Trulinks on November 18, 2023 (Exhibit 1), the BOP has been following (generally speaking) the computation and application of FSA credits to those inmates serving under 36-month sentences, and for those inmates participating in RDAP.[3] But, for all other inmates - those serving sentences beyond 36-months, the dictates of the A&O Handbook **are not being followed.** The A&O Handbook clearly shows, via illustration:

1. That FSA credits earned while on prerelease custody are awarded "up-front" for those inmates serving 36-month sentences or less;
2. That the First Step Act Credits work in combination with the Second Chance Act, allowing those with 36-month sentences or less to spend about 45% of their time "behind bars."

Two Habeas cases, Solberg v. Eischen, 23-cv-03568, Dist. of Minnesota (2023), and Torgerson v. Eischen, 23-cv-2779, afforded the Court "conditional projected release dates" which **proved THAT THESE TWO INMATES** were receiving FSA credits "up-front" - that is, being credited with FSA credits earned on prerelease custody, **prior to**

3. RDAP has their "own" separate FSA/RDAP computation/application system.

**going on prerelease custody.** The First Step A&O Handbook clearly shows this to be the "mathematical computation" case with the following illustration given on page 10 of Exhibit 1, illustrating the FSA credits afforded an inmate serving a 36-month sentence, assuming an incarceration date of January 1, 2024 (gross illustration):

| **"Up-Front" BOP A&O Handbook Illustration** | **Months** | **Days** |
|---|---|---|
| Term of Sentence Imposed | 36.00 Months | 1,095 Days |
| GTCs Allowed, Earned (Projected) | (5.00 Months) | (162 Days) |
| **Subtotal** | **31.00 Months** | **933 Days** |
| Projected FSA Days "Earned" (Both Realized and Imputed, "Up-Front") | (13.00) Months | (415 Days) |
| **Subtotal** | **18.00 Months** | **518 Days** |
| Less Second Chance Act Deduction | (4.00 Months) | (120 Days) |
| **Month/Days Spent "Behind Bars"** | **14.00 Months** | **398 Days** |
| **Percentage of Time Behind Bars (14/31)** | **45.00%** | |

Thus, if the inmate started his sentence on January 1, 2024, he would be out of prison 398 days later, or, be released February 3, 2024. As shown as follows, on a month-by-month basis, he will have been "imputed" to have earned FTC days while on "prerelease custody", those days being given "up-front" before he actually went on prerelease custody.

**First Proof: FTC Credits Affect On Outdate Earned On Prerelease**

| **Month/ Year** | **Days in Month (In Prison)** | **GTC Credits** | **FSA Credits** | **Total Credits** | **Remaining Days On Sentence** |
|---|---|---|---|---|---|
| | | | | | 1,095 Days |
| Jan 24 | (31 Days) | (31 Days) | (10 Days) | (72 Days) | 1,023 Days |
| Feb 24 | (29 Days) | (29 Days) | (10 Days) | (68 Days) | 955 Days |
| Mar 24 | (31 Days) | (31 Days) | (10 Days) | (72 Days) | 883 Days |
| Apr 24 | (30 Days) | (30 Days) | (10 Days) | (70 Days) | 813 Days |
| May 24 | (31 Days) | (31 Days) | (10 Days) | (72 Days) | 741 Days |
| Jun 24 | (30 Days) | (10 Days) | (10 Days) | (50 Days) | 691 Days |
| Jul 24 | (31 Days) | ( 0 Days) | (10 Days) | (41 Days) | 650 Days |
| Aug 24 | (31 Days) | ( 0 Days) | (15 Days) | (46 Days) | 604 Days |
| Sep 24 | (30 Days) | ( 0 Days) | (15 Days) | (45 Days) | 559 Days |
| Oct 24 | (31 Days) | ( 0 Days) | (15 Days) | (46 Days) | 513 Days |
| Nov 24 | (30 Days) | ( 0 Days) | (15 Days) | (45 Days) | 468 Days |
| Dec 24 | (31 Days) | ( 0 Days) | (15 Days) | (46 Days) | 422 Days |
| Jan 25 | (31 Days) | ( 0 Days) | (15 Days) | (46 Days) | 376 Days |
| Feb 2 25 | ( 2 Days) | ( 0 Days) | (15 Days) | (17 Days) | 359 Days[4] |
| **Subtotals** | **(398 Days) (Prerelease)** | **(162 Days)** | **(175 Days)** | **(736 Days)** | |

4. Note that even though the "up-front" out date is February 2, 2025, the inmate still has **359 days to serve**, figured on next page.

36-Month Inmate Sentenced Graph Continued

| Month Year | Days In Month | GTC Credits | FTC Credits | Total Credits | Custody Credit Type | Remaining Days Of Sentence |
|---|---|---|---|---|---|---|
| | | | | | | 359 Days |
| Feb 2 25 to Feb 28 25 | (27 Days) | ( 0 Days) | | (26 Days) | **Sec. Cha Act** | 333 Days |
| Mar 25 | (31 Days) | ( 0 Days) | (15 Days) | (46 Days) | **Sec. Cha Act** | 287 Days |
| Apr 25 | (30 Days) | ( 0 Days) | (15 Days) | (45 Days) | **Sec. Cha Act** | 242 Days |
| May 25 | (31 Days) | ( 0 Days) | (15 Days) | (46 Days) | **Sec. Cha Act** | 196 Days |
| Jun 1 25 **End** | (1 Days) | ( 0 Days) | (15 Days) | (16 Days) | **Sec. Cha Act** | 180 Days |
| **Second Chance Subtotals** | **(120 Days)** | **( 0 Days)** | **(60 Days)** | **(179 Days)** | | |
| **Other Prerelease Begin** | **Inmate is on prerelease custody (a) for 120 days under the Second Chance Act, and (b) 415 FTC days.** | | | | | |
| Jun 2 25 to Jun 30 25 | [29 Days] | | | | | |
| Jul 25 | [31 Days] | | (15 Days) | (15 Days) | **(Realized FTC)** | 165 Days |
| Aug 25 | [31 Days] | | (15 Days) | (15 Days) | **(Realized FTC)** | 150 Days |
| Sep 25 | [30 Days] | | (15 Days) | (15 Days) | **(Realized FTC)** | 135 Days |
| Oct 25 | [31 Days] | | (15 Days) | (15 Days) | **(Up-Front FTC)** | 120 Days |
| Nov 25 | [30 Days] | | (15 Days) | (15 Days) | **(Up-Front FTC)** | 105 Days |
| Dec 25 | [31 Days] | | (15 Days) | (15 Days) | **(Up-Front FTC)** | 90 Days |
| Jan 26 | [31 Days] | | (15 Days) | (15 Days) | **(Up-Front FTC)** | 75 Days |
| Feb 26 | [28 Days] | | (15 Days) | (15 Days) | **(Up-Front FTC)** | 60 Days |
| Mar 26 | [31 Days] | | (15 Days) | (15 Days) | **(Up-Front FTC)** | 45 Days |
| Apr 26 | [30 Days] | | (15 Days) | (15 Days) | **(Up-Front FTC)** | 30 Days |
| May 26 | [31 Days] | | (15 Days) | (15 Days) | **(Up-Front FTC)** | 15 Days |
| Jun 26 | [30 Days] | | (15 Days) | (15 Days) | **(Up-Front FTC)** | 0 Days |
| Jul 22, 26 | [22 Days] | | | | | |
| **Subtotals** | **(415 Days)** | | **(180 Days)** | | | |
| **Grandtotals** | **(933 Days)** | **(162 GTCs)** | **(415 FTCs)** | **(1,095 Days)** | | |

