# EXHIBIT 2

SCANNED
JUL - 2 2024 LT
U.S. DISTRICT COURT MPLS

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RECEIVED BY MAIL
JUL 02 2024
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

Darrell D. Smith,
Petitioner,

v. Case No. 24-cv-1551 (PJS/TNL)

B. Eischen, Warden,
Respondent.

**Motion to "Show Cause" Why Smith's §2241 Habeas Corpus Should Not Be Dismissed For Lack of Jurisdiction**

Comes now, Darrell Smith, pro se, requesting that the court consider his request for Habeas Corpus relative to the following three claims:

1. **Denial of Smith's Constitutional Rights:** Had the BOP properly calculated and applied Smith's validly earned FTCs (First Step Time Credits), Smith's FTCs would have already "vested" in accordance with 18 USC §3624(g), that is, FTC credits **"SHALL BE APPLIED"** "over the remainder of the **IMPOSED** term of imprisonment." Courts in California, Maryland, Hawaii, New Hampshire, Washington, and D.C. have recently ruled that "vesting of FTCs" is a **liberty interest,** and denial of such vesting rights is a violation of an inmate's constitutional rights;
2. **Dual Vesting Schedule:** The BOP is applying a discriminatory FTC "vesting schedule" for inmates depending on the length of their sentence, whether that sentence is greater or less than 36-months. A dual vesting schedule results in inmates with 36-months or less having to spend but 46% of their time behind bars, and inmates like Smith, with sentences in excess of 36-months spend up to 70% of their time behind bars. Congress did not give the BOP "discretion" to violate Smith's claim for equal protection;

3. **Failure to Follow Written BOP Policy:** Neither Congress nor the courts awarded the BOP "discretion over discretion." That is, if the BOP puts FTC policy in writing, they are **legally bound** to follow that policy **NOT** deviate based on the length of one's sentence.

Smith **remains in custody** for the duration of his sentence, including time spent on supervised release. 28 USC §2241(c)(3) states that a petitioner can file a habeas claim if he "**is IN CUSTODY in violation of the Constitution or laws.**" Habeas claims are valid if an inmate's constituional rights are violated **while in custody, regardless of the form of that custody,** be it supervised release, home confinement or RRC placement. In Jones v. Cunningham, 371 US 236, 9 L Ed 2d 283 83 S.Ct 373 92 ALR2d, No 77 (1963) the court ruled:

> "In addition to **physical imprisonment**, there are **other restraints** on a man's liberty, not shared by the public generally, **which are sufficient** to support the **issuance of habeas corpus...**"

In his order, Judge Leung stated Smith's claim plainly enough,

> "...Smith has filed...alleging [the BOP] has failed to award him ...time credits...in the same manner as other federal prisoners..."

The above claim is a **constitutional violation of equal protection,** it has nothing to do with 365-FTC days - a "liberty interest" does not begin and end at 365-days and the remainder is BOP "discretion." **"Failure to award"** is a violation when that failure is based on statutory interpretation and application which violates Smith's constitutional rights for equal protection, that failure being out-of-compliance with the plain reading of the First Step Act.

Additionally, the Supreme Court is set to rule on the legal validity of the "Chevron deference" before the end of June 2024.

The claim that the BOP has "discretion over validly earned FTCs" beyond 365 days is a **Chevron deference** claim, and may not be supported by the plain reading of the First Step Act. Smith would ask that the court rule relative to any "post-Chevron-deference" adjudication by the High Court --- that is rule relative to the "plain reading" of the First Step Act being governed by the "unquestioned statutory principles" cited herein, the court's interpretation of those principles, the BOP's application of those principles, and updated Supreme Court rulings.