The graph above proves the following:

1. 415 FTCs are earned (a) during the Second Chance Act and (b) during prerelease custody (home confinement and sup. release);
2. The FTCs "earned" are both (a) realized and (b) imputed as earned affecting the outdate - the FTCs being applied **before the "earn-as-you-go" outdate of October 16, 2025** is achieved - as demonstrated with the next graph;
3. The inmate spends 45% of his time behind bars - that is, 398 days imprisoned divided by 933-GTC adjusted outdate = 45%. As will be shown later, those **with longer sentences who do not receive FTCs while on prerelease custody** (sentences beyond 36-months) spend up to 70% of their time behind bars (Exhibit 2, row 10).

**Second Proof: Earn-As-You-Go Proof 36-Month Sentence "Up-Front" Application of FTCs Earned on Prerelease**

| Year/Month of Sentence | Days In Year or Month | Days Of Remaining Sentence | FTC Crdt Days Per Year | GTC Crdt Days Per Year | Total Days Crdt Per Year | FTCs Appl From S.C.A. | FTCs Appl Fr Pre-Rel |
|---|---|---|---|---|---|---|---|
| Days of Sentence | | 1,095 Days | | (162 GTCs) | | | |
| **Days Remain of Sentence** | | **933 Days** | | | | | |
| 1/1/2024 to 12/31/2024 | (365 Days) | 438 Days | (130 FTCs) | (0 GTCs) | (495 Days) | | |
| 1/1/2025 to **10/16/2025** | (288 Days) | 0 Days | (150 FTCs) | (0 GTCs) | (438 Days) | (60 FTCs) | (135 FTCs |
| **Subtotals** | **(653 Days)** | | **(280 FTCs)** | **(162 GTCs)** | **(933 Days)** | | |
| **Prerelease Custody "Earn-As-Go-Date" 10-16-2025** | | | | | | | |
| 10/17/2025 to 12/31/2025 | (75 Days) | | (45 FTCs) | | | | |
| 1/1/2026 to 7/22/2026 | (205 Days) | | (90 FTCs) | | | | |
| **Subtotal** | **(280 Days)** | | **(135 FTCs)** | | | | |
| **Grandtotal** | **(933 Days)** | | **(415 FTCs)** | **(162 GTCs)** | **(933 Days)** | **(60 FTCs)** | **(135 FTCs** |

As is graphed above, if the inmate were to spend 653 days in prison, he would earn 280 FTCs, making his FTC-adjusted outdate to be 10/16/2025. From 10/16/2025 to 7/22/2026 he will "spend" the 280 FTCs (earned from 1/1/2024 to 10/16/2025) on "prerelease custody." However, during these 280 "prerelease custody" days, he will earn an additional 135 FTCs (280 / 30-FTC earning periods = 9 30-Day FTC earning periods - 9 FTC Earning Periods X 15-FTC days per period = 135 additional FTCs) - **280 + 135 FTCs = 415 Total Earned FTCs.**[5]

Thus, the First Step Act A&O Handbook is clear in its illustration given on page 10:

1. The inmate serving a 36-month sentence earns 415 FTC days, 280 of which are "earn-as-you-go", and 135 of which are earned while on prerelease custody;
2. The 135 FTCs earned on prerelease custody are applied **(imputed)** **before** the inmate gets to prerelease custody;
3. In addition to the 415-FTC days, the inmate earns up to 120-Days under the Second Chance Act, spending but 398 "behind bars."

5. GTC adjusted outdate of July 22 2026 less 135 FTCs = March 8, 2026 less 280 realized FTCs = July 2, 2025, less 120 SCAs = Feb 2, 2025.

**These mathematical proofs** were further "backed-up" by the BOP when they made "outdate" presentations for two previous Habeas cases, specifically (1) Solberg v. Eischen, 23-cv-3568, Dist. of Minnestoa and (2) Torgerson v. Eisch. 23-cv-2779 Dist. of Minnesota:

1. **Solberg v. Eischen**: Solberg was sentenced to 30 months. Solberg "entered prison" approximately January 1, 2023, and the BOP began counting his FSA credits in April 2023. On December 2023, the BOP averred that Solberg would earn 210 FSA credits **"over his entire sentence."** That is, Solberg was credited 10-FSA credits per month from May 1, 2023 through January 31, 2026, a period of 21 months (Solberg's GTC-adjusted outdate was February 11, 2026, or 771 days after his initial "jail-time counting" date beginning in late December 2022. The BOP awarded Solberg **210 FSA credits** (21 months X 10 = 210 FTCs). His conditional PRD given the court was July 18, 2024. Obviously, Solberg was **earning credits IMPUTED to him from July 18, 2024 through January 31, 2026, a period of 7 months, or 70-FSA credits - applied to Solberg's sentence BEFORE his BOP "earn-as-you-go" date of September 24, 2024.** How do we know the BOP "used" the September 24, 2024 date as his "earn-as-you-go" outdate? Because they disclose this date in his legal paperwork to the Court. Thus, from September 24, 2024, going back 70-FSA days, **you arrive at July 16, 2024. OBVIOUSLY, THEN FROM A MATHEMATICS STANDPOINT,** Solberg was "imputed" as having earned 70-FSA days "while on prerelease custody", yet **applied to his sentence before getting to pre-release custody;**
2. **Torgerson V. Eischen**: Solberg's and Torgerson's cases are the same in every respect regarding FTCs. In the case Torgerson v.