**Claim 1: Denial of Smith's Constitutional [FTC] Rights**

In the Arellano-Ortiz v. Quintana, C. Dist. of Calif., No. 2:23-06290-ADS (2024), ruled:

> "In light of the record, Petitioner has shown that he had a **vested liberty interest in his ETC credits,** which, **if applied,** would have resulted in his release, possibly as early as December 2022...his further **detention by the BOP is unlawful...**"

When the court ruled "his **further detention"** they were referring to Arellano-Ortiz' detention **"behind bars,"** not his release to other forms of custody, be that RRC placement, home confinement or supervised release. Arellano-Ortiz, in fact, **still had** supervised release detention and monitoring to do when the court made this ruling. In a separate case, counsel for the BOP **agreed** with the Judge in the Arellano-Ortiz case, stating in Lerma-Jaras v. Birkholz, C. Dist. of Calif., LEXIS 22654, No. 2:23-cv-09427-ODW-JDE (2024) by stating:

> "Respondent [i.e. counsel for the BOP] **ALSO AGREED** that Petitioner had a **due process LIBERTY INTEREST** in his **release...**"

This "release" **also** had to do with (a) release from "behind bars" and (b) FTC vesting, but not release from "supervised release," another form of custody as ruled by the Supreme Court.

Smith's point in citing these cases is that (1) Smith has a

**liberty interest** in a validily computed "FTC vesting date", being (2) in compliance with 18 §3624(g) "remainder of the **IMPOSED** term", and (3) nondiscriminatory in that all inmates receive the same vesting schedule. It stands to logic that if an "FTC vesting schedule" has a liberty interest, then "computing that vesting schedule" also has a liberty interest. "Vesting schedules" do not "magically appear," nor are they discretionary - 1 + 1 always equals 2 regardless to what the number "2" applies - be that (a) RRC, (b) home confinement or (c) supervised release, all being "forms of custody."

This "constitutional right" of vesting, and proper award, is also supported by Jones v. Englemann, C. Dist. of Calif. LEXIS 185635, No. 22-cv-05292-MCS-GJS, (2024). Judge Standish ruled in favor of Jones' request that his FTCs be **properly awarded**, regardless of their application to "form of custody" or vesting:

> "The FSA has told the BOP that is **"shall"** apply their earned FTCs and **"shall"** afford them an early release. Allowing the BOP - on a **BELATED AFTER-THE-FACT BASIS** to purport to **write into** FSA statutes a **DISCRETION FOR ITSELF THAT DOES NOT APPEAR THEREIN AND TO SNATCH AWAY FROM PRISONERS WHOSE EFFORTS HAVE EARNED THEM ETC-RELATED BENEFITS** not only is **unfair** but would be **contrary to the FSA's goal** of incentivizing prisoners to engage in these salutary programs and activities..."

Judge Chasinow in White v. Warden, Cuberland D. of Maryland, LEXIS 133603, No. DKC-22-2371 (2024) agreed with Judge Standish ruling:

> "Given the **application of FTCs TO ELIGIBLE PRISONERS WHO HAVE EARNED THEM IS REQUIRED, NOT DISCRETIONARY,** under §3632(d)(4)(C), the court finds that dismssal is not warranted on the ground that it lacks jurisdiction to compel the BOP discretionary action with respect to FTC (see Rodriguez v. Compenhaver, 823 F.3d 1238 1242 9th Cir. (2016)("Although a district court has no jurisdiction over discretionary designation decisions, it **DOES HAVE JURISDICTION** to decide whether the BOP acted **contrary to established federal law,** violating the Constitution, or **exceeded its statutory authority** when it acted pursuant to 18 USC §3632..."

In past §2241 cases, the Minnesota court ruled that FTCs are "not countable" until they meet the terms of 18 §3624(g), **"remainder of IMPOSED TERM,"** without defining what "remainder of the **imposed** term" means or how an inmate actually arrives at "remainder of imposed term." It seems logical that "remainder of the imposed term" is (a) not ehtereal, that is, it does not "suddenly appear" when the BOP says it appears by some form of undisclosed mathematics, and (b) "remainder of imposed term" must be a constant, unchanging mathematically based FTC vesting schedule" which is (a) well defined in BOP policy statements, (b) subject to past case law regarding other prison credits, and (c) arrives at a nondiscriminatory FTC application system that applies to all inmates regardless of the length of their sentence. Without a **(a) documented, (b) statutorily validated and (c) mathematically** consistent formula which adds to "remainder of the **imposed** term," then the **BOP** "discretion" becomes "magic," "magic" being arbitrary and capricious, a violation of Smith's constitutional rights to equal protection. "Remainder of **IMPOSED** term" is discussed next in context as to how **"imposed term"** was defined by the courts reference awarding Good Time Credits (GTCs) both pre-FSA and post-FSA.