Eischen, case number 23-cv-2779, wherein Torgerson was serving a 24 month sentence. Torgerson was given 190 FSA credits credits, or 10-FSA credits per month over a 19-month period. Why 19 months? Because (a) Torgerson received a 730 day sentence less 108 GTC days, or a 622 day remaining sentence, (b) 622 days divided by 30-FSA day periods = 20 FSA Day 30-day periods. Given that Torgerson's "last 30-day period" is a "partial month," then this "month" is deducted from the final FSA computation leaving Torgerson with 19 months of FSAs - 19 X 10 = the 190 FSAs that Torgerson was afforded by the BOP. Torgerson claims he was given "195-FSAs". but, this 5 day difference was simply a "compromise" or a purposed miscalculation by the local BOP to "fit 15-FSA days" into a 10-Day FSA calculation period. Torgerson was let out of prison after 12 months - meaning he received at least 7 months of FSA credits "up-front" - a portion of which was "imputed" - and can be proven mathematically.

**There are many other inmates serving 36-month sentences** or less that are receiving these "up-front" or "imputed" FSA credits. However, those inmates serving sentences in excess of 36-months are **not receiving equal treatment.** Those serving 36-months or more are being "afforded" only up to 365-FTCs computed against their sentence - **NONE OF WHICH IS IMPUTED AS EARNED DURING PRERELEASE CUSTODY. Thus, those serving sentences beyond 36-months are being denied FSA credits "imputed as earned" during prerelease custody.** It is true that Solberg and Torgerson were due 15-FSA days for part of their sentence, but, the BOP "program" only afforded them 10-FSA days per month of their sentence - this is "a limiting factor" of the computer program, but this

"limiting factor" in no way impedes the proof that a portion of the FTCs earned while on prerelease custody are "imputed" as being earned prior to getting to prerelease custody.

**Claim 3: Equal Protection**

The 14th Amendment to the Constitution insures that equal protection of rights would be natural-law right of American citizens, including, under many "equal protection claims" (but not all), to those in prison. Discriminating against inmate's relative to "process", per the "length of prison term" is an equal protection claim. The First Step Act in 18 USC §3621 mentions "length of prison term:"

> "...**[shall]** implement and complete the initial intake risk and needs assessment for each prisoner (including for each prisoner prior to the effective date of this subsection, **regardless of the prisoner's LENGTH OF IMPOSED TERM OF IMPRISONMENT** and begin to assign prisoners to appropriate evidence-based recidivism reduction programs..."

Although the above does not say "do not **discriminate against inmates** relative to length of sentence", it does imply that "length of sentence" **is a class**, no different than those suffering from "**asthma**" **represents** a class of prisoner. As a "class", then this "class" has "due process" rights no different from those serving shorter sentences. With regard to FTC credits, the BOP is a**warding inmates serving** 36-**month sentences** or less, **all their due FTC credits, some of which is "imputed as earned" and calculated and applied "up-front"**, as **previously demonstrated.** Those serving **sentences in excess of 36-months** are given up to 365-FTC days, **and are not being credited with FTCs while on prerelease custody.** As graphed earlier, Smith earns 655 FTCs while on prerelease custody. <u>but is not being afforded a single such FTC credit</u>. Solberg and Torgerson, however, serving less than 36-months each, **receive** all their FTC credits "imputed as earned" while on prerelease custody

"up-front." The fact that the BOP issues a maximum number of 365-FTC for "computational outdate" purposes when calculating eligibility for increased supervised release, they are **creating a class** - the demarcation line being 36-month sentences because those serving 36-month earn, at least, 365-FTC credits (the A&O Handbook shows 415 earned). Those inmates serving greater than 36-months begin to proportionately lose imputed FTCs awarded on prerelease custody until the math proves, for inmates like Smith, that **no FTC credit is being imputed as earned FOR ANY TIME SPENT ON PRERELEASE CUSTODY.**

In the case Pargo et.al., v. Elliott, et.al., LEXIS 16566 894 F. Supp. 1243, Case No. 4-92-dv-20781, Dist. of S. Iowa (1995), the Judge ruled that in order to prove discrimination againt inmates, **the inmate must prove** (a) "similarly situated discrimination," (b) arithmetic mean computation difference, (c) process differentiation. By the BOP giving all inmates serving 36-month sentences or less "preferred" FTC application treatment, i.e., awarding them FTC credits "up-front" (a portion imputed as earned) for time spent on prerelease custody, earing FTC credits while on prerelease custody, then they are violating **every aspect** of this three-prong discrimination test:

1. All inmates are "similarily situated" at a Camp setting;
2. Those serving 36-month sentences or less spend about 45% of their time behind bars, due to FSA-issuance and "up-front" award for FSAs imputed as earned on prerelease custody, whereas those serving sentences in excess of 36-months, spend up to 70% of time behind bars (see Exhibit 2, row 10 - percentage discrimination differences);
3. Those serving 36-months or less are **given a different** FTC adjusted

allowance process - with a "demarcation line" being drawn at 365-FTCs.

The government argued "liberty interest." The Supreme Court defined "liberty interest" for inmates in Greenholz, et al., v. Nebraska Penal and Correctional, 442 US 160 L Ed 2d 668, 99 S.Ct. 2100, No. 78-201 (1979). Greenholz **agrees** with Smith's arguments **equating liberty interest to EQUAL PROTECTION for all** inmates:

> "[a] [liberty interest] of prison inmates...should be deferred for at at least **one** of four reasons: (1) [an inmate] is entitled to due process [equal protection] under...the Fourteenth Amendment, (2)...procedures safeguard against serious risk of error...(3)...[the process] is Constitutionally ade uate...sufficient to create a liberty interst... (4)...notice of decision [is fair for all]..."

The Judge in the Pargo v. Elliott case, cited earlier, derived, in part, his test for "discriminating against inmates" from this decision. Thus, a "liberty interest" offers "equal protection" - that is, all inmates receive "good behavior and participatory credits" without d scriminating relative to length of sentence. Interpreted differently, Greenholz reads that inmates must be (1) credited under the **same process for all**, (2) and regardless of whether the actual "credit results" differ, the equations and policies under which those "credit equations" are derived **must be equal to all.** By affording inmates FTC credits "up-front" for prerelease custody, some credits being realized, some being imputed, for those serving under 36-months, and denying them to inmates serving sentences in excess of 36-months, then **this violates Greenholz, AND** it violates the true meaning of "liberty interest" - "liberty interest" being "equal protection for all", not "unequal protection" or discrimination against a select group of inmates due to length of sentence.