**Claim 2: Dual Vesting Schedule**

When Congress adopted the First Step Act, they changed 18 USC §3624(A)(b)(1)(i), for GTCs, from "term of imprisonment," to "sentence **IMPOSED** by the court." Prior to this change, the courts ruled that the BOP had a "Chevron deference" in claiming that GTCs were to be applied only to **"time served** behind bars," versus GTCs being applied to the **entire sentence."** For example, Smith quoted the White v. Scibana 390 V.3d 997, LEXIS 24813 No. 04-2410, 7th Cir. (2004) in which an inmate was sentenced to ten years, and received 470 GTCs

over his 10-year sentence, versus 54 days a year X 10 years = 540 over the "entire sentence" (54 X 10 = 540). The 470 GTCs were 70 GTCs than the 540, these 70 GTCs being "imputed as earned" before the inmate was actually released to prerelease custody. Pre-FSA the BOP was issuing inmates GTCs **only when the inmate was behind bars,** but not while the inmate was on prerelease custody or supervised release. When Congress changed 18 USC §3624(A)(b)(10(i) to **"imposed term,"** they **knew instantly** that GTCs were to be applied **over the entire sentence.** And, the **ONLY MATHEMATICAL** way to issue GTCs on prerelease custody was to **"impute them as being earned" BEFORE** the inmate actually qualifed for prerelease custody or supervised release. Congress **adopted the same statutory for application of FTCs,** under 18 USC §3624(g), writing, in conjunction with 18 USC §3632(d)(4)(C) (cited by Judge Chasinow, White v. Warden):

> "Application of Time Credits Toward Prerelease Custody...Time credits **SHALL BE APPLIED]**..."...in an amount equal to the **REMAINDER OF THE IMPOSED TERM"** [that is, the entire sentence less GTCs]"

The BOP implemented this FSA policy for inmates serving 36-months by (a) giving PRD-compliant dates,(b) the issuance of BOP Policy 5410.01, and (c) illustrations given inmates in the FSA A&O Handbook, all showing that FTCs were to be (a) earned and (b) imputed as earned over the entire sentence, including time spent on prerelease custody and supervised release, less GTCs already applied ("remainder"). That is, FTCs were to be (a) earned behind bars and (b) imputed as earned on prerelease custody and supervised release - the "imputation" being awarded before the inmate went on prerelease or supervised releaes. As stated, the confirmation of this "method of application of FTCs", or "vesting of FTCs," if you will, was written into the following BOP policies:

1. **BOP Policy 5410.01:** "...the Bureau will initially estimate an FSA **conditional Projected Release Date (PRD)** by calculating the **MAXIMUM NUMBER OF POTENTIAL FTC** that an inmate may earn **DURING HIS OR HER SENTENCE** [that is, the "remainder of the **IMPOSED** term", or the entire

sentence less GTCs]...As explained in Section 10(b) the Bureau will calculate an inmate's PRD by **ASSUMING** that an inmate will remain in earning status throughout his or her sentence, **INCLUDING WHILE IN PRERELEASE CUSTODY...;"**

2. **First Step A&O Handbook:**

**Question: Do I earn FTCs while in Halfway and/or Home Confinement?**
Answer: Yes, as long as you continue to successfully program.
**Question: How does FTCs work with Prerelease Placement?**
Answer: Your halfway house and/or home confinement recommendation will include the total number of days recommended under the Second Chance Act, **PLUS THE REMAINING NUMBER OF FTCs NOT APPLIED TO SUPERVISED RELEASE..."**

Any person reading the above would understand that the BOP is describing how FTCs are to be **vested**, that is, FTCs are applied to both (a) time spent behind bars and (b) time on prerelease custody and supervised release, and (c) the **only** mathematical way to apply (or vest) FTCs earned on prerelease custody and supervised release is deduct the FTCs so earned from the "time served" behind bars, using the "up-front" **exact amount** of FTCs earned on prerelease custody and supervised. "Up-Front" simply means FTCs so earned and deducted from "time served."