## Conclusion

Smith requests that the Court rule on the following statutory claims:

1. **Imposed Term** - That the use of "imposed term" in the First Step Act should be interpreted to mean the same thing - that both GTCs and FTCs are to be calculated and applied over "the entire term of the sentence". differentiating "imposed term" from used prison sentence phrase, "term of imprisonment." The Courts previously ruled that the BOP could excercise a "Chevron defense" and award GTCs under an "earn-as-you-go" system. not awarding GTCs during prerelease custody. The change from "term of imprisonment" to "imposed term" meant that GTCs **had to be calculated over the entire sentence.** Because FTC computation and application are guided by the same "imposed term". then it stands to reason that FTCs too must be **calculated and applied relative to the entire sentence,** with FTCs earned during supervised release being partially imputed as earned. as is being done for inmates serving 36-month sentences or less;
2. **BOP Policies** - BOP Policy Statement 5410.01 clearly states that inmates will be given a **conditional projected release date** with the **MAXIMUM number of FTCs** calculated over the entire sentence. The BOP is only doing this for inmates serving 36-month sentences or less. Smith requests that the Court order the BOP to follow their own written policy in this regard. They have currently shown Smith only 365-FTCs earned - but **have not calculated or disclosed a conditional projected release date showing the MAXIMUM number of FTCs Smith can earn over his entire sentence;**
3. **Equal Protection** - That the BOP give Smith the same FTC treatment that is being afforded those serving 36-month sentences or less - that is FTCs that are earned, being both (a) realized and (b) imputed as earned. with the "imputed earned" FTCs being "realized"

or being applied - prior to qualifying for "earn-as-you-go" prerelease custody date. This is being done for those serving 36-month sentences or less, but, not for inmates like Smith.

If the Court does not order the BOP to "equally protect", then explain:

1. Why it is not discrimination that **inmates** serving 36-month sentences or less spend 45% of their time behind bars, getting FTCs credited "up-front" for prerelease custody;
2. How is it allowed that the "absolute value" of 15-FSA days per 30-day period drops from 15-FSA days per 30-day period to 9.32 days per 30-day period for inmates like **Smith**, resulting in **FTCs earned on prerelease custody** being deemed worthless? This is discriminatory - an arithmetic mean adjustment to the First Step Act which is not specifically allowed relative to "length of sentence." Please define the statutotory authority that gives the BOP the right to decrease 15-FSA days to 9.32 FSA days per 30-day period for inmates like Smith (see <u>Exhibit 2</u>, row 10)? Those serving 36-month sentences or less get 15-FSA days off per 30-day period, unlike Smith who is averaging 9.32 when, in fact, he qualifies for 15-FSA days per 30 day FSA period.

Signed this 23rd Day of April Year 2024

Signed By

Darrell Smith #16355-029
Federal Prison Camp
PO Box 1000
Duluth, MN 55814

RECEIVED BY MAIL
APR 29 2024
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

EXHIBIT #1 1 OF 11

24-cv-1551 (PJS/TNL)

## First Step Act Admission and Orientation (A&O) Addendum

The First Step Act (FSA) allows eligible inmates to receive Federal Time Credits (FTCs) for successfully participating in approved Evidence-Based Recidivism Reduction (EBRR) Programs and/or Productive Activities (PAs). These credits can be used toward pre-release, community-based placement and/or toward early release to a Supervised Release Term.

### What is the PATTERN Risk Assessment?

All sentenced inmates, regardless of eligibility status, will be assessed for risk of recidivism and for their needs. The Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) is the automated recidivism risk assessment tool and part of the Bureau's FSA-approved Risk and Needs Assessment System. The PATTERN tool is completed during the Initial Classification and is used to assign each incoming inmate an initial recidivism risk level of Minimum, Low, Medium, or High. You will receive a General and Violent Risk Level and the higher of the two is your overall Recidivism Risk Level. The resulting recidivism risk level is not to be confused with security or custody level. Risk level is re-assessed at every regularly scheduled program review (commonly called a team meeting) throughout your incarceration with the BOP. Your case manager will discuss your PATTERN results during your Initial Classification and at each team meeting throughout your incarceration.

Your case manager will also provide you a copy of your PATTERN risk assessment worksheet at each team. The worksheet will show your current PATTERN risk scores and level for General and Violent Recidivism Risk as well as your overall Risk Level. The worksheet will also list all your program completions for which you are receiving credit.

In addition to the PATTERN risk assessment being reviewed during regularly scheduled team meetings, it will also be automatically reviewed during the monthly auto-calculation of Federal Time Credits to capture changes in risk level elements since the last team. For example, program completions, clear conduct or sanctioned incident reports, and birthdays (age). While this new automation will allow for changes to be credited closer to their occurrence, it will also ensure that changes are credited for the FSA Assessment. This automation applies to all inmates whether in the institution, pre-release placement, on writ, in-transit, etc.

SCANNED
APR 29 2024
U.S. DISTRICT COURT MPLS

### What is the SPARC-13 Needs Assessment?

The Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13) is the Bureau's needs assessment system. It is used to assess inmates in 13 need areas to focus recommended programming to reduce the risk of recidivating. Portions of the SPARC-13 assessment require the inmate's active participation. **Failure on the inmate's part to complete the self-assessment surveys timely will delay completion and negatively impact the inmate's ability to begin earning FTCs as the inmate will be considered to have "opted out," and therefore will be in non-earning status regardless of eligibility to earn FTCs.**

What does this mean? **If you do not complete the surveys, which are found on the Trust Fund Limited Inmate Communication System (TRULINCS), you will NOT earn FTCs.** Do not wait until your Initial Classification to complete the surveys. The sooner they are completed, the better. If you are having difficulty finding the surveys, opening them, or understanding the questions, please talk to your unit team.

Based on the results of your initial Needs Assessment, staff from the different departments will make program recommendations to assist you in reducing your risk of recidivism. Your needs are re-assessed at every regularly scheduled program review meeting throughout your sentence and program recommendations will be adjusted based on changes in your need areas. Your case manager will discuss your SPARC-13 results as well as the program recommendations during your Initial Classification and at each team meeting throughout your incarceration.