**A 10-Year Sentence Using the "Up-Front" FTC Application Model**

| | | | |
|---|---|---|---|
| **8.5 Years Earning FTC Credits While (a) Behind Bars, (b) Prerelease, (c) Sup. Rel.** (3110 Days) | | | **[1.5 Years- GTCs** (540 Days) |
| **1450 Days Behind Bars** (685 FTCs earned "Behind Bars") | **1480 Days FTCs** (705 FTCs earned on (a) Prerelease and (b) Super. Rel.) | **180 SCA Days** (90 FTCs earned on SCAs) | **540 GTC Days** |

A. 1450 Days Behind Bars + 1480 FTCs + 180 SCAs + 540 GTCs = **3650 Days**
B. 685 FTCs Behind Bars + 705 FTCs on PreR&SupRel + 90 FTCs SCA = **1480 FTC Days**

**Mathematical Proof of the "Up-Front Model"**

The only way to "prove" the "up-front" model is to compare it to the "time served model" of FTC application:

**Time Served Model:**

| | |
|---|---|
| 1. Days Behind Bars Time Served Model : | 2075[2] Days |
| 2. "Projected" Days on Prerelease and Supervised Release: | 1035 Days |
| **Subtotal Days** | **3110 Days** |
| 3. **Analysis of FTCs Earned on "Time Served" Model:** | |
| a) FTCs earned while behind bars : | (1035 Days) |
| b) FTCs earned on 1035 days of PreRel + Super. Rel. : | (445 Days) |
| **Total FTCs earned** | **(1480 Days)** |

**Note:** Subtract (445 FTCs + 180 SCAs) from 2075 days = **1450 Behind-Bars Days**

2. "2075 Days" adds back in 180 S.C.A. Days - This is a proof only.

The "up-front" model on the previous page approximates the "FTC-application" model given to **all inmates,** on November 18, 2023, via trulinks, by the BOP, as shown on page 10 of the "First Step Act Handbook," a copy of which Smith included as Exhibit 1 in his original filing.

If you note, in the 10 year model, as presented, the following

| | "Up-Front" | "Time Served" | Differnce |
|---|---|---|---|
| 1. **Total Sentence in Days** | **3650 Days** | **3650 Days** | **0 Days** |
| Deductions: | | | |
| a) (GTCs Earned) | (540 Days) | (540 Days) | 0 Days |
| b) (FTCs Earned:) | | | |
| 1) Behind Bars | (685 Days) | ((940 Days) | ((256 Days) |
| 2) Prerelease & Sup. Rel. | (705 Days) | (0 Days) | 705 Days |
| 3) SCA | (90 Days) | (0 Days) | 90 Days |
| c) Days in Prison | (1450 Days) | (1990 Days) | 540 Days |
| d) Days in Second Chance Act | (180 Days) | (180 Days) | 0 Days |
| 2. **Total Deductions** | **(3650 Days)** | **(3650 Days)** | |
| | 1450/3110= | 2075/3110= | |
| 3. **Percentage Diff. Behind Bars** | **46%** | **67%** | **(21%)** |
| 4. **Average FTCs Every 30-Day FTC Period** | 1480/102= **14.5 Days** | 940/102= **9.2 Days** | **(5.3 Days)** |

Please consider the following discriminatory practices that result from not following the BOP's own written FTC vesting/application guides:

1. **Difference in Percentage Time Served Behind Bars:** Those inmates serving 36-month sentences or less spend 46% of their time behind bars, but, a similarily situated inmate, with a 10-year sentence spends 67% of his time behind bars. Congress did not give the BOP discretion to arbitarily and capriciously discriminate against inmates based solely on their length of sentence;