Your case manager will also provide you a copy of your Needs Assessment worksheet at each team. The worksheet will show your current PATTERN risk scores and level for General and Violent Recidivism Risk as well as your overall Risk Level. The worksheet will also list all your program completions for which you are receiving credit.

Similar to the monthly automated review of the PATTERN risk assessment, the SPARC-13 Needs Assessment will be automatically reviewed during the monthly auto-calculation of Federal Time Credits to captures changes in your Needs Assessment.

**What are the 13 areas the SPARC-13 Needs Assessment looks at?**

Anger/Hostility*
Anti-Social Peers*
Cognition*
Dyslexia
Education
Family/Parenting*
Finance/Poverty
Medical
Mental Health
Rec/Leisure/Fitness
Substance Use
Trauma
Work

*Self-Assessment Surveys completed on TRULINCS. While the completed assessment information is uploaded monthly, you are given credit based on the day you completed the surveys – not the date it was uploaded.

**What is an Evidence-Based Recidivism Reduction (EBRR) Program?**

An EBRR Program is a group or individual activity found in the FSA Approved Programs Guide where research has shown that participation reduces, or is likely to reduce, recidivism. Some examples of EBRR Programs are:

- GED
- Residential Drug Abuse Program (RDAP)
- Anger Management

SOLBERG, JOHN 17160089

- Life Connections
- UNICOR Employment

**What is a Productive Activity (PA)?**

A PA is a group or individual activity found in the FSA Approved Programs Guide that enhances skills to address identified needs and allows an inmate to remain productive and thereby maintain, or work toward achieving, a minimum or low risk of recidivating. Some examples of PAs include:

- Alcoholics Anonymous (AA) Support Group
- Bereavement Support Group
- Circle of Strength
- Franklin Covey 7 Habits on the Inside

Inmates are also encouraged to also participate in other available activities that reduce idleness and contribute to an inmate's overall positive institutional adjustment and help maintain clear institution conduct. Some examples include:

- Productive, free-time activities (e.g., recreation, hobby crafts, or religious services)
- Family interaction activities (e.g., social visiting)
- Personal growth and development classes (e.g., adult continuing education classes)
- Institution work program
- Community service projects

**What is an FSA Assessment and when does it occur?**

The FSA Assessment brings everything together: PATTERN, SPARC-13, and EBRR/PA program participation. The FSA Assessments are independent, automated, and coincide with the Initial Classification and Program Review timeline. This means the initial FSA Assessment occurs 28 days after your arrival at your designated facility. Subsequent FSA Re-Assessments occur every 180 days, if you are more than 12 months from your projected release date, and every 90 days, if you are under 12 months from release.

Because FSA Assessments are automated, this means if your team meeting is late because your case manager is out sick or you miss it because you're out on writ or in-transit to another facility, your FSA Assessment will occur based on the most recent information in your record. And, with the enhanced automation in the PATTERN and SPARC-13 tools, those will also be updated even if you're not in your institution, or if your case manager is out sick.

**Who is NOT eligible to earn FTCs?**

- U. S. Code Inmates convicted of offenses excluded by the FSA
- U. S. Code Inmates with prior state or federal convictions excluded by the FSA
- U. S. Code, Old Law Inmates

SOLBERG, JOHN 17168089

- U. S. Code Inmates in state custody
- State boarders
- Treaty Transfers Inmates
- Military Inmates
- D. C. Code Inmates*

Your case manager will discuss your eligibility status during your Initial Classification. If you believe you are eligible, ask your case manager which offense and/or sentence makes you ineligible to earn time credits. Remember your ineligibility is based on either your conviction and/or your court of jurisdiction.

*D. C. Code inmates: In late Spring 2023, the D. C. Government passed statute which would allow eligible individuals to earn time credits. Unfortunately, the statute, as passed, did not provide the same level of detail and structure which was included in the Federal statute. Currently, the Bureau is working with the D. C. Government to determine eligibility criteria to earn and apply credit. As more information becomes available, it will be distributed.

**What if I have consecutive charges and one of them is on the disqualifying list, but the other isn't; will I earn credits?**

The short answer is no. Whether you have multiple counts, multiple J & Cs, and/or multiple jurisdictions, you are serving a single, aggregated term of incarceration. The review for eligibility is based on your term of incarceration. You are either eligible or you are not. This means if one count, one J & C, or one jurisdiction is ineligible to earn time credits, then your term of incarceration is ineligible.

Also, if you are convicted for new criminal conduct while serving your sentence, whether your sentence is run concurrently or consecutively, and if the new conviction is for an ineligible offense, the whole term of incarceration becomes ineligible for earning FTCs. For example, USC 18 § 1791, Providing or Possessing Contraband in Prison (weapon, cell phone, tobacco, alcohol, etc.) is a disqualifying offense. Even if you only received a short sentence of a few months, it will disqualify you from being able to earn credit or apply any credit you may have already earned.

**When do I start earning FTCs?**

You will earn your first FTCs once you complete 30 programming days. You can start earning programming days AFTER you arrive at your designated institution, your PATTERN Risk Assessment and SPARC-13 Needs Assessment are completed, and you agree to participate in recommended programming. This means you cannot begin earning programming days and time credits while in pretrial or holdover status, even if you are being held in one of the Bureau's Detention Centers or Jail Units. The reason is simple, the FSA Assessment process begins after you arrive at your designated facility and begin the intake and Initial Classification process.

SOLBERG, JOHN 17168089

with your release.

**What is "Opting Out?"**

You are opting out if you refuse to participate in or complete any EBRR programs or structured, curriculum-based PAs recommended based on an identified need. You are also considered to be opting out if you refuse to participate in or fail to complete any portion of the Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13), the Bureau's Needs Assessment system.

Based on the results of your Needs Assessment, staff will recommend you participate in EBRR programs and/or PAs to address your needs. If you decline to participate in an EBRR program or PA which has been recommended based on a specific identified needs area, you will be considered opted out, and therefore, in non-earning status regardless of eligibility to earn FTCs.

**Can I earn FTCs while waiting for a program?**

Yes. You will remain in FTC earning status while on a waitlist for EBRR programs or PAs recommended based on your needs assessment if you have not refused to participate. However, if you later refuse to participate in the recommended EBRR program or PA for which you were on a waitlist, you will be considered declined, or opted out, for the entire waitlist period.