2. **Difference in Average FTC Days Per 30-Day FTC Period:** Those inmates serving 36-month sentences or less receive an average of 14 to 15 FTC days over their entire sentence, whereas those with a 10-year sentence, being only afforded the "time served" model, have their average FTC days lowered to 10 days every 30-day period or less. Inmates on the "time served" model **receive no credit for FTCs earned on prerelease custody or supervised release,** but, those serving 36-months or less, receive **all their FTCs "imputed as earned"** on prerelease custody and

and supervised release. Congress did not give the BOP "discretion" to arbitarily and capriciously lower the average FTCs earned on monthly basis from 15-Days to 10 or less based on mathematical gimmicks that result from using the "time served" model.

Congress **threw out** the "time-served" model for applying GTCs by changing "term of imprisonment" to "**IMPOSED** term." They instituted the same "**IMPOSED** term" for FTCs. For GTCs, the "**IMPOSED** term" language meant that the BOP had to (a) award GTCs while "serving time", and (b) "impute GTCs **as earned**" (before the inmate actually went on prerelease custody or supervised release) effectively **altering** the **definition of "earning credits."** "Earning" defined, then, must incorporate both (a) "real time" earnings and (b) "future expected" earnings - even as the term "earnings" is applied and defined in any financial model on Wall Street. If the inmate "screws up" before both "earning types are vested, then he or she loses that vested portion. But, affording one group of inmates serving 36-months or less with (a) FTCs earned on time served and (b) imputed earnings, but denying the same to inmates serving in excess of 36-months is discriminatory. Additionally, in BOP Policy 5410.01, the BOP stated they would project FTCs **over the entire sentence "ASSUMING that an inmate will remain in earning status."** This word "assuming" is a projected "future imputaiton," in the same manner that GTCs are "imputed as earned" on prerelease custody and supervised release."

The following chart is taken directly from the First Step Act Handbook delivered to inamtes via Trulinks on November 18, 2023. It demonstrates a 36-month sentence "imputing FTCs" as earned on pre-release custody and supervised release, along with FTCs earned while

in prison. An analysis follows showing the difference between a "time served" and "up-front" model. Currently, **all inmates serving 36-months or less are being given the "up-front" model.** Smith should be afforded the same computation model, and had he been given the same computation model, he would have been on home confinement on 01/28/2024.

**BOP Illustration Given in FSA Handbook Page 10**
**A 3-Year Sentence Using the "Up-Front" FTC Application Model**

| [-------(933 "Remainder" Days Earning FTC Credits While--------<br>(a) Behind Bars, (b) Prerelease, (c) Sup. Release | | | [--162 GTC----]<br>Days |
|---|---|---|---|
| -- 428 Days "Behind Bars"---<br>(175 FTCs earned "Behind Bars") | [--415 Days of FTCs---<br>(195 FTCs earned on "Sup. Rel.") | [90 SCA Days<br>[(45 FTCs earned on SCA) | |

A. 428 Days Behind Bars + 415 FTCs + 90 SCAs + 162 GTCs = **1095 Days**
B. 175 FTCs Behind Bars + 195 FTCs on PreR&SupRel + 45 FTCS SCA = **415 FTCs**

**Comparing the "Up-Front" Model With "Time-Served" for 36-Month Sentence**

| | **"Up-Front"** | **"Time Served"** | **Difference** |
|---|---|---|---|
| 1. **Total Sentence in Days** | **1095 Days** | **1095 Days** | **0 Days** |
| a) (GTCs Earned) | (162 Days) | (162 Days) | (0 Days) |
| b) (FTCs earned:) | | | |
| (1) Behind Bars | (175 Days) | (240 Days) | (65 Days) |
| (2) Prerelease & Sup. Rel. | (195 Days) | (0 Days) | 195 Days |
| (3) SCA | (45 Days) | (0 Days) | 45 Days |
| c) Days in Prison | (428 Days) | (603 Days) | 175 Days |
| d) Days in Second Chance Act | (90 Days) | (90 Days) | 0 Days |
| 2. **Total Deductions** | **(1095 Days)** | **(1095 Days)** | |
| | 428/933= | 603/933= | |
| 3. **Percentage Diff. Behind Bars** | **46%** | **64%** | |
| 4. **Average FTCs Every 30-Day FTC Period** | 428/29= **14.5 Days** | 240/29= **9 Days** | |