The waitlist period is defined in terms of the corresponding need area(s). When an inmate declines participation after being on a waitlist, the auto-calculation application will first identify any need areas associated with the declined program and then identify the oldest waitlist associated with the need area(s). Any credits earned since the oldest waitlist associated with the need area, without intervening participation, will be rescinded to reflect the inmate's refusal.
This means that any credits earned during the waitlist period will be removed to reflect your refusal/opting out.

**How do I earn my credit?**

FTCs are awarded based your eligibility to earn credit, completion of the PATTERN and SPARC-13 assessments, and ongoing participation in programs designed to reduce the risk of recidivating. Once you are in earning status, you will remain in earning status unless or until your status changes as previously described.

FTCs are auto-calculated based on 30-day periods in earning status – meaning for every 30 days you are in earning status, you will earn either 10 or 15 days based on your PATTERN risk level at the time of your FSA Assessment. FTCs will be posted on a monthly basis, agency-wide, based on a completed 30-day period. There is no partial or prorated credit for either programming days or FTCs. No FTCs will post if you have not accumulated 30 days in earning status. Rather, those days in FTC earning status will carry over to the next monthly cycle, and you will receive your FTCs at the end of the next cycle.

SOLBERG, JOHN 17166089

For example: If the first monthly posting of FTCs occurs only five days after you go into earning status, no FTCs will post to your record as you have not yet accumulated 30 days in earning status. However, those five days will carry over to the next monthly cycle, and you will receive the FTCs at the end of the second month. If later, you go into FRP Refuse or decline a recommended needs-related program and go into opt out status, you will no longer be in earning status, and therefore, you will stop accruing days toward FTCs and no FTCs will post to your record. Once you return to earning status, you will resume accruing days toward the earning of FTCs.

Along with other enhancements to the FSA Assessment process, beginning later in 2023, your Time Credit status will also be reviewed during regularly scheduled Program Review meetings which will allow you additional opportunities to catch up the "carried over" programming days and post Time Credits to your record sooner.

**How will I know how much credit I've earned?**

At each team, you will receive a copy of the Federal Time Credits Worksheet. This worksheet will include, among other things:

- FTC days earned toward early release and toward RRC/HC placement
- Number of accrued and disallowed programming days
- Whether you are eligible to apply credits toward release, and if not eligible, the reason
- Accruing and disallowing time frames, total number of days, and reasons for disallowances
- FSA Assessment and the Recidivism Risk Level at the time of the Assessment
- FTC Earning Rate

Later in 2023 and into 2024, the FSA Time Credit Worksheet will be enhanced to provide additional information as well as improving the clarity of the information provided.

**How do I earn 15 days of credit instead of 10 days?**

Whether you earn 10 or 15 days of FTCs depends on your PATTERN Recidivism Risk level at the time of the FSA Assessment. All eligible inmates will earn 10 FTC for every 30 days in earning status. Once an inmate has maintained Low or Minimum risk for two consecutive FSA Assessments, the inmate can begin earning 15 FTCs for every 30 days in earning status.

**Can I lose FTCs?**

Yes. You can be sanctioned to Loss of FTCs by the Disciplinary Hearing Officer (DHO) for an incident report. However, you can appeal the loss through the Administrative Remedy Process. More importantly, you can request to have those lost FTC days be restored or given back **AFTER** you have maintained clear conduct for two consecutive FSA Assessments.

**If I lost FTCs because I refused to take a recommended program, can I get those days restored?**

You didn't lose FTCs because you refused a recommended program, you lost programming days which resulted in you not earning FTCs. Because you never earned the FTC days to start with, there is nothing to restore. Remember, if you decline a recommended program, you are "opting out" and therefore are in a non-earning status.

**Once I earn FTCs, how do I get to use them?**

FTCs are used two ways – early transfer to prelease custody (halfway house or home confinement) or early release to your Supervised Release term. If eligible, the first 365 days of FTCs will be applied to your early transfer to your Supervised Release term resulting in an early release from prison. Any remaining FTCs are applied to pre-release custody resulting in your ability to transfer to halfway house or home confinement sooner than you would have without the credit.

**Does everyone get to use their FTCs or are there restrictions?**

No – not everyone will get to use the FTC days earned. There are limitations. For an inmate to have up to 365 days of earned FTCs automatically applied to early release, an inmate must meet the following criteria:

- Have a term of Supervised Release to follow the term of incarceration
- Have a low or minimum PATTERN risk level
- Have not opted out or refused to participate in any required program, and therefore, be in earning status

Credit earned in excess of 365 days is applied toward increased pre-release placement in halfway house or home confinement.

**If I don't have Supervised Release to follow, do I still get to use my FTCs?**

Yes, but they can only be applied to pre-release custody.

**What if I am High or Medium Risk? Can I apply the time credits I've earned?**

Maybe. If you are High or Medium Risk but have maintained clear conduct and participated in all the recommended programming, you may be able to apply the credits you've earned by petitioning the Warden. In determining whether to approve your petition, the Warden will consider the following:

- Whether you would not be a danger to society if transferred to prerelease custody or supervised release;
- Whether you have made a good faith effort to lower your recidivism risk through participation in recidivism reduction programs or productive activities, and
- Whether you are unlikely to recidivate.

How will you demonstrate this to the Warden? By maintaining clear conduct and by participating in the EBRRs and PAs recommended to address your specific Needs. Will maintaining clear conduct and participating in programming automatically mean you will be approved? No. Each case is reviewed individually considering both your history and your time in prison. But, if you haven't maintained clear conduct for an extended period time and/or haven't completed programming, you shouldn't be surprised if your petition is denied.

**How do I petition the Warden to apply my Time Credits if I am High or Medium Risk?**

Submit an Inmate Request to Staff Member (copout) to your unit team during your regularly schedule Program Review team meeting. The unit team will review your record and make a recommendation to the Warden. The Warden, after reviewing your record and consulting with the Regional Director, will either approve or deny your petition. You will receive a written response from the Warden to your request. During all aspects of this program, you may file an Administrative Remedy if you choose.

**Are FTCs applied to my percentage of time served?**

No. FTCs applied toward your release date do NOT impact your percentage of time served because FTCs do not change your Statutory Release Date – they only change your Satisfaction Date.