The BOP **APPLIES** the "Up-Front" FTC application model to all inmates serving 36-month sentences or less. But, the 36-month sentenced inmate on a "time served" application model spends an additional 175 days "behind bars." The BOP **could have** followed the "time served" FTC vesting schedule **for all inmates regardless of the length of their sentence, BUT** in doing so they would have violated the the FSA Final Rule issued January 22, 2022 wherein they stated inmates would recieve FTC credit while on prerelease custody and supervised release. So they devised a way to give it to some, and deny it to others - see Smith's comps next.

Follows is a graph, and comparison, showing the discrimination against Smith relative to those serving 36-month sentences or less.

**Smith's 175-Month Sentence Using "Up-Front" FTC Application Method**

```
[-611 Pre-FSA---]-----3925 "Remainder Days" To Receive FTCs------[-787 GTC Dys--]
[ Jail/Prison   ]          (01/01/2019 to 10/02/2029)             [(10/03/29 to  ]
[ (04/29/17 to  ]                                                 [11/28/2031)   ]
[ (12/31/18)    ]                                                 [              ]
[611 Dys PreFSA-]----1845 Days-----+1900 FTCs Earned-+180 SCA Dys+787 GTC Days-]
[               ]   Behind Bars   ] (a) Behind Bars &[           [              ]
[               ]                 ] (b) PreRel&SupRel[           [              ]
[               ](900 FTCs Earned) ](910 FTCs Earned)[ (90 FTCs  [              ]
[               ]                 ]                  [  Earned)  [              ]
```

A. (611 PreFSA)+(1845 Dys Bhd Bars)+(1900 FTC Dys)+(180 SCA)+(787 GTC)=**5323 Dys**
B. (900 FTCs Behind Bars)+(910 FTCs on PreR&SupRel)+(90 FTC SCA)=**1900 FTC Dys**

**Comparing the "Up-Front" Model with "Time Served" For Smith's 175-Months**

| | **"Up-Front"** | **"Time Served"** | **Difference** |
|---|---|---|---|
| 1. **Total Sentence in Days** | **5323 Days** | **5 Days** | **0 Days** |
| Deductions: | | | |
| a) (GTCs Earned) | (787 Days) | (787Days) | (0 Days) |
| b) (FTCs Earned) | | | |
| 1) Behind Bars | (900 Days) | (1210 Days) | (370 Days) |
| 2) Prerelease & Sup. Rel. | (910 Days) | (0 Days) | 910 Days |
| 3) SCA | (90 Days) | (0 Days) | 90 Days |
| c) Days in Prison | (1845 Days) | (2535 Days) | 810 Days |
| d) Days in Second Chance Act | (180 Days) | (180 Days) | 0 Days |
| e) Days in Prison/Jail PreFSA | (611 Days) | (611 Days) | 0 Days |
| 2. **Total Deductions** | **5323 Days** | **5323 Days** | |
| | 2456/4536= | 3146/4536= | |
| 3. **Percentage Diff. Behind Bars** | **54%** | **69%** | |
| 4. **Average FTCs Ever 30-Day FTC Period** | 1900/130= **14.5 Days** | 1210/130= **9.3 Days** | |

If Smith were given the same "up-front" FTC application model as is given those serving 36-months or less, Smith would serve 1845 days in prison past January 1, 2019, adding to that the 611 days spent from April 17, 2017 to December 31, 2018, or 611 days, or a total of 2456 days behind bars, and the remainder on prerelease custody and supervised release. With the "time served" model, Smith will spend 3146 days behind bars. As of today, **Smith has already spent 2613 days behind bars, or 157 days past the equivalent "behind bars" date that is given to inmates serving 36-months or less. This is discrimination - a claim for equal protection, which Smith asks the court to grant.**