**What is an FSA Conditional Release Date?**

For eligible inmates who are Low or Minimum Risk, this is a presumed earliest release date you could earn with Federal Time Credits. This calculation makes the presumption that once you are Low or Minimum risk AND in earning status, you will continue to remain in earning status. As a reminder, the FSA Conditional Date, is **NOT** your release date as the credit is only applied as it is earned. Changes in your status (e.g., FRP Refuse, program declines, Disciplinary Segregation, etc.) will result in changes in your conditional date. **The FSA Conditional Release Date is for planning purposes only.**

Additionally, a second application will project the maximum number of FTCs which can be earned during your term of incarceration. This will assist in determining the earliest eligible pre-release placement date. This means your Unit Team will be able to monitor your projected number of FTCs and submit your RRC referral timely. Remember this is still just a planning tool, if your status changes, the possible maximum number of FTC days will change as well.

**Do I earn FTCs while in Halfway and/or Home Confinement?**

Yes. As long as you continue to successfully program. Remember incident reports can result in a change in your PATTERN Risk Level. If this happens while in Halfway House and/or Home Confinement, it can also impact both your earning status and your ability to apply FTCs toward your release. If your PATTERN Risk Level increases to Medium or High Risk for any reason, you will no longer be eligible to apply your FTCs, and may be removed from pre-release placement and returned to the institution.

**How does FTCs work with Pre-Release Placement?**

Your halfway house and/or home confinement recommendation will include the total number of days recommended under the Second Chance Act, plus the remaining number of FTC days not applied to Supervised Release at the time of the referral.

**Do FTCs change my Home Confinement Eligibility Date (HCED)?**

Yes and no. Your Home Confinement Eligibility Date is calculated based on your statutory term. FTCs do not impact the number of days making up the eligibility date – that block of days is the same regardless of FTCs earned. What changes is the date itself. This is because the eligibility date is based on the number of days prior to Projected Release Date, and as your release date changes (due to earned FTCs), the Home Confinement Eligibility Date also changes, but the block of days making up the statutory Home Confinement does not. Plus, once you earn FTCs toward early pre-release placement, the Home Confinement Eligibility Date is based on that same block of days, but in advance of the maximum number of FTCs earned.




For example, if you had 30 months to serve (after Good Conduct Time) and had a minimum or low Risk level from the beginning, you could earn up to 415 FTCs. You would also have a Home Confinement Eligibility Date of about 90 days. The first 365 FTCs are applied toward release, leaving you about 18 months to serve. If your unit team also recommended you for a 120-day prerelease placement under the Second Chance Act, that would be added to the 50 FTC days remaining for all total recommended pre-release placement of 170 days. But, because the Second Chance Act Placement is served first to include the 90-day Home Confinement Eligibility, you would have to serve at least 30 of your 120-day Second Chance Act placement in the halfway house before you could transfer to home confinement.

**How do unresolving pending charges and/or detainers impact me getting Time Credit?**

As long as you are eligible to earn time credits, an unresolved pending charge and/or detainer has no impact. With the exception of inmates with final orders of deportation or removal – determinations made based on documentation provided by Immigration and Custom Enforcement (ICE), unresolved pending charges and/or detainers will not impact your ability to apply credit toward early release or pre-release placement.

However, it is important to understand that while you are eligible for halfway house and/or home confinement, placement in the community does NOT eliminate the outstanding detainers and/or pending charges. **Meaning - if you are in halfway house and/or home confinement and have detainers and/or pending charges, you are at significantly higher risk to be arrested due to active**

**warrants, and an arrest will result in a technical escape for you and an interruption in your federal sentence as the Bureau will have lost primary jurisdiction.**

Because you are not eligible for a needs-based recommendation under the Second Chance Act, your FSA placement in halfway or home confinement is VOLUNTARY. You can decline the voluntary FSA placement without any negative impact. This means you can still apply your FTCs, up to 365 days, toward early release. Please let your case manager know if you are declining the voluntary FSA placement due to unresolved pending charges or detainers in pre-release custody.

**Can I still earn FTCs if I'm eligible to receive the Residential Drug Abuse Program Early Release Benefit?**

Yes, but the Residential Drug Abuse Program (RDAP) Early Release Benefit is applied first to your release date, then any FTC days are applied afterwards. This means you must complete all components of RDAP, to include the community-based portion – a minimum of 120-days in the community-based treatment program.

To receive the full benefit of both programs, you must have enough time remaining to complete all required components of RDAP. In the event you do not have enough time remaining after completing the RDAP program to receive both, the number of FTC days applied will be reduced to allow for, at a minimum, the 120-day community-based placement as required under 3621(e).

**Questions?**

If you have questions about any aspect the First Step Act or the associated Federal Time Credits, including eligibility, requirements, or limitations, and/or programs, please talk to your unit team. They will either be able to answer your question or direct you to staff in the department that can assist you.

SOLBERG, JOHN 17166089

**"EAYG" FSA Issuance:** The graph below illustrates the number of FTCs lost due to the "earn-as-you-go" system (or "time served", as the court uses). This "EAYG" system doesn't count FTCs while on home confinement, contrary to BOP policy. For example, someone serving 15 years, loses 585 FSA days earned during 1,629 RRC/H.C. days.