Claim 3: Failure to Follow BOP Policy

In Fort Stewart Schools v. Federal Labor Relations Authority, 109 L Ed 2d 659 110 S.Ct. 2043, NO. 89-65 (1990), the Court ruled:

> "Administrative Law §23 - Effect of Regulation - 9. An administrative agency must **abide by its own regulations...**[statements of previous fact and discovery, as was the essence of this case]

The court cited an earlier case Vitarelli v. Seaton, 359 US 535 547 3 L Ed 2d 1012 79 S.Ct. 968 (1959), wherein Vitarelli was fired from the Department of Interior, and he challenged this firing. The firing was based on an agency regulation **enacted after** Vitarelli had committed an "agency violation" which wasn't a violation under old Department of Interior rules.

The point of these case citings is that the BOP put out BOP policy 5410.01, the First Step Act A&O Handbook, and the First Step Final rule, **none of whcih the BOP has abided by** reference the following:

1. **BOP Policy 5410.01:** The BOP stated they would issue a FTC conditional projected date listing the "maximum number of FTCs **assumed** to be earned over the inmate's "remainder of the imposed term." The BOP has **not abided by this regulation** in favor of Smith. They have issued a projected date using only 365-FSA days - 365-FSA days is not even **close to the maximum** number "assumed" to be earned over Smith's entire sentence. The BOP has done this "maximum number of FTCs" for inmates serving 36-months or less, but not Smith. Smith already earned in excess of 1,000 FTCs, and there is no "conditional projected release date" issued even remotely corresponding to this date. The BOP is violating 5 USCS §552(a)(e)(5) as well as Administrative Law §23 - a **violation of Smith's constitutional rights;**
2. **First Step Act A&O Handbook:** The FSA Handbook, issued November 18

not only **stated** that inmates would receive FTCs issued during prerelease custody and supervised release, but **they gave a visual example** (page 10) showing how such FTCs, so earned, and imputed as earned, would affect an inmate's time served behind bars. Smith **has received NO CREDIT FOR FTCs EARNED OR PROJECTED** (the BOP employs the word "assumed to be earned") on prerelease custody or supervised release. If this were the case, Smith would already be on home confinement, his FTCs, both earned, and imputed as earned, over the **"remainder of his imposed term"** (18 USC §3624(g)) giving smith a home confinement date **157 days ago.** The BOP has done this for inmates serving 36-month sentences or less, but not for inmates with sentences in excess of 36-months. This is a claim for equal protection - the BOP is failing to follow their own written policies regarding Smith violating Smith's constitutional rights;

3. **FSA Final Rule:** The BOP issued their FSA "Final Rule" January 22, 2022, stating that inmates would earn FTC credits while on (a) prerelease custody and (b) supervised release. There is **ONLY ONE MATHEMATICAL WAY** to account for such earnings, and that is through projection and imputation. The BOP has done this for inmates serving 36-month sentences or less, but, not for inmates like Smith. This is discrimination and a violation of Smith's constitutional rights.

When BOP Director C. Peters visited Duluth in May 2023 she stated "FTCs would be issued in the same manner as GTCs - "up-front"." The courts have ruled that usch "interlocutory rulings" by Agency Directors are to be **considered as statements of fact.** Smith then questioned

C.O. Finkler, head of the FSA department at Duluth, if she witnessed the Director saying this, and if she agreed with it. C.O. Finkler initially stated **she did agree with it, AND THE GTC-LIKE COMPUTATIONS WOULD BE FORTHCOMING ANY WEEK** (stated in June 2023). In November 2023 these GTC-like computations showed up for inmates serving 36-months or less, but, not for inmates like Smith. Smith then met with C.O. Finkler, again, about this, and Finkler stated the "BOP changed their interpretation and were only issuing 365-FSA days "up-front." Smith submitted a copy of this email exchange with Finkler in his original filing. (1) BOP Policy 5410.01, (2) FSA A&O Handbook and (3) the FSA Final Rule **do not agree with this "final analysis" by Finkler.** Such an analysis results in discrimination against inmates with longer sentences. Congress did not give the BOP discretion to develop **two separate FSA application and computation programs for inmates** depending on the length of their sentence - this is a violation of Smith's constitutional rights.

The bottom line is that the BOP is bound by their own policies and FSA illustrations, applied equally among inmates regardless of the length of their sentence.

**Conclusion**

1. **Violation of Smith's Constitutional Rights:** The BOP is bound by statututory policy - that is, both GTCs and FTCs are governed by "imposed term." That is, the BOP must utilize the same "earnings standard" afforded GTCs to FTCs. Courts have ruled that the BOP has (1) no discretion over whether or not to issue "validly earned" FTCs (including "earnings" as "imputed" earned on prerelease custody

and supervised release); and (2) the court has jurisdiction when an inmate's consititutional rights are violated - including violations related to equal protection, as Smith claims and proves here;

2. **Vesting:** Courts have ruled that inmates have a "liberty interest" in "vesting" of FTCs. The "vesting method" is described in the (a) First Step Act, (b) BOP Policy 5410.01 and (c) FSA A&O Handbook. All three are mathematically clear, unambiguous and nondiscriminatory relative to the length of one's sentence. Smith gives several examples of how such "vesting" would affect his time behind bars. A "vesting schedule" is no longer discretionary when it becomes a means of discrimination relative to the length of one's sentence, as it is being used by the BOP. Smith qualified for home confinement 157 days ago had the BOP "vested" his FTCs in the same manner as FTCs are being vested for inmates serving 36-month sentences or less;
3. **Failure to Follow BOP Policy:** An agency is bound by its written policies. In regard to Smith, the BOP is not following their unambiguous written policies, and this becomes a violation of Smith's constitutional rights.

In a recent Aleph publication,"Liberator," with an article titled "Why Punishing People in Jail and Prison Isn't Working," the author Erica Bryant wrote (Exhibit 1):

> "A 2021 analysis of 116 studies **found that prison time does NOT** prevent people from reoffending and, **in fact, can INCREASE** the likelihood that they **will...**"

As Judge Standish noted in Jones v. Englemann denying inmates legitimately earned FTCs "is **unfair...**[and] **contrary** to the FSA's goal of incentivizing prisoners to engage in [recidivism reduction programs]."

And, now we also know from reviewing these 116 studies that **longer prison terms likely increases recidivism**; it does not decrease it. For this reason, Smith wonders whyBOP counsel for the BOP remains apologists for an FSA program that is discriminatory, causing inmates with longer sentecnes to stay in prison well beyond their FSA-vesting schedules, and thereby increasing the chances of higher recidvistic rates, contrary to the purpose of the FSA?

In a recent publication, Peter Navarro, who was imprisoned for invoking "Presidential privilege" in not answering Congressional questions, had this to say about the FSA program upon his release from prison (Exhibit 2):

> "Behind my prison walls, I have uncovered one of the greatest hidden scandals...this is the refusal...to implement [the] First Step Act...the delay is costing American taxpayers billions, increases the rate of recidivsim and crime and cruelly delays returning inmates to their families and jobs...instead of projecting inmate FTCs as its own 2022 Program Statement requires, it relies on an antiquated 'earn-as-you-go' [time served] algorithm that **vastly undercounts** inmate FTCs...as a result...inmates will suffer from prerelease delays...**depending on the length of the sentence...**"

Smith believes his constitutional rights are being violated, and given these violations, the court has jurisdiction, not over "conditions of confinment" but for failure to implement FTC policy equally to all inmates regardless of their sentence length. "Vesting" does not magically happen - it is backed by equitable formulas. Smith has met the vesting requirements as described by statute and BOP policy, and would have been released to home confinement 157 days ago had he been given an FTC vesting schedule equal to that of inmates serving 36-months or less.

Signed this 27th Day of June Year 2024

Signed By ________

Darrell D. Smith 16355-029
Federal Prison Camp
PO Box 1000
Duluth, MN 55814

Mailed 6/27/24 within time frame specified by Judge Liming Darrell Smith