EARN-AS-YOU-GO ("EAYG" - TIME SERVED SYSTEM - COMPARED TO "UP-FRONT" SYSTEM

| Row | TERM OF | | | | | |
|---|---|---|---|---|---|---|
| (1) | IMPRISONMENT | 24 MONTHS | 60 MONTHS | 120 MONTHS | 180 MONTHS | 240 MONTHS |
| (2) | DAYS SENTENCED | 730 Days | 1,825 Days | 3,650 Days | 5,472 Days | 7,300 Days |
| (3) | (LESS GTC Days) | (108) Days | (270) Days | (540) Days | (810) Days | (1,080)Days |
| (4) | SUBTOTAL GTC-ADUSTED SEN. | 622 Days | 1,555 Days | 3,110 Days | 4,622 Days | 6,220 Days |
| | Break-down of Days and Percent of "Time Served" with "EAYG" System | | | | | |
| (5) | Days in Prison | 279 Days | 932 Days | 1,970 Days | 2,993 Days | 4,129 Days |
| (6) | FSA Days | 163 Days | 443 Days | 960 Days | 1,449 Days | 1,911 Days |
| (7) | RRC/Home Conf. | 180 Days | 180 Days | 180 Days | 180 Days | 180 Days |
| (8) | Sub-Total GTC-Adjusted | 622 Days | 1,555 Days | 3,110 Days | 4,622 Days | 6,220 Days |
| (9) | Percent Time in Prison | 279/622 = 44.84% | 932/1,555 = 60.50% | 1,970/3,110 = 63.34% | 2,993/4,622 = 67.47% | 4,129/6,220 = 68.36% |
| (10) | "EAYG" System Average FSA Days Per 30-Day Per. | 15.0 Days | 10.87 Days | 10.60 Days | 10.20 Days | 9.80 Days |
| (11) | Average Days is Computed by Div. the Max FSA Days By Actual Earned FSA Days (Computing Periods, Subtr. 12 Periods for 365 FSA Sup.Rel) | Max FSA Per. = 622 Days /30-FSA Days = 20 Periods X 15 FSA Days Per Period = 300 Max FSA/ less 30 FYD =270 Max FSA | Max FSA Per. = 1,555 Days /30-FSA Days = 52 Periods X 15 FSA Days Per Period = 780 Max FSA/ less 30 FYD =750 Max FSA | Max FSA Per. = 3,110 Days /30-FSA Days = 103 Periods X 15 FSA Days Per Period = 1,545 Max FSA/ less 30 FYD =1,515 Max FSA | Max FSA Per. = 4,622 Days /30-FSA Days = 153 Periods X 15 FSA Days Per Period 2,295 Max FSA/ less 30 FYD =2,265 Max FSA | Max FSA Per. = 6,220 Days /30-FSA Days = 207 Periods X 15 FSA Days = Per Period 3,105 Max FSA/ less 30 FYD =3,075 Max FSA |
| (12) | Computation of Average FSAs Earned Every 30 Day FSA Period | 20 Periods less 9 Per. S.C. Act = 11 Net Per. 163/11 Per. = 15 FSAs | 52 Periods less 12 Per. Sup. Rel. = 40 Net Per. 443/40 Per. = 11.07 FSAs | 103 Periods less 12 Per. Sup. Rel. = 91 Net Per. 960/91 Per. 10.60 FSAs | 153 Periods less 12 Per. Sup. Rel. = 141 Net Per. 1,449/141 Per. 10.20 FSAs | 207 Periods less 12 Per. Sup. Rel. = 195 Net Per. 1,911/195 Per. 9.80 FSAs |
| | LOSS OF FSA CREDITS DUE TO BOP VIOLATION OF ITS OWN POLICY - CREDITS ON HOME CONFINEMENT | | | | | |
| (13) | | =0 FSA Loss | 750 Max FSAs - (443+180) =127 FSA Loss | 1,515 Max FSA - (960+180) =375 FSA Loss | 2,265 Max FSA -(1,449+180) =636 FSA Loss | 3,075 Max FSA -(1,911+180) =984 FSA Loss |
| (14) | | (163+180)= =343 RRC/HC | (443+180+127) =750 RRC/HC | (960+180+375) =1,515 RRC/HC | (1,449+180+636) =2,265 RRC/HC | (1,911+180+984) =3,075 RRC/HC |
| | "UP-FRONT" CALCULATION ADJUSTMENT FOR LOST FSA DAYS<br>Days in Prison Decrease (Percentage Adjustment) Accounting for Lost FSA Days | | | | | |
| (15) | | 279 Days in Prison Less 0 FSA Loss = 279 Days in Prison | 932 Days in Prison less 127 FSA Loss = 805 Days in Prison | 1,970 Days in Prison less 375 FSA Loss = 1,595 Days in Prison | 2,993 Days in Prison less 636 FSA Loss = 2,357 Days in Prison | 4,129 Days in Prison less 984 FSA Loss = 3,145 Days in Prison |
| (16) | Percentage Time In Prison | 0% Change 45% Pr.Tm. | 805/1,555 51% Pr.Tm. | 1,595/3,110 51% Pr.Tm. | 2,357/4,622 51% Pr.Tm. | 3,145/6,220 51% Pr.Tm. |

While those serving 24 months sentences can theoretically spend less percent time in prison, those with greater sentences spend an "average time" in prison that is equal with FSA corrections.

EXHIBIT #3

TRULINCS 16355029 - SMITH, DARRELL - Unit: DTH-O-A

---

FROM: 16355029
TO: R & D/Mail Room
SUBJECT: ***Request to Staff*** SMITH, DARRELL, Reg# 16355029, DTH-O-A
DATE: 01/17/2024 05:03:37 PM

To: C.O. Finkler
Inmate Work Assignment: Chapel

Ms. Finkler,

Thank you for meeting with me today. I will file your reply with my brief; I appreciate your help in understanding how they are arriving at their conditional PRDs.

Two problems to consider though:
1. By not giving the prerelease custody credits "up-front", equal for everyone, my average FSA days, over the entire sentence drops from 15 FSA days a month to 9 FSA days per month; Congress did not permit this;
2. Those with less than 36-month sentences earn their FSAs, as you state, up to 365 days (even though the A&O illustration clearly shows credit for all 415 FSA days + the Second Chance Act, not limiting the days to 365 days), some of which, depending on the sentence length, are computed "up-front", and serve but 45% of their time. Those with sentences beyond 36-months, like me, have to serve 67% of the time, and have already earned 365 FSA days with nothing given up-front; this, of course, as stated, drops my average FSA day from 15 days a month to 9 FSA days computed over the "remainder of the imposed term".

Thanks for your help.

Darrell Smith #16355-029

RECEIVED BY MAIL
APR 29 2024
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

April 23, 2024

Clerk of Court
District of Minnesota, Federal Court
300 South Fourth Street, Ste 202
Minneapolis, MN 55415

24-cv-1551 (PJS/TNL)

Dear Clerk of Court,

Enclosed is a request for Habeas Corpus §2241 relief. Please file, prepare a number and I will send the necessary $5.00 filing fee. Thank you.

Sincerely,

Darrell Smith #16355-029
Federal Prison Camp
PO Box 1000
Duluth, MN 55814

SCANNED
APR 29 2024
U.S. DISTRICT COURT MPLS

Darrell Smith #16355-029
Federal Prison Camp
PO Box 100
Duluth, MN 55814




ST PAUL MN 551
THU 25 APR 2024 AM

RECEIVED BY MAIL
APR 29 2024
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

⇔16355-029⇔
Clerk Of Court
U.S. Courthouse, Ste 202
300 S 4TH ST
US Dist. Court Minnesota
Minneapolis, MN 55415
United States

SCANNED
APR 29 2024
U.S. DISTRICT COURT MPLS

Federal Prison Camp
P.O. Box 1000
Duluth, MN 55814
Attn: Mail Room

Date 4·24·24

The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has neither been opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another addressee, please return the enclosure to the above address